**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| ROLAND GUTIERREZ; SARAH ECKHARDT; and the TEJANO DEMOCRATS, | § § § § | |
| *Plaintiffs*, | § § § | CIVIL ACTION NO. |
| v. | § § | __1:21-CV- 00769- RP-JES-JVB__ |
| | § | Complaint for Declaratory Judgment |
| GREG ABBOTT, Governor of the State of Texas sued in his official capacity; and, JOSE A. ESPARZA, Deputy Secretary of State of Texas and acting Secretary of State of Texas sued in his official capacity. | § § § § § | and Injunctive Relief |
| *Defendants*. | § § § § § § | |

---

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

i

# TABLE OF CONTENTS

I.    Introduction .................................................................................................................. 1

II.   Facts ........................................................................................................................... 1

   A.   The malapportioned State House and State Senate districts ............................................ 2

   B.   The Texas Legislature ................................................................................................... 4

   C.   The Plaintiffs ................................................................................................................. 4

   D.   The Impending 2022 Election Cycle ............................................................................. 5

III.  The Texas Constitution Prevents The Legislature From Apportioning Until January 2023;

    This Court Must Fill The Vacuum. ................................................................................... 6

   A.   The Texas Constitution requires the first apportionment after a U.S. Census to occur in a regular

     legislative session .......................................................................................................... 7

    i.    A plain reading of Art. III, § 28 .................................................................................. 7

    ii.   The legislative history and its subsequent implementation reinforces the plain text. ............ 8

    iii.  Texas Courts adhere to the constitutional order of apportionment. ................................ 11

    iv.   Texas constitutional interpretation in 1947 ................................................................ 13

   B.   Motion for Preliminary Injunction ............................................................................... 15

    i.    This Court must act because the Legislature cannot. .................................................... 15

    ii.   The 2022 election cycle is imminent, and irreparable harm will occur. ........................... 16

    iii.  The injury of an illegal plan outweighs any harm to the defendants. .............................. 17

    iv.   The public interest requires constitutional districts. ..................................................... 17

IV.   Conclusion & Prayer .................................................................................................... 17

Certificate of Conference ..................................................................................................... 18

Certificate of Service .......................................................................................................... 19

## I.      Introduction

2020 was America's deadliest year. 600,000 Americans have died and millions more have been infected by an unrelenting global pandemic. COVID 19 has affected all aspects of American life—including schools, businesses, the courts, the Legislature, and the decennial census. Because COVID 19 delayed publication of the Census, the Texas Legislature was precluded from apportioning State districts during the 87th Regular Session, which ended on May 31, 2021. That impossibility has a critical consequence, imposed long ago by the Constitution of the State of Texas.

Specifically, the Texas Constitution forbids the first legislative reapportionment to occur in anything but a *regular* legislative session.  This prohibition results from the Constitution's text, its structure, and from strong precedent from the Supreme Court of Texas.

Most fundamentally, the Texas Constitution requires that the first apportionment following the publication of the U.S. Census must occur in a *regular* session. TEX. CONST. art. III, § 28.  That first such session will occur when the 88th Legislature convenes in January 2023. The regular session of the 87th Legislature having expired, the Legislature cannot, as a matter of constitutional law, apportion the districts in a special session.  When the Legislature will not or cannot act to reapportion, this Court assumes that task to protect voters from constitutional injury.

## II.     Facts

The Plaintiffs rely on the following facts in support of a preliminary injunction:

| Source of Proof | Attachment # |
|---|---|
| Declaration of Roland Gutierrez | 1 |
| Declaration of Sarah Eckhardt | 2 |
| Declaration of Manuel Medina – Tejano Democrats | 3 |
| Texas Legislative Council Document 21R1998 | 4 |

1

| Journal Excerpt of the Texas House May 31, 2021 | 5 |
|---|---|
| Journal Excerpt of the Texas Senate May 31, 2021 | 6 |
| Bill Packet SJR 2, 50th Regular Session | 7 |

### A.  The malapportioned State House and State Senate districts

The U.S. Census was published on August 12, 2021,[1] almost three months after the regular legislative session concluded. It reported that Texas has a population of 29,145,505.  This official population tally triggers an obligation to ensure that Texas legislative districts have proper apportionment.  "[T]he Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." *Reynolds v. Sims,* 377 U.S. 533, 577 (1964). The recently published census revealed that the current Texas House and Senate districting plans are grossly malapportioned in violation of federal law. The ideal population for a Texas Senate district is 940,178 (roughly 29,145,505 divided by the number of senatorial districts). Yet, according to the Texas Legislative Council,[2] the largest Texas Senate district contains 1,103,479, which means it is currently overpopulated by 17.37%. The smallest Texas Senate district is underpopulated by -15.33%. The range of population deviation between the largest and smallest Texas Senate district is 32.7%. Population deviations exceeding 10% are presumptively invalid. *See Brown v. Thomson*, 462 U. S. 835, 842-43 (1983); *see also Mahan v. Howell*, 410 U. S. 315, 329 (1973).

---

[1] U.S. Census Bureau website: https://www.census.gov/programs-surveys/decennial-census/about/rdo/summary-files.html
[2] Texas Legislative Council Redistricting website: Publications,
https://redistricting.capitol.texas.gov/docs/2020/21R1998_2020_Census_Baseline_Districts_Population_Deviation.xlsx

**Texas Senate District 2020 Census Populations**

| District # | 2020 Census Total Population | Ideal District Population | Total Deviation | Percent Deviation |
|---|---|---|---|---|
| 1 | 845,787 | 940,178 | -94,391 | -10.04% |
| 2 | 944,576 | 940,178 | 4,398 | 0.47% |
| 3 | 877,170 | 940,178 | -63,008 | -6.70% |
| 4 | 1,019,150 | 940,178 | 78,972 | 8.40% |
| 5 | 1,060,800 | 940,178 | 120,622 | 12.83% |
| 6 | 833,989 | 940,178 | -106,189 | -11.29% |
| 7 | 1,009,368 | 940,178 | 69,190 | 7.36% |
| 8 | 998,133 | 940,178 | 57,955 | 6.16% |
| 9 | 924,657 | 940,178 | -15,521 | -1.65% |
| 10 | 945,496 | 940,178 | 5,318 | 0.57% |
| 11 | 933,256 | 940,178 | -6,922 | -0.74% |
| 12 | 1,086,379 | 940,178 | 146,201 | 15.55% |
| 13 | 891,837 | 940,178 | -48,341 | -5.14% |
| 14 | 1,044,307 | 940,178 | 104,129 | 11.08% |
| 15 | 943,568 | 940,178 | 3,390 | 0.36% |
| 16 | 926,818 | 940,178 | -13,360 | -1.42% |
| 17 | 957,529 | 940,178 | 17,351 | 1.85% |
| 18 | 1,036,193 | 940,178 | 96,015 | 10.21% |
| 19 | 952,214 | 940,178 | 12,036 | 1.28% |
| 20 | 907,674 | 940,178 | -32,504 | -3.46% |
| 21 | 901,254 | 940,178 | -38,924 | -4.14% |
| 22 | 944,022 | 940,178 | 3,844 | 0.41% |
| 23 | 887,105 | 940,178 | -53,073 | -5.64% |
| 24 | 926,790 | 940,178 | -13,388 | -1.42% |
| 25 | 1,103,479 | 940,178 | 163,301 | 17.37% |
| 26 | 840,565 | 940,178 | -99,613 | -10.60% |
| 27 | 831,674 | 940,178 | -108,504 | -11.54% |
| 28 | 796,007 | 940,178 | -144,171 | -15.33% |
| 29 | 879,174 | 940,178 | -61,004 | -6.49% |
| 30 | 1,027,265 | 940,178 | 87,087 | 9.26% |
| 31 | 869,269 | 940,178 | -70,909 | -7.54% |

(Texas Legislative Council – 21R1998 – 8/16/2021)

The Texas House of Representatives is similarly malapportioned. The ideal State House district population is 194,303. The largest State House district contains 297,064 people, which is 52.89% overpopulated. The smallest State House district is substantially underpopulated, -24.71%

3

below the ideal population. This is a "top to bottom" deviation of 77.6%. The current plan far

exceeds permissible population deviation.

**Five Largest & Smallest Texas House Districts 2020 Census Populations**

| District # | 2020 Census Total Population | Ideal District Population | Total Deviation | Percent Deviation |
|---|---|---|---|---|
| 28 | 297,064 | 194,303 | 102,761 | 52.89% |
| 106 | 287,046 | 194,303 | 92,743 | 47.73% |
| 70 | 284,925 | 194,303 | 90,622 | 46.64% |
| 132 | 281,835 | 194,303 | 87,532 | 45.05% |
| 117 | 273,489 | 194,303 | 79,186 | 40.75% |
| 69 | 156,041 | 194,303 | -38,262 | -19.69% |
| 68 | 154,894 | 194,303 | -39,409 | -20.28% |
| 88 | 148,927 | 194,303 | -45,376 | -23.35% |
| 77 | 148,049 | 194,303 | -46,254 | -23.81% |
| 76 | 146,284 | 194,303 | -48,019 | -24.71% |

(Texas Legislative Council – 21R1998 – 8/16/2021)

## B.  The Texas Legislature

The legislative power of Texas is vested in a Senate and House of Representatives, which

together constitute "The Legislature of the State of Texas." TEX. CONST. art. III, § 1. The Texas

Senate has 31 members; the House of Representatives has 150. *Id*. at § 2. The Regular Session of

the 87th Legislature convened on January 12, 2021[3] and adjourned *sine die* on May 31, 2021,[4]

more than two months before the census figures were published.

## C.  The Plaintiffs

---

[3] Texas House of Representatives website:
https://journals.house.texas.gov/HJRNL/87R/PDF/87RDAY01FINAL.PDF; Texas Senate website:
https://journals.senate.texas.gov/SJRNL/87R/PDF/87RSJ01-12-F.PDF.
[4] Texas House of Representatives website:
https://journals.house.texas.gov/HJRNL/87R/PDF/87RDAY61FINAL.PDF at p. 29; Texas Senate website:
https://journals.senate.texas.gov/SJRNL/87R/PDF/87RSJ05-31-F.PDF at p. 27.

Plaintiff Roland Gutierrez is a Texas State Senator first elected in November of 2020. He is a registered voter in Texas Senate District 19 and House District 119. He currently resides and votes in an overpopulated Texas Senate district and U.S. Congressional district. Plaintiff Sarah Eckhardt is a Texas State Senator who was first elected in a special election in July of 2020. She resides in and votes in Texas Senate District 14 and House District 49, both of which are likewise overpopulated.

Plaintiff Tejano Democrats is a statewide political organization of 2,100 members. They engage in and expend resources in educating voters concerning candidates for office and have a special focus on the needs of Mexican American voters and candidates. Tejano Democrats' members are registered voters who vote consistently in Texas elections. Most of their members are minority voters. The Tejano Democrats have members in overpopulated State House and State Senate districts.

### D.  The impending 2022 election cycle

Election deadlines for 2022 are swiftly approaching. The primary election for the Texas House and Senate will be held on March 1, 2022. To set the proper stage for that election, state legislative districts must be drawn early enough so that the election can be properly administered. Weeks are usually devoted to this task, especially when districts change due to an apportionment. Election authorities must move registered voters into new districts. Most Texas jurisdictions use proprietary software to re-designate the voters into the appropriate districts. But for those jurisdictions lacking this software, administrators must move voters manually.

The deadlines are as follows:

| March 1, 2022 - Primary Election | |
|---|---|
| Deadline to post candidate requirements Form 1-15 (PDF) | Monday, March 1, 2021 |
| First day to file for a place on the Primary ballot for precinct chair candidates | Tuesday, September 14, 2021 |
| Filing deadline for candidates; filing deadline for independent candidates to file declaration of intent | Monday, December 13, 2021 |
| First day to apply for a ballot by mail using Application for a Ballot by Mail (ABBM) or Federal Post Card Application (FPCA) | Saturday, January 1, 2022*<br><br>*First day to file does not move because of New Year's Day holiday. An "Annual ABBM" or FPCA for a January or February 2022 election may be filed earlier, but not earlier than the 60th day before the date of the January or February election. |
| Last Day to Register to Vote | Monday, January 31, 2022 |
| First Day of Early Voting by Personal Appearance | Monday, February 14, 2022 |
| Last Day to Apply for Ballot by Mail (**Received**, <u>not</u> Postmarked) | Friday, February 18, 2022 |
| Last Day of Early Voting by Personal Appearance | Friday, February 25, 2022 |
| Last day to Receive Ballot by Mail | Tuesday, March 1, 2022 (Election Day) at 7:00 p.m. if carrier envelope is **not** postmarked, **OR**  Thursday, March 3, 2022 (next business day* after Election Day) at 5:00 p.m. if carrier envelope is postmarked by 7:00 p.m. at the location of the election on Election Day (unless overseas or military voter deadlines apply)[4]<br><br>*First business day after Texas Independence Day |

The material facts in this case are not in dispute.

**III.    The Texas Constitution prevents the Legislature from apportioning until January 2023; this Court must fill the vacuum.**

**A. The Texas Constitution requires the first apportionment after a U.S. Census to occur in a *regular* legislative session.**

The Texas Constitution requires that the Legislature must first apportion its state legislative districts in a regular session.   State legislative districts "shall" be apportioned "at [the Legislature's] first *regular* session after the publication of each United States decennial census." TEX. CONST. art. III, § 28 (emphasis added). The history of this section confirms its text.

**i.      A Plain Reading of Art. III, § 28**

"The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts."[5] *Id*. The Texas Constitution creates a precise procedure for state legislative apportionment, which begins with publication of the U.S. census. First, the legislature is authorized and obligated to consider state legislative apportionment at the first *regular* session following publication. If the Legislature is unable to fulfill its role for either the Texas House of Representatives or the Texas Senate, then the Legislative Redistricting Board must act. *Id.* Only after this sequence can the Legislature consider apportionment or redistricting in "special or regular sessions after the constitutional authority of the Legislative Redistricting Board has expired." *Terrazas v. Ramirez*, 829 S.W.2d 712, 726 (Tex. 1991) (orig. proceeding). The Constitution does not tolerate deviations from its script.

"In essence, a constitution is a compact between the government and the people in which the people delegate powers to the government and in which the powers of the government are prescribed." *Republican Party v. Dietz*, 940 S.W.2d 86, 91 (Tex. 1997). "When interpreting [the]

---

[5] TEX. CONST. art. III, § 28 is entitled the "**TIME FOR APPORTIONMENT**; APPORTIONMENT BY LEGISLATIVE REDISTRICTING BOARD" (emphasis added). There is no other constitutional provision that is named "apportionment" in relation to the legislature.

state Constitution, [courts] rely heavily on its literal text." *Bosque Disposal Sys., LLC v. Parker Cnty. Appraisal Dist.*, 555 S.W.3d 92, 94 (Tex. 2021) (quoting *Dietz*, 940 S.W.2d at 89). "The text is the alpha and the omega of the interpretive process." *BankDirect Capital Fin., LLC v. Plasma Fab*, LLC, 519 S.W.3d 76, 86 (Tex. 2017). The "goal when interpreting the Texas Constitution is to give effect to the plain meaning of the text as it was understood by those who ratified it." *In re Abbott*, No. 21-0667, 2021 WL 3641471, at *3 (Tex. Aug. 17, 2021) (orig. proceeding). "Legislative construction and contemporaneous exposition of a constitutional provision is of substantial value in constitutional interpretation."  *Id.* at *3 (quoting *Am. Indem. Co. v. City of Austin*, 246 S.W. 1019, 1023 (Tex. 1922)). Most importantly, Texas constitutional provisions that restrict governmental power must be enforced rigorously. "Texans have adopted state constitutions to restrict governmental power …. By enforcing our constitution, we provide Texans with their full individual rights and strengthen federalism. *LeCroy v. Hanlon*, 713 S.W.2d 335, 339 (Tex. 1986) (internal citations omitted).

### ii.    The legislative history and its subsequent implementation reinforces the plain text.

In the early 20th century, the U.S. population shifted from rural areas toward suburban and urban communities. Yet many states, including Texas, conducted elections based on outdated maps. These schemes left many rural districts significantly underpopulated in comparison to urban and suburban districts. Rural legislators who benefited from malapportionment had no incentive to adopt new maps.  For decades, malapportioned districts endured because the Legislature refused to reapportion.  That changed beginning in 1947, when the 50th Legislature adopted Senate Joint Resolution 2 ("SJR 2") to amend the Texas Constitution to mandate a "time for apportionment" and a consequence for legislative inaction.

When SJR 2 was first filed, it did not specify whether apportionment would occur during a regular or special session. The Legislature understood, however, that clarity was critical. The resolution was thus amended to require apportionment during the first regular session after the Census is published. A comparison of the versions establishes the unequivocal intent to require apportionment to occur only in a regular session. The introduced version provided:

S. J. R. NO. __2__                                        By:   Moffett

A JOINT RESOLUTION

PROPOSING an amendment to Section 28, of Article III, of
the Constitution of the State of Texas, so as
to provide for a Board, for apportioning the
State into senatorial districts and representa-
tive districts in the event the Legislature
fails to make such apportionment; providing
for the issuance of the necessary proclamation
by the Governor; and making an appropriation.

BE IT RESOLVED BY THE LEGISLATURE OF THE STATE OF TEXAS:

Section 1.   That Section 28, of Article III, of the
Constitution of the State of Texas be amended so as hereafter
to read as follows:

"Sec. 28.   The Legislature shall, at its first
Session after the publication of each United States
decennial census, apportion the state into senatorial
and representative districts, agreeable to the provi-

9

Thus, the initial text would have permitted apportionment in any session, special or regular, convened after the Census was released. But the Legislature subsequently amended the resolution to limit its apportionment authority:

BE IT RESOLVED BY THE LEGISLATURE OF THE STATE OF TEXAS:

Section 1. That Section 28 of Article III of the Constitution of the State of Texas be amended so as hereafter to read as follows: ————————————————————

"Section 28. The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative

That language appeared on the ballot, which the people approved.[6]  The amendment has been enshrined for more than 70 years. In light of this history, the Constitution's requirement that apportionment be done in a *regular* session must be viewed as an intentional policy choice by the Legislature and the people of Texas.

Since the amendment's ratification, the Legislature has *never* adopted a state legislative redistricting or apportionment plan in a special session before the LRB's authority expired. The only redistricting or apportionment plans adopted by the Legislature in special sessions were in response to actions from the federal or state judiciary long after the time for apportionment described in Article III, § 28.

---

[6] Legislative Reference Library of Texas Online: Election Details,
https://lrl.texas.gov/legis/billsearch/amendmentdetails.cfm?legSession=50-0&billtypeDetail=SJR&billNumberDetail=2&billSuffixDetail=&amendmentID=180

**Enactment of Redistricting or Apportionment Legislation during a Special Session**

| Session | Year | Bill | Caption | Comment |
|---|---|---|---|---|
| **83-1** | 2013 | SB 2 | Relating to the composition of districts for the election of members of the Texas Senate. | Adopted the court-approved interim map after legislatively adopted map failed to obtain pre-clearance. |
| **83-1** | 2013 | SB 3 | Relating to the composition of districts for the election of members of the Texas House of Representatives. | Adopted the court-approved interim map after legislatively adopted map failed to obtain pre-clearance. |
| **72-3** | 1992 | SB 1 | Relating to apportionment of the state into senatorial districts. | Adopted apportionment plans after the plans adopted in the Regular Session were enjoined. |
| **72-3** | 1992 | HB 1 | Relating to apportionment of the state into state representative districts. | Adopted apportionment plans after the plans adopted in the Regular Session were enjoined. |
| **67-1** | 1981 | HB 162 | Relating to the composition of State Representative Districts 23, 38, 81, 83, 86, 87 and 88. | The Special Session was called for July 1981. The House adopted a map in the regular session and HB 162 made adjustments to the districts. |
| **62-1** | 1971 | SR 29 | Relating to the composition of Senatorial Districts 23, 16, 8 and remainder of Dallas County. | Non-binding resolutions directing the LRB concerning certain districts. |
| **62-1** | 1971 | SR 31 | Relating to the composition of Senatorial Districts 19 and 26 in Bexar County. | Non-binding resolutions directing the LRB concerning certain districts. |
| **62-1** | 1971 | SR 35 | Relating to the composition of State Senatorial Districts for Harris County. | Non-binding resolutions directing the LRB concerning certain districts. |
| **62-4** | 1972 | HB 12 | Relating to the composition of state representative districts 32 and 42. | Changes made to districts after the expiration of the LRB's authority. |

### iii.    Texas courts adhere to the constitutional order of apportionment.

After ratification, the Legislature adhered to Article III, § 28 until 1971. During the 62nd Regular Session, the Legislature enacted an apportionment plan for the Texas House of Representatives but failed to do so for the Texas Senate. Before the LRB met to adopt an

11

apportionment plan for the Texas Senate, the Supreme Court of Texas enjoined the House map because it violated the Texas Constitution. A Senator successfully sued to compel the LRB to adopt House and Senate maps. In determining whether the LRB should also adopt an apportionment map for the Texas House, the Texas Supreme Court announced the following interpretation of Article III, § 28:

> "We are convinced that the overriding intent of the people in adopting Sec. 28 was to permit apportionment of the state into legislative districts at the regular session of the Legislature which is convened in January following the taking of the census, if publication is *either before* convening or *during the session*…."

*Mauzy v. Legis. Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971) (orig. proceeding) (emphasis added). The Court held that the Legislature may redistrict only if the Census is published "before" or "during" the regular session. *Id.* Thus, if the publication comes *after* the regular session, the Legislature must wait until the next regular session to redistrict.

During the regular session in 1991, the Legislature enacted Senate Bill 31 and House Bill 150, reapportioning State Senate and House districts, respectively, using the 1990 census. Suits were filed in state district court and federal district court asserting various voting rights violations against the adopted Senate and House redistricting plans. Eventually, a court enjoined the legislative apportionment plans. Nineteen of the thirty-one state senators requested the Attorney General to propose an alternate Senate redistricting plan. A settlement was reached on the Senate plan between the litigants and the Attorney General. On November 25, 1991, five individuals not parties to the cases that created the settlement moved for leave to file their petition for writ of mandamus in the Texas Supreme Court.

This case became *Terrazas v. Ramirez*. Relators asked that the district court be directed to vacate judgments ordering reconfigured senatorial districts. The settlement was eventually

vacated. The Supreme Court of Texas held that district courts must defer to the Legislature when possible, citing constitutional provisions about apportionment. "Although article III, section 28 of the Texas Constitution explicitly requires the Legislature to reapportion legislative districts **in the first regular session** after each United States decennial census is published, neither that section nor any other constitutional provision prohibits the Legislature from acting in *later* special or regular sessions *after* the constitutional authority of the Legislative Redistricting Board has expired." *Terrazas*, 829 S.W.2d at 726 (emphasis added) (Hecht, J.).

The Texas Supreme Court has thus enforced the constitutional restrictions on apportionment. Under controlling Texas law, the Legislature may not apportion until the 2023 Regular Session.

iv.     **Texas constitutional interpretation in 1947**

Texas precedent holds that when the Constitution provides a specific process for accomplishing an end, that process is exclusive. In 1946, the year before the enactment of article III, section 28, the Texas Supreme Court considered whether the Texas Senate could convene at its own will to vote on the Governor's recess appointments. *See Walker v. Baker*, 196 S.W.2d 324 (Tex. 1946) (orig. proceeding). The Senate had done so in January 1946. In the context of a mandamus over payment of the printing bill for the Senate journal, the Supreme Court held that the Senate had no power to convene itself. *Id*. at 328.

The Court grounded its decision in a fundamental rule of constitutional interpretation: "'It is a rule for the construction of Constitution, constantly applied, that where a power is expressly given and the means by which, or the manner in which, it is to be exercised is prescribed, such means or manner is exclusive of all others.' 'When the Constitution defines the circumstances under which a right may be exercised ***, the specification is an implied prohibition against

13

legislative interference to add to the condition.'" *Id.* at 327 (quoting *Parks v. West*, 111 S.W. 726, 727 (Tex. 1908)). Pointing to the Constitution's specific provision for both regular sessions and special sessions called by the Governor, the Court held that any other manner of convening the Legislature was prohibited: "[S]ince the Constitution specifies the circumstances under which the Senate may defeat the Governor's appointments, there is an implied prohibition against its power to add to those circumstances." *Id.* at 328. Thus, the Senate had no power to convene itself outside the process specified in the Constitution, *i.e.*, a regular session or a special session called by the Governor, even though the Constitution did not specifically prohibit the Senate's convening at will. *Id.*

Likewise, no deviation is allowed from the Constitution's specified process for apportionment. The Constitution specifies that an apportionment after the Census must occur in a regular session.   Because the Constitution "specifies the circumstances under which" the Legislature may apportion, "there is an implied prohibition against its power" to apportion at other times or in other manners.

Just as the Senate could not reject the Governor's recess appointments in a self-initiated special session, the Legislature and the Governor cannot disregard the constitutional order of apportionment. "'A constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable.'" Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 81 (West 2012) (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union* 54 (1868)).

According to the explicit text of Article III, § 28, the Legislature cannot first apportion other than in a regular session. Because the 87th Legislature adjourned *sine die* before the Census was published, the Legislature must wait until the 88th Legislature's Regular Session to exercise its jurisdiction.

**B. Motion for Preliminary Injunction**

To secure a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

**i.       This Court must act because the Legislature cannot.**

Because of facts beyond its control, the 87th Legislature may not, consistent with Article III, §28, consider legislative apportionment. *See Smith v. Craddick*, 471 S.W.2d 375, 379 (Tex. 1971) (striking down a legislative apportionment plan that violated the Texas Constitution).

The plaintiffs have standing to seek relief in federal court as they are registered voters in overpopulated or malapportioned state senate and state house districts. The State House and State Senate districts are indisputably malapportioned beyond what is permissible by the U.S. Constitution, because the population deviation between the largest and smallest districts exceeds 10%. Maximum deviations above 10% are presumptively impermissible. *Brown,* 462 U.S. at 842-43. If the Legislature cannot act, this Court must remedy these constitutional defects in advance of the 2022 election cycle. *Connor v. Finch*, 431 U.S. 407, 415 (1977) ("In the wake of a legislature's failure … federal court is left with the unwelcome obligation of performing in the legislature's

stead."); *see also Growe v. Emison*, 507 U.S. 25, 33-34 (1993); *Scott v. Germano*, 381 U.S. 407, 409 (1965) (per curiam); *Perry v. Del Rio*, 67 S.W.3d 85, 91 (Tex. 2001).

ii.      **The 2022 election cycle is imminent, and irreparable harm will occur.**

The Legislature cannot apportion Texas House and Senate districts consistent with Article III, § 28 until 2023.   But 2022 election deadlines are swiftly approaching, and changes to legislative districts required by the U.S. Constitution will take weeks to implement. There is a significant risk that the 2022 Texas primary elections will require delay. If changes are not made to comport the legislative districts to the "one person, one vote" standard before the advancement of the election schedule, elections will be held in constitutionally impermissible districts and the plaintiffs' injuries will not be remedied in time for the 2022 election cycle.

During the recently concluded special session, the Legislature passed SB 13, which will delay election deadlines contingent on the timing of passage of certain redistricting maps.[7] SB 13 has not yet been signed by the Governor. Even if delays to the election schedule are enacted, any apportionment of state legislative districts at this time is invalid pursuant to Article III, § 28. This Court must act to guarantee that elections will be held in constitutionally apportioned districts, ensuring that every vote is of equal force.

There is no adequate remedy at law, as a vote cast in an election in an unconstitutional district cannot be remedied. Harm is, therefore, irreparable. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Should Texas implement an unauthorized plan, the Plaintiffs face not merely speculative, but inevitable harm that they would be forced to cast their ballots in an unconstitutional election scheme. *Id.* at 601; *see also Sims*, 377 U.S. at 565 ("[R]epresentative government is in essence self-government through the medium of elected representatives of the

---

[7] Texas Legislature Online: History, https://capitol.texas.gov/BillLookup/History.aspx?LegSess=872&Bill=SB13

people, and each and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies. . . . [T]he Constitution demands, no less."). Deprivation of a fundamental right is irreparable. *Goldie's Bookstore, Inc. v. Super. Ct. of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("[A]lleged constitutional infringement will often alone constitute irreparable harm."). Voting is a fundamental right as it preserves all democratic rights and "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Sims*, 377 U.S. at 555, 561.

### iii.    The injury of an illegal plan outweighs any harm to the Defendants.

There is no harm to the Defendants should this Court forbid constitutionally unsound districts. No government is entitled to exceed the power granted by the people. An injunction prohibiting use the current, unconstitutional maps for State House and State Senate districts will cause no harm. At the same time, there is tremendous injury in forcing voters to participate in an election using districts that violate "one person, one vote."

### iv.    The public interest requires constitutional districts.

The public interest is served only by voting in legislative districts consistent with "one person, one vote." As the Supreme Court has held, "judicial relief [is] appropriate . . . when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Sims*, 377 U.S. at 586. The 87th Legislature may not enact apportionment plans for state legislative districts in violation of Article III, § 28. Its inability to fulfill an obligation made impossible by the expiration of its regular session requires this Court to act to apportion legislative districts.

## IV.    Conclusion & Prayer

For the foregoing reasons, Plaintiffs respectfully request that Defendants be cited to appear and answer and that the Court take the following actions:

A)    grant appropriate preliminary injunctive relief enjoining use of the current districts for the State House and State Senate; and,

B)    adopt an interim map for use during the 2022 election cycle that cures all ripe constitutional injuries.

**DATED**: September 13, 2021                         Respectfully,

By: */s/ Martin Golando*

THE LAW OFFICE OF MARTIN GOLANDO, PLLC
Martin Golando
Texas Bar No. 24059153
martin.golando@gmail.com
2326 West Magnolia
San Antonio, Texas 78201
Telephone: (210) 471-1185
Martin.Golando@gmail.com

Wallace B. Jefferson
Texas Bar No. 00000019
wjefferson@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Telephone: (512) 482-9300
Facsimile:  (512) 482-9303

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Defendants in this action and that Defendants oppose the relief sought by this motion.

*/s/ Martin Golando*
Martin Golando

**CERTIFICATE OF SERVICE**

I certify that, on September 13, 2021, I filed the foregoing Plaintiffs' Motion for
Extension of Time with the Court's ECF/CM system, which will serve a copy on all counsel
of record.

*/s/ Martin Golando*
Martin Golando