IN THE UNITED STATES DISTRIC COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ROLAND GUTIERREZ; SARAH ECKHARDT;          §
and the TEJANO DEMOCRATS,                  §
                                           §
        *Plaintiffs*,                      §
                                           §
v.                                         §
                                           §
GREG ABBOTT, GOVERNOR OF THE STATE         §       Case No. 1:21-cv-00769-RP
OF TEXAS SUED IN HIS OFFICIAL CAPACITY;    §
AND JOSE A. ESPARZA, DEPUTY                §
SECRETARY OF STATE OF TEXAS AND            §
ACTING SECRETARY OF STATE OF TEXAS         §
SUED IN HIS OFFICIAL CAPACITY,             §
                                           §
        *Defendants*.                      §

**DEFENDANTS' MOTION TO DISMISS OR ABATE PROCEEDINGS**

TABLE OF CONTENTS

Table of Contents .......................................................................................................... ii

Index of Authorities ..................................................................................................... iii

Introduction .................................................................................................................. 1

Background ................................................................................................................... 2

Legal Standard ............................................................................................................. 4

Argument ...................................................................................................................... 4

    I.     Plaintiffs Cannot Challenge the Old Maps .................................................. 4

       A.   This Court Lacks Jurisdiction over Premature Claims ................................. 4

       B.   Plaintiffs' Claims Should Be Dismissed for Lack of Prudential Ripeness ................... 9

    II.    Plaintiffs Cannot Challenge the New Maps ................................................ 10

    III.   The Court Should Abstain under *Pullman* ................................................ 15

    IV.   Even If Other Potential Plaintiffs Had Standing, These Plaintiffs Would Not ............ 17

       A.   The Individual Plaintiffs Lack Standing ...................................................... 17

       B.   The Tejano Democrats Lack Standing ......................................................... 19

          1.   The Tejano Democrats Fail to Establish Associational Standing ............... 19

          2.   The Tejano Democrats Fail to Establish Organizational Standing ............. 20

          3.   Plaintiffs Cannot Rely on Third-Party Standing ....................................... 21

Conclusion ................................................................................................................. 22

INDEX OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................4, 11

*Ass'n for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Retardation
Ctr. Bd. of Trustees*,
19 F.3d 241 (5th Cir. 1994) ................................................................................19

*BankDirect Capital Fin., L.L.C. v. Plasma Fab, LLC*,
519 S.W.3d 76 (Tex. 2017)................................................................................13

*Barker v. Halliburton Co.*,
645 F.3d 297 (5th Cir. 2011) ..............................................................................22

*Big Type Invs., L.L.C. v. Edwards*,
985 F.3d 456 (5th Cir. 2021) ..............................................................................11

*Brooks v. Walker Cty. Hosp. Dist.*,
688 F.2d 334 (5th Cir. 1982) ..............................................................................17

*Buckley v. Valeo*,
424 U.S. 1 (1976)..................................................................................................9

*Carter v. Virginia State Bd. of Elections*,
No. 3:11-cv-30, 2011 WL 1637942 (W.D. Va. Apr. 29, 2011)...........................8

*Chapman v. Meier*,
420 U.S. 1 (1975)..................................................................................................7

*City of Rockwall v. Hughes*,
246 S.W.3d 621 (Tex. 2008)...............................................................................13

*City Pub. Serv. Bd. v. Gen. Elec. Co.*,
947 F.2d 747 (5th Cir. 1991) ..............................................................................17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..........................................................................................5, 11

*Coon v. Ledbetter*,
780 F.2d 1158 (5th Cir. 1986) ............................................................................22

*Danos v. Jones*,
    652 F.3d 577 (5th Cir. 2011) ................................................................22

*DiMaio v. Democratic Nat'l Comm.*,
    520 F.3d 1299 (11th Cir. 2008) (per curiam)........................................18

*Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008) ................................................................20

*DM Arbor Ct., Ltd. v. City of Houston*,
    988 F.3d 215 (5th Cir. 2021) ..................................................................9

*Draper v. Healey*,
    827 F.3d 1 (1st Cir. 2017) (Souter, J.) ..................................................20

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
    No. 20-1508-cv, 2021 WL 3744414 (2d Cir. Aug. 25, 2021) ................20

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215 (1990)................................................................................5

*Gallagher v. New York State Bd. of Elections*,
    496 F. Supp. 3d 842 (S.D.N.Y. 2020)...................................................18

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018)..........................................................................19

*Golden v. Zwickler*,
    394 U.S. 103 (1969)................................................................................5

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)..............................................................................11

*Growe v. Emison*,
    507 U.S. 25 (1993)..................................................................................7

*Hancock Cty. Bd. of Supervisors v. Ruhr*,
    487 F. App'x 189 (5th Cir. 2012) .........................................................20

*Harris Cty. Comm'rs Ct. v. Moore*,
    420 U.S. 77 (1975)................................................................................17

*Harrison v. NAACP*,
    360 U.S. 167 (1959)..............................................................................17

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)..............................................................................21

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)..............................................................................................19, 20

*Indem. Ins. Co. of N. Am. v. W&T Offshore, Inc.*,
  756 F.3d 347 (5th Cir. 2014) ..........................................................................................14

*Inyo Cnty. v. Paiute-Shoshone Indians*,
  538 U.S. 701 (2003)..........................................................................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)..........................................................................................................22

*Louisiana ACORN Fair Hous. v. LeBlanc*,
  211 F.3d 298 (5th Cir. 2000) ..........................................................................................21

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................5

*Machete Prods., L.L.C. v. Page*,
  809 F.3d 281 (5th Cir. 2015) ............................................................................................4

*Mauzy v. Legislative Redistricting Bd.*,
  471 S.W.2d 570 (Tex. 1971)................................................................................13, 14, 15

*Mayfield v. Texas*,
  206 F. Supp. 2d 820 (E.D. Tex. 2001) (per curiam)....................................................7, 8, 10

*McInnis-Misenor v. Maine Med. Ctr.*,
  319 F.3d 63 (1st Cir. 2003) ..............................................................................................9

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)............................................................................................................6

*Moore v. Hosemann*,
  591 F.3d 741 (5th Cir. 2009) ..........................................................................................17

*NAACP v. City of Kyle*,
  626 F.3d 233 (5th Cir. 2010) ....................................................................................20, 21

*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) (Sentelle, J.)................................................................10, 21

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) (Scalia, J., concurring in the judgment) .............................................14

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
  523 U.S. 726 (1998)..........................................................................................................10

*Ohio v. Raimondo*,
   No. 3:21-cv-64, ECF 11-1, 11-2 (S.D. Ohio Mar. 12, 2021)..................................................3

*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) ......................................................................................9

*Osterberg v. Peca*,
   12 S.W.3d 31 (Tex. 2000)........................................................................................13

*Palmer v. Jackson*,
   617 F.2d 424 (5th Cir. 1980) ...........................................................................15, 16, 17

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)................................................................................................11

*Perry v. Del Rio*,
   66 S.W.3d 239 (Tex. 2001)......................................................................................14

*Perry v. Perez*,
   565 U.S. 3883 (2012)..............................................................................................7

*Poe v. Ullman*,
   367 U.S. 497 (1961)................................................................................................7

*Railroad Commission of Texas v. Pullman Co.*,
   312 U.S. 496 (1941).......................................................................................15, 16, 17

*Renne v. Geary*,
   501 U.S. 312 (1991)................................................................................................5

*Rosedale Missionary Baptist Church v. New Orleans City*,
   641 F.3d 86 (5th Cir. 2011) (Smith, J.)........................................................................9

*Russell v. Harris County*,
   No. 4:19-cv-226, 2020 WL 1866835 (S.D. Tex. Apr. 14, 2020) (Rosenthal,
   C.J.)...................................................................................................................17

*Scott v. Germano*,
   381 U.S. 407 (1965)................................................................................................7

*Session v. Perry*,
   298 F. Supp. 2d 451 (E.D. Tex. 2004).......................................................................12

*Shepherd v. San Jacinto Junior Coll. Dist.*,
   363 S.W.2d 742 (Tex. 1962)....................................................................................12

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)............................................................................................5

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998) ................................................................................5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ..............................................................................9

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ..............................................................18

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................20

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..............................................................................6

*Tenth St. Residential Ass'n v. City of Dallas*,
    968 F.3d 492 (5th Cir. 2020) ..............................................................21

*Terrazas v. Ramirez*,
    829 S.W.2d 712 (Tex. 1991) .....................................................2, 12, 14

*Terrazas v. Slagle*,
    821 F. Supp. 1154 (W.D. Tex. 1992) ..................................................14

*Texas Boll Weevil Eradication Found., Inc. v. Lewellen*,
    952 S.W.2d 454 (Tex. 1997) ...............................................................12

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) (Smith, J.) ......................................15, 16

*Texas Indigenous Council v. Simpkins*,
    No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) ...........19

*Texas v. United States*,
    523 U.S. 296 (1998) ....................................................................6, 8, 11

*Thomas v. Reeves*,
    961 F.3d 800 (5th Cir. 2020) (en banc) (per curiam) .........................17

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ..............................................................................6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..........................................................................5

*United States v. Hays*,
    515 U.S. 737 (1995) ..............................................................................5

*Upham v. Seamon*,
    456 U.S. 37 (1982)...........................................................................................7

*Valley v. Rapides Par. Sch. Bd.*,
    145 F.3d 329 (5th Cir. 1998) (Smith, J.), *vac'd*, 169 F.3d 216 (5th Cir. 1999).......................9

*Valley v. Rapides Par. Sch. Bd.*,
    145 F.3d 329 (5th Cir. 1998) (Smith, J.), *vac'd*, 169 F.3d 216 (5th Cir. 1999),
    *on reh'g*, 173 F.3d 944 (5th Cir. 1999) (en banc)......................................................6

*White v. Weiser*,
    412 U.S. 7835 (1973)......................................................................................7

*Yazzie v. Hobbs*,
    977 F.3d 964 (9th Cir. 2020) (per curiam)..............................................................18

## STATUTES

13 U.S.C. § 141(a), (c).........................................................................................3

42 U.S.C. § 1983..................................................................................11, 21, 22

Tex. Gov't Code § 301.001.....................................................................................3

## OTHER AUTHORITIES

Antonin Scalia & Bryan A. Garner, *Reading Law* 93 (2012)....................................................13

Elihu Root, *The Importance of an Independent Judiciary*, 72 Independent 704
    (1912).......................................................................................................13

Fed. R. Civ. P. 12(b)(1).........................................................................................4

Fed. R. Civ. P. 12(b)(1), (6)...................................................................................4

Fed. R. Civ. P. 12(b)(6).........................................................................................4

Gov. Greg Abbott, Proclamation (Sept. 7, 2021),
    https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/
    2021/proc09072021_3CS.pd................................................................................4, 6

Reg. Sess., S.J.R. 2, https://lrl.texas.gov/legis/billsearch/text.cfm?legSession=50-
    0&billtypeDetail=SJR&bill NumberDetail=.............................................................3

S.B. 13, 87th Leg., 2.d C.S. (2021),
    https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=872&Bill=SB13............................4

Tex. Const. art. III, § 1.........................................................................................2

Tex. Const. art. III, § 24(b) ...................................................................................3

Tex. Const. art. III, §28 ..................................................................................*passim*

Tex. Const. art. III, §§ 29, 31 (1848) .................................................................2

Texas Constitution .........................................................................................*passim*

Texas Legislative Council, *Dates of Interest: 87th Legislature*,
    https://tlc.texas.gov/docs/legref/Dates-of-Interest.pdf .................................3

U.S. Census Bureau, *Decennial Census P.L. 94-171 Redistricting Data* (Aug. 12,
    2021), https://www. census.gov/programs-surveys/decennial-
    census/about/rdo/summary-files.htm ...........................................................3

U.S. Const. art. I, § 4 ...........................................................................................7

U.S. Const. art. III, § 2 .......................................................................................5

## INTRODUCTION

The Texas Legislature is on the cusp of redistricting. As Plaintiffs concede—and the public record confirms—legislative committees have already begun working. The Governor has called a special session, and the Legislature will meet in a matter of days for the purpose of passing new maps.

Plaintiffs nonetheless—less than three weeks after redistricting data was released to the states—filed a lawsuit that challenges the constitutionality of the old House and Senate maps. Their challenge fails at the outset because they face no injury from the old maps. Everyone agrees Defendants will not implement the old maps in the 2022 election cycle. Instead, new maps passed by the Legislature in its upcoming special session will be utilized.

Plaintiffs' theory is that the Legislature's effort to redistrict in the upcoming session violates the Texas Constitution, which provides that "[t]he Legislature shall" redistrict "at its first regular session after the publication of each United States decennial census." Tex. Const. art. III, §28. But Plaintiffs' theory—which seeks to exploit delays in the federal census caused by the COVID-19 pandemic—turns the Texas Constitution on its head. That provision prescribes what the Legislature *must* do, but neither it nor any other provision *prohibits* the Legislature from redistricting at other times when circumstances call for it. And if not for the pandemic, the census data necessary for redistricting would have arrived during the Legislature's regular session, and the Legislature would have in fact passed new maps then.

The pandemic disrupted the Census Bureau's efforts to complete the census by its statutory deadline. The Census Bureau did not release the relevant redistricting data until August 12, 2021, months after it should have and months after the Legislature's regular session had ended. Even so, the Legislature got to work immediately.

Plaintiffs seek to derail that work. They counterintuitively claim that Article III, Section

1

28—a provision *requiring* timely redistricting to *avoid* one-person-one-vote problems—somehow *prohibits* the Legislature from redistricting and *creates* one-person-one-vote problems. But nothing in the Texas Constitution's text prevents the Legislature from redistricting during the special session. And Plaintiffs' position is inconsistent with past practice and judicial precedent. *See, e.g.*, *Terrazas v. Ramirez*, 829 S.W.2d 712, 726 (Tex. 1991).

In any event, this Court does not decide state constitutional claims against state officials, especially when, as here, the plaintiffs cannot establish standing or ripeness.

This Court should decline Plaintiffs' invitation to short circuit the legislative process and take over redistricting itself. Instead, the Court should dismiss Plaintiffs' claims for lack of jurisdiction, for failure to state a claim, and under principles of abstention. In the alternative, the Court should abate these proceedings until after the special session and the Legislature has had the opportunity to fully address legislative redistricting.

## BACKGROUND

The Texas Constitution grants the Legislature the power to apportion seats in the Texas House of Representatives and the Texas Senate. *See* Tex. Const. art. III, § 1 (vesting the legislative power of the State). That has been true as long as Texas has been a State. *See* Tex. Const. art. III, §§ 29, 31 (1848).

For almost as long, the Texas Constitution has required the Legislature to reapportion legislative districts after each census. *See* Tex. Const. art. III, § 28 (1876). Today, that section provides: "The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts . . . ." Tex. Const. art. III, § 28.

Historically, however, the Legislature had not always redistricted on time. *See* Vernon's Ann. Tex. Const. art. III, § 28, interpretive commentary (2007). So in 1948, Texas voters amended

Article III, Section 28 in 1948 to add a backup plan: "In the event the Legislature shall at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas" ("LRB"). Tex. Const. art. III, § 28.[1] Under Texas law, then, the Legislature *may* redistrict at any time, but it *must* redistrict at its first regular session after the federal census is published. If the Legislature fails to do so, the LRB will step in.

In a normal census year, the Legislature would have redistricted during its regular session. *See* ECF 1 ¶ 24. By federal statute, the Census Bureau was supposed to release redistricting data no later than April 1, 2021. *See* 13 U.S.C. § 141(a), (c). If the federal government had met its legal obligations, the data would have arrived during the Eighty-Seventh Regular Session, which ran from January 12, 2021, to May 31, 2021. *See* Tex. Const. art. III, § 24(b); Tex. Gov't Code § 301.001.[2]

But the COVID-19 pandemic disrupted that schedule.[3] The Census Bureau did not release any redistricting data until mid-August, months after the regular legislative session ended.  And it still has more to produce. According to the Census Bureau, it "provided redistricting data as legacy format summary files for all states on August 12, 2021 and committed "to providing the full redistricting data toolkit on Sept. 16, 2021."[4] *See* ECF 1 ¶ 25.

---

[1] *Proposing an amendment to provide for a Board for apportioning the State into senatorial districts and representative districts in the event the Legislature fails to make such apportionment*, Acts 1947, 50th Reg. Sess., S.J.R. 2, https://lrl.texas.gov/legis/billsearch/text.cfm?legSession=50-0&billtypeDetail=SJR&bill NumberDetail=2.

[2] Texas Legislative Council, *Dates of Interest: 87th Legislature*, https://tlc.texas.gov/docs/legref/Dates-of-Interest.pdf.

[3] For detailed explanations of the challenges the Census Bureau faced, see the declarations of federal officials Michael Thieme and James Whitehorne, *Ohio v. Raimondo*, No. 3:21-cv-64, ECF 11-1, 11-2 (S.D. Ohio Mar. 12, 2021).

[4] U.S. Census Bureau, *Decennial Census P.L. 94-171 Redistricting Data* (Aug. 12, 2021), https://www.census.gov/programs-surveys/decennial-census/about/rdo/summary-files.html.

The federal government's delay has forced Texas to work on a modified schedule. The Governor has called a special session of the Legislature, beginning September 20, 2021, to address redistricting. *See* ECF 1 ¶ 26.[5] In anticipation of that special session, legislators have been hard at work on redistricting issues. As an initial matter, the Legislature passed a bill extending election-related deadlines to accommodate the new redistricting schedule.[6] Further, "[l]egislative committees have begun taking testimony of the demographic and population shifts in this last decade and have stated their intention to act swiftly to apportion legislative districts once called to do so by the Governor." ECF 1 ¶ 27. According to Plaintiffs, mapping began on September 1, 2021. *See* ECF 1 ¶ 29.

## LEGAL STANDARD

Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). For a facial attack under Rule 12(b)(1) and a motion under Rule 12(b)(6), "the Court "must take all of the factual allegations in the complaint as true, but" it is "not 'bound to accept as true a legal conclusion couched as a factual allegation.'" *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

I.     **Plaintiffs Cannot Challenge the Old Maps**

   **A.  This Court Lacks Jurisdiction over Premature Claims**

This Court should dismiss Plaintiffs' claims against the old maps because they have failed

---

[5] Gov. Greg Abbott, Proclamation (Sept. 7, 2021), https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2021/proc09072021_3CS.pdf.

[6] *See* An act relating to dates of certain elections to be held in 2022, S.B. 13, 87th Leg., 2.d C.S. (2021), https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=872&Bill=SB13.

to demonstrate standing or that their clams are ripe.

The federal Constitution "limits federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting U.S. Const. art. III, § 2). As "[t]he part[ies] invoking federal jurisdiction," Plaintiffs "bear[] the burden of establishing" both standing and ripeness. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (standing); *see Renne v. Geary*, 501 U.S. 312, 316 (1991) (ripeness). Both doctrines are based on the same insight: "The power of courts . . . to pass upon the constitutionality of" state laws "arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough." *Golden v. Zwickler*, 394 U.S. 103, 110 (1969).

"[S]tanding 'is perhaps the most important of [the jurisdictional] doctrines.'" *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990)). "[T]he '[f]irst and foremost' of standing's three elements" is "injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To support federal jurisdiction, a plaintiff's alleged injury must be "actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n. 2).

The ripeness doctrine is similar. A "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). In many cases, "the Article III standing and ripeness issues . . .

'boil down to the same question.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128, n.8 (2007)).

In this case, Plaintiffs lack standing—and their claims are not ripe—because they cannot show that the challenged maps will actually be used in the 2022 election. Indeed, their complaint alleges the opposite: that the Legislature is already working to draw new maps. "Legislative committees have begun taking testimony of the demographic and population shifts in this last decade and have stated their intention to act swiftly to apportion legislative districts once called to do so by the Governor." ECF 1 ¶ 27. Plaintiffs further allege that the Governor will call a special session for redistricting soon, *see id.* ¶ 28, which has in fact already happened.[7] And according to Plaintiffs, "mapping" already began. *Id.* ¶ 29 (alleging "mapping will begin" on "September 1, 2021," the day the complaint was filed).

In light of these developments, Plaintiffs cannot plausibly allege that Defendants will enforce the old maps during the 2022 election cycle. That the old maps have not yet been repealed is not enough to support federal jurisdiction. "The existence of a law is not, by itself, necessarily sufficient to establish imminent injury." *Valley v. Rapides Par. Sch. Bd.*, 145 F.3d 329, 333 n.8 (5th Cir. 1998) (Smith, J.), *vac'd*, 169 F.3d 216 (5th Cir. 1999), *on reh'g*, 173 F.3d 944 (5th Cir. 1999) (en banc) (instructing the district court to await further developments before proceeding). Even when a law imposes criminal penalties—unlike here—its "mere existence" provides "insufficient grounds to support a federal court's adjudication of its constitutionality" if a "real threat of enforcement is wanting." *Poe v. Ullman*, 367 U.S. 497, 507 (1961).

Without a threat that Defendants will implement the old maps, Plaintiffs cannot plausibly

---

[7] Gov. Greg Abbott, Proclamation (Sept. 7, 2021), https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2021/proc09072021_3CS.pdf.

allege an injury or ripeness. This analysis applies with particular force in a redistricting case. Plaintiffs erroneously assert that "this Court has the exclusive obligation to create interim maps," ECF 1 ¶ 1, but the Constitution charges *States* with central responsibility for the apportionment of electoral districts. *See* U.S. Const. art. I, § 4; *id.* amend. X. "[O]n many occasions," the Supreme Court has emphasized that "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than a federal court." *Growe v. Emison*, 507 U.S. 25, 34 (1993) (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)); *see also Perry v. Perez*, 565 U.S. 388, 392–93 (2012); *Upham v. Seamon*, 456 U.S. 37, 41 (1982).

For this reason, federal courts cannot interfere with state apportionment efforts unless the plaintiff *proves* that the State will be unable to implement a new map. As explained by the Supreme Court: "Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe*, 507 U.S. at 34 (citing *Scott v. Germano*, 381 U.S. 407, 410 (1965)). And from that principle, in turn, it follows that a district court errs where it allows a redistricting claim to proceed before allowing the state legislature an "adequate opportunity" to address the old map. *Upham*, 456 U.S. at 41 (quoting *White v. Weiser*, 412 U.S. 783, 794–95 (1973)).

Only one Texas decision has considered a motion to dismiss in similar circumstances, and it held that the plaintiffs lacked standing and that their claims were not ripe. In *Mayfield v. Texas*, 206 F. Supp. 2d 820 (E.D. Tex. 2001) (per curiam) (three-judge district court), the plaintiffs challenged alleged malapportionment of Texas's congressional districts after the 2000 Census. *Id.* at 822. But they sued too early: The Legislature "still ha[d] ample opportunity to confect a new redistricting plan." *Id.* As a result, the plaintiffs' claims could not support federal jurisdiction.

First, the plaintiffs lacked standing because "any alleged injury [was] nothing more than

an 'uncertain potentiality.'" *Id.* at 823. "[T]here [was] no threat that an election will be held with the current districting scheme in place, and there [was] no reason to believe at [that] time that the Texas Legislature will fail to correct any malapportionment before the next election process begins." *Id.*

Second, the plaintiffs' claims were not ripe. "[B]ecause there [was] no reason to believe that the Texas Legislature [would] fail to" adopt new maps in light of "the new census figures," the plaintiffs' claims "rest[ed] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 824 (quoting *Texas*, 523 U.S. at 300); *see also Carter v. Virginia State Bd. of Elections*, No. 3:11-cv-30, 2011 WL 1637942, at *2 (W.D. Va. Apr. 29, 2011) (dismissing for lack of ripeness because "there [was] no reason to suspect that Virginia's lawmakers will fail to enact appropriate redistricting legislation in a timely manner").

The Court should reach the same result here. As explained above, Plaintiffs do not even attempt to allege that the Legislature will fail to enact maps. On the contrary, Plaintiffs concede in their complaint that the Legislature is currently working to redistrict and will do so in a special session called by the Governor. *See* ECF 1 ¶¶ 26–29.

Instead, Plaintiffs argue that, when the Legislature adopts new maps during the upcoming special session, it will be violating the Texas Constitution. *See id.* ¶¶ 2, 41. As an initial matter, Plaintiffs are wrong about Texas law. As explained below, the Texas Constitution permits the Legislature to redistrict during the upcoming special session. *See infra* Part II. In any event, even if the Court agreed with Plaintiffs about Texas law, their claims would still fail.

For purposes of this case, what matters is what maps will in fact be implemented. Because Texas officials believe that the Legislature has the authority to redistrict during the upcoming special session, the new maps passed during the special session, not the old maps, will be utilized

for the 2022 election cycle. Plaintiffs do not dispute this fact, only the validity of doing so under state law. Because Defendants have no intention to implement the old maps, there is no basis for Plaintiffs to seek prospective relief against their implementation.

### B.    Plaintiffs' Claims Should Be Dismissed for Lack of Prudential Ripeness

Like the constitutional limits on federal jurisdiction, prudential ripeness bars Plaintiffs' premature claims. The doctrine of prudential ripeness implements "the policy of judicial restraint from unnecessary decisions." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 n.10 (5th Cir. 2011) (Smith, J.) (quoting *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003)). It centers on "prudential reasons for refusing to exercise jurisdiction." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)). "Even when constitutional ripeness is satisfied, . . . a court may decide not to hear a case for prudential reasons, such as '[p]roblems of prematurity and abstractness.'" *Id.* at 218 n.1 (quoting *Buckley v. Valeo*, 424 U.S. 1, 114 (1976)). The Fifth Circuit recognizes two central considerations: (1) "the *fitness* of the issues for judicial decision" and (2) "the *hardship* to the parties of withholding court consideration." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)) (emphasis added). "These prudential concerns ensure that changing hypothetical circumstances or lack of party interest does not make resolution of the legal issues unnecessary." *Valley*, 145 F.3d at 332.

Here, both factors counsel against exercising jurisdiction. First, Plaintiffs' claims are not fit for judicial decision because Plaintiffs are not able to establish that Defendants are going to undertake any conduct warranting an injunction. Moreover, "judicial intervention would inappropriately interfere with further [legislative] action" by improperly suggesting that the Texas Legislature should not draw new maps itself. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

726, 733 (1998). Second, Plaintiffs cannot show hardship from dismissal until such time, if any, as the Legislature fails to redistrict and Defendants appear poised to implement unconstitutional maps. As explained in *Mayfield*, "[i]f, after the Texas Legislature acts or fails to act, the Plaintiffs still believe their voting rights are being impinged, they may bring suit at the appropriate time." 206 F. Supp. 2d at 826; *see also Ohio Forestry Ass'n*, 523 U.S. at 734 (dismissing for lack of ripeness because the plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain").

This conclusion finds further support in "the usually unspoken element of the rationale underlying the ripeness doctrine: If we do not decide [Plaintiffs' claims] now, we may never need to." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (Sentelle, J.). Dismissing for lack of prudential ripeness will "protect the expenditure of judicial resources" and "comport[] with [the Court's] theoretical role as the governmental branch of last resort." *Id.* Especially in politically charged cases, "Article III courts should not make decisions unless they have to." *Id.*

## II.    Plaintiffs Cannot Challenge the New Maps

This Court should also dismiss any claims Plaintiffs allege against the forthcoming new maps that will be passed by the Legislature. Although Plaintiffs frame their claim as a federal constitutional challenge to the old maps, in substance they allege that the Legislature's attempt to pass new maps during the upcoming special session violates the Texas Constitution. *See. e.g.*, ECF 1 ¶¶ 1–2. To the extent Plaintiffs want this Court to prevent the Legislature from redistricting during a special session, they cannot seek such relief. This Court cannot hear a state constitutional challenge to the new maps for four reasons, and in any event, Plaintiffs are wrong on the merits.

First, Plaintiffs cannot establish a "*certainly impending*" injury in fact. *Clapper*, 568 U.S. at 409. No one yet knows what the new maps will look like. The redistricting process has just

begun. *See* ECF 1 ¶¶ 27–29. There is no reason to believe that the new maps will contain malapportioned districts, much less that Plaintiffs will reside in such a district. Here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of [future] misconduct." *Iqbal*, 556 U.S. at 679; *see also supra* Part I.A.

Second, Plaintiffs' claim is also not ripe for review. Plaintiffs' "claim is not ripe for adjudication" because "it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas*, 523 U.S. at 300. Of course, the Court cannot determine whether future maps will violate Plaintiffs' constitutional rights until those maps are drawn. *See supra* Part I.A

Third, sovereign immunity bars Plaintiffs' state-law theory. Plaintiffs' argument that the Texas Legislature cannot draw new maps in a special session is founded entirely on their erroneous interpretation of the Texas Constitution. *See* ECF 1 ¶¶ 1–2, 12–23. Sovereign immunity bars—and the *Ex parte Young* exception does not apply to—claims that *state* officials are violating *state* law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103–06 (1984). Because the Texas Legislature's authority to redistrict during a special session "is purely an issue of state law," this Court cannot rule on that question. *See Big Type Invs., L.L.C. v. Edwards*, 985 F.3d 456, 460 n.2 (5th Cir. 2021) (citing *Pennhurst*, 465 U.S. at 104–06).

Fourth, Plaintiffs' cause of action—42 U.S.C. § 1983—does not provide a vehicle for raising violations of state law. Section 1983 "provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' *of the United States*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis added); *see also Inyo Cnty. v. Paiute-Shoshone Indians*, 538 U.S. 701, 708 (2003).

But if the Court reaches the merits of Plaintiffs' state-law theory, it should hold that the

Texas Constitution permits the Legislature to redistrict during the upcoming special session.

The Texas Constitution "vests legislative power in [the Texas] Legislature." *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465 (Tex. 1997). It is therefore "well-established under Texas law that the Texas Legislature may legislate in *any* area not specifically proscribed by the Texas Constitution." *Session v. Perry*, 298 F. Supp. 2d 451, 467 n.48 (E.D. Tex. 2004) (emphasis added); *see also Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 743 (Tex. 1962) ("[A]n act of a state legislature is legal when the Constitution contains no prohibition against it.").

No provision in the Texas Constitution prohibits the Legislature from reapportioning state legislative seats during a special session. Indeed, Plaintiffs do not contest that the Legislature generally has the power to redistrict, including during a special session. *See* ECF 1 ¶ 23. Instead, Plaintiffs advance the implausible argument that Article III, Section 28 limits the Legislature to a "specific schedule for apportionment" that only permits the Legislature to act in a special session once the first regular session after the census data is published has ended. *Id.* But their interpretation finds no support in the constitutional text, purpose, history, or precedent.

The Texas Constitution provides that "[t]he Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts . . . ." Tex. Const. art. III, § 28. It then provides an alternative mechanism should the Legislature "fail to make such apportionment." *Id.* At no point does Article III, Section 28 prohibit the Legislature from redistricting at other times. *See Terrazas*, 829 S.W.2d at 726 (finding that Article III, Section 28 permits the Legislature to take up redistricting during a special session). Indeed, nowhere in the Texas Constitution is there a limitation on when the Legislature can redistrict. Plaintiffs' non-textual interpretation of Article III, Section 28 would rewrite the

Constitution by effectively adding the word "only" to the text such that the Legislature could redistrict "[only] at its first regular session." But "changing the meaning of the statute by adding words to it . . . is a legislative function, not a judicial function." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008). Courts must be "[s]ticklers about not rewriting [legal texts] under the guise of interpreting them." *BankDirect Capital Fin., L.L.C. v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 93 (2012) ("It is not [a judge's] function or within his power to enlarge or improve or change the law.") (quoting Elihu Root, *The Importance of an Independent Judiciary*, 72 Independent 704, 704 (1912)).

Moreover, Plaintiffs' interpretation would undermine the "object and purpose" of Article III, Section 28, which "obviously was to get on with the job of legislative redistricting which had been neglected or purposely avoided for more than twenty-five years." *Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971). Article III, Section 28 *mandates* legislative redistricting after publication of the decennial census to *avoid* one-person-one-vote problems. But Plaintiffs seek to invoke Article III, Section 28 to *prohibit* legislative redistricting and, in fact, *create* one-person-one-vote problems. That would be an absurd result, especially because the canon of constitutional avoidance requires courts to interpret state law to avoid federal constitutional problems, not create them. *See Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000) ("[W]e should, if possible, interpret statutes in a manner to avoid constitutional infirmities.").

Thus, it is no surprise that the Legislature has frequently, and with judicial approval, redistricted more often than required by Article III, Section 28, including in the 1970s, 1980s, 1990s, 2000s, and 2010s. *See Ramirez*, 829 S.W.2d 7 at 726 (endorsing special session reapportionments); *Perry v. Del Rio*, 66 S.W.3d 239, 246 (Tex. 2001) ("[C]ongressional redistricting plans had been enacted in special sessions in 1971, 1981, and 1991."); *Terrazas v.*

*Slagle*, 821 F. Supp. 1154, 1155 (W.D. Tex. 1992) (describing the Legislature's attempts at redistricting state House and Senate seats during a special session). On the other side of the scale, Plaintiffs have not cited a single case holding that a legislative attempt at redistricting violated Article III, Section 28.

Plaintiffs cite *Terrazas v. Ramirez*, *see* ECF 1 ¶ 22, but they have misapprehended it. That case recognized that the Legislature was free to redistrict in special sessions because Article III, Section 28 sets a floor, not a ceiling:

> Although article III, section 28 of the Texas Constitution explicitly requires the Legislature to reapportion legislative districts in the first regular session after each United States decennial census is published, neither that section nor any other constitutional provision prohibits the Legislature from acting in later special or regular sessions after the constitutional authority of the Legislative Redistricting Board has expired.

*Ramirez*, 829 S.W.2d at 726. Emphasizing that the opinion specifically approved redistricting in "*later*" special sessions, Plaintiffs suggest that redistricting during *earlier* special sessions must then be prohibited. ECF 1 ¶ 22. That is a logical fallacy known as "denying the antecedent" or "the fallacy of the inverse." *NLRB v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring in the judgment). Ruling that "if the Legislature is in a later special session, then it can redistrict" in no way suggests that "if the Legislature is not in a later special session, then it cannot redistrict." *See Indem. Ins. Co. of N. Am. v. W&T Offshore, Inc.*, 756 F.3d 347, 355 n.5 (5th Cir. 2014) (explaining that "A→B" does not imply "Not A → Not B").

Plaintiffs also cite *Mauzy* for the proposition that "the overriding intent" behind Article, III, Section 28 "was to permit apportionment of the state into legislative districts at the *regular* session of the Legislature." ECF 1 ¶ 21 (quoting *Mauzy*, 71 S.W.2d at 573). Plaintiffs emphasized "regular," but they should have emphasized "permit." That the Texas Constitution *permits* redistricting during *regular* sessions does not imply that it *prohibits* redistricting during *special*

sessions. Again, Plaintiffs ignore the plain text and commit the fallacy of denying the antecedent.

In the end, Plaintiffs' position finds no support in the constitutional text, the purpose of the amendment, Texas history, or judicial precedent. The Texas Legislature has the authority to redistrict during the upcoming special session.

## III.    The Court Should Abstain under *Pullman*

In the alternative, the Court should abstain under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). Plaintiffs' complaint focuses almost exclusively on a disputed state-law issue—whether the Texas Constitution prohibits the Legislature from redistricting during the upcoming special session—the resolution of which would moot or substantially alter their claims. Deciding Plaintiffs' federal claims under these circumstances would violate established principles of federalism and comity.

"The *Pullman* case establishes two prerequisites for *Pullman* abstention: (1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional questions raised." *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980).  Reaffirming the importance of *Pullman* abstention in another election-law case, the Fifth Circuit recently criticized a "district court's decision to forge ahead despite an intimately intertwined—and, at that time, unresolved—state-law issue." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 397 n.13 (5th Cir. 2020) (Smith, J.); *see also id.* at 419 (Costa, J., concurring in the judgment).

The first prong of *Pullman* abstention is satisfied by the fact that a state-law question permeates Plaintiffs' arguments: whether Article III, Section 28 of the Texas Constitution forbids the Legislature from redistricting during the upcoming special session. *See, e.g.*, ECF 1 ¶¶ 1–2. Defendants believe that the Texas Constitution clearly allows the Legislature to redistrict in these circumstances. *See supra* Part II. But even if this Court is not prepared to dismiss Plaintiffs' claims

on the ground that their reading of the Texas Constitution is clearly wrong, it should at least recognize that their reading of the Texas Constitution is not clearly right. Thus, Defendants ask, in the alternative, that the Court abstain from deciding the sufficiently unsettled state-law issue.

The second prong of *Pullman* abstention is also met because resolution of the state-law question could moot or alter Plaintiffs' federal claims. If state courts rule that the Legislature can redistrict in the upcoming special session, Plaintiffs' federal claims will be fatally undermined, or at least put them "in a different posture." *Palmer*, 617 F.2d at 428; *see also Texas Democratic Party*, 961 F.3d at 397 n.13.

Plaintiffs do not attempt to hide the fact that their federal claims rest on the resolution of the disputed state-law question. Indeed, the introductory paragraphs of their complaint focus on "a matter of Texas constitutional law" and "[t]he plain text of the Texas Constitution." ECF 1 ¶¶ 1–2. The rest of the complaint is similar. The "Facts" section begins with a subsection entitled "Texas Law on the Schedule for Apportionment," which itself begins with a block quote from the Texas Constitution. *Id.* ¶ 12. Indeed, Plaintiffs argue that they "will likely succeed on the merits, because [of what] the Texas Constitution requires." *Id.* ¶ 41. By so pleading, Plaintiffs effectively concede that their federal-law claim depends on the disputed question of state law.[8]

If state courts resolve this issue in Defendants' favor—meaning the Legislature is allowed to redistrict—then Plaintiffs' alleged future injuries will not materialize. That would mean that Plaintiffs could not establish federal jurisdiction or prevail on the merits. As the *en banc* Fifth Circuit recently (and unanimously) held, challenges to the use of maps become moot when those

---

[8] The complaint also asserts that the old maps result in districts "malapportioned beyond what is permissible under federal and *state* law." ECF 1 ¶ 31 (emphasis added). Defendants interpret this as a stray remark, not an indication that Plaintiffs are attempting to bring an independent claim under state law. *Cf. id.* ¶ 39 (expressly asserting a federal-law claim). A state-law malapportionment claim would be barred both for the reasons Plaintiffs' federal claim is barred and for the reasons explained above. *See supra* Part II.

maps will no longer be used for future elections. *See Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) (en banc) (per curiam). Thus, there is more than "a possibility that the state law determination will moot . . . the federal constitutional questions raised." *Palmer*, 617 F.2d at 428.

At a minimum, *Pullman* abstention is appropriate because a state-court ruling "might 'at least materially change the nature of the problem.'" *Palmer*, 617 F.2d at 431 (quoting *Harrison v. NAACP*, 360 U.S. 167, 177 (1959)). Federal courts abstain when the alleged federal rights at issue require "focus[] on Texas law." *Russell v. Harris County*, No. 4:19-cv-226, 2020 WL 1866835, at *12 (S.D. Tex. Apr. 14, 2020) (Rosenthal, C.J.).

Here, Plaintiffs do not appear to dispute that "clarification of" state law "may have a considerable impact on the posture and ultimate resolution of . . . federal issues." *Brooks v. Walker Cty. Hosp. Dist.*, 688 F.2d 334, 338 (5th Cir. 1982); *see also Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009). As the Supreme Court has explained, "[i]f the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Harris Cty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 84 (1975). "[N]o matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination" because "[t]he last word on the meaning of" Texas law belongs "to the supreme court of Texas." *Pullman*, 312 U.S. at 499–500; *see also City Pub. Serv. Bd. v. Gen. Elec. Co.*, 947 F.2d 747, 748 (5th Cir. 1991) (explaining that federal courts are "*Erie*-bound to apply state law as state courts would do").

## IV.   Even If Other Potential Plaintiffs Had Standing, These Plaintiffs Would Not

Even if Plaintiffs could overcome the fatal defects explained above, they would not be able to bring this suit. Each of the Plaintiffs lacks standing for additional reasons.

### A.   The Individual Plaintiffs Lack Standing

In appropriate cases, individual plaintiffs can have standing to challenge the districts in

which they will vote—but only if they establish that they will vote. In this case, Senators Gutierrez and Eckhardt ("Individual Plaintiffs") conspicuously fail to allege that they intend to vote in the 2022 election. *See* ECF 1 ¶¶ 3–4. That failure, standing alone, deprives them of standing to complain about alleged vote dilution resulting from malapportionment. *See Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020) (per curiam) (dismissing for lack of standing because "any allegation or showing as to, at a bare minimum, whether any of the plaintiffs intend to vote in this general election" was "missing"); *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1302 (11th Cir. 2008) (per curiam) (holding a "complaint undeniably fails the test for constitutional standing" when the plaintiff "never alleged that he actually voted, nor even so much as suggested that he intended to vote in," the election at issue); *Gallagher v. New York State Bd. of Elections*, 496 F. Supp. 3d 842, 850 (S.D.N.Y. 2020) (holding the plaintiffs lacked standing to challenge a deadline for voting by mail when "none of them has alleged that he or she intends to cast an absentee ballot *by mail*").

To be sure, both Individual Plaintiffs claim to have voted in past elections, *see* ECF 1 ¶¶ 3–4, but "evidence that a plaintiff has taken an action in the past does not, by itself, demonstrate a substantial risk that the plaintiff will take the action in the future; there must be some evidence that the plaintiff intends to take the action again." *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019). Thus, at the pleading stage, Individual Plaintiffs need to allege that they intend to vote going forward. In light of the ease with which one can make such an allegation, there is no reason for Individual Plaintiffs to omit such an allegation except that they do not actually plan to vote.[9]

---

[9] Even if Individual Plaintiffs had plausibly alleged an intent to vote, any injuries in fact would be "district specific." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018). They would still lack standing to seek relief beyond "the revision of the boundaries of [their] own district[s]," such as redrawing the entire maps. *Id.*

B.       **The Tejano Democrats Lack Standing**

The Tejano Democrats cannot pursue their claims because they have not plausibly alleged associational standing, organizational standing, or an exception to the bar on third-party standing.

1.       **The Tejano Democrats Fail to Establish Associational Standing**

For associational standing, a plaintiff must establish three elements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Tejano Democrats have not satisfied this test.

First, the Tejano Democrats have not established that they have "members" within the meaning of the *Hunt* test. While their complaint asserts that Tejano Democrats has "2,100 members," ECF 1 ¶ 5, it never alleges *facts* establishing that those individuals "possess all of the indicia of membership" required by *Hunt*: that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Texas Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014). Plaintiffs allege none of this for the supposed members of Tejano Democrats.

Second, even assuming the Tejano Democrats have members, Plaintiffs have failed to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). This requires, among other things, allegations of a

"specific member" and specific facts establishing how that member will suffer an injury in fact. *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). This defect is independently sufficient to warrant dismissal of the Tejano Democrats. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the disability policy).[10]

Third, the Tejano Democrats fail to allege that "the interests it seeks to protect are germane to [its] purpose." *Hunt*, 432 U.S. at 343. Indeed, Plaintiffs never allege what the purpose of the Tejano Democrats is. Vaguely describing some of the organization's activities does not establish the organization's purpose under *Hunt*. *See* ECF 1 ¶ 5. To the extent the Tejano Democrats' purpose is to promote "the needs of Mexican American voters and candidates," *id.*, their malapportionment claim is not germane to that purpose. Unlike, for example, a racial gerrymandering claim or a Voting Rights Act claim, a malapportionment claim has no discernible connection with purported members' status as "Mexican American voters and candidates." *Id.*

### 2.  The Tejano Democrats Fail to Establish Organizational Standing

To establish organizational standing, the Tejano Democrats must have *itself* suffered an injury-in-fact. *See Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020). An injury in this context can occur where the organization's mission is "perceptibly impaired"

---

[10] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that. In any event, if the Tejano Democrats did not have to "name names," they would at least have to include allegations "identifying members who have suffered the requisite harm" by describing, at a minimum, the specific districts in which their supposed members live and whether those supposed members intend to vote in 2022. *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, No. 20-1508-cv, 2021 WL 3744414, at *5 (2d Cir. Aug. 25, 2021).

because it has "diverted significant resources to counteract the defendant's conduct." *City of Kyle*, 626 F.3d at 238 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Notably, "time spent attending meetings and one member's efforts intervening as an interested party do not constitute 'significant resources.'" *Tenth St. Residential Ass'n*, 968 F.3d at 500 (quoting *Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000)). The challenged conduct must make the entity's "activities more difficult" and constitute "a direct conflict" with its mission. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996).

The Tejano Democrats lack organizational standing for several reasons. First, they fail to specify their mission, making it impossible to tell whether that mission has been "perceptibly impaired." *Havens*, 455 U.S. at 379.  To the extent their mission is tied to the interests of "Mexican American voters and candidates," the Tejano Democrats never allege that any malapportionment will weaken the interests of that group relative to any other ethnic group. ECF 1 ¶ 5. Assuming for the sake of argument that "educat[ing] voters" is a sufficiently specific organizational purpose, *id.*, Plaintiffs do not allege that malapportionment poses a "direct conflict" to voter education. *Nat'l Treasury Emps. Union*, 101 F.3d at 1430. Finally, Plaintiffs do not allege that the Tejano Democrats have "diverted significant resources" or explain how the redistricting maps have caused them to "differ from [their] routine [informational] activities." *City of Kyle*, 626 F.3d at 238.

### 3.      Plaintiffs Cannot Rely on Third-Party Standing

Finally, the Tejano Democrats lack standing for another reason: the bar on third-party standing. Section 1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights" at issue. 42 U.S.C. § 1983. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless

of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014).

Here, all of Plaintiffs' claims are based on the right to vote. *See* ECF 1 ¶¶ 37–46. But the Tejano Democrats is an artificial entity does not *itself* possess voting rights. The inevitable consequence of those facts is that the Tejano Democrats are attempting to assert the rights of third parties and therefore cannot sue under § 1983. These claims should be dismissed.

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' claims or, in the alternative, abate these proceedings until after the Legislature has had the opportunity to fully address House and Senate redistricting in special session.

Date: September 14, 2021                     Respectfully submitted.

KEN PAXTON                                   /s/ Patrick K. Sweeten
Attorney General of Texas                    PATRICK K. SWEETEN
                                             Deputy Attorney General for Special Litigation
BRENT WEBSTER                                Tex. State Bar No. 00798537
First Assistant Attorney General
                                             WILLIAM T. THOMPSON
                                             Deputy Chief, Special Litigation Unit
                                             Tex. State Bar No. 24088531

                                             OFFICE OF THE ATTORNEY GENERAL
                                             P.O. Box 12548 (MC-009)
                                             Austin, Texas 78711-2548
                                             Tel.: (512) 463-2100
                                             Fax: (512) 457-4410
                                             patrick.sweeten@oag.texas.gov
                                             will.thompson@oag.texas.gov

                                             COUNSEL FOR DEFENDANTS


                          CERTIFICATE OF SERVICE

     I certify that a true and accurate copy of the foregoing document was filed electronically
(via CM/ECF) on September 14, 2021, and that all counsel of record were served by CM/ECF.

                                             /s/ Patrick K. Sweeten
                                             PATRICK K. SWEETEN