## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ROLAND GUTIERREZ; SARAH ECKHARDT; and the TEJANO DEMOCRATS, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | |
| GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY; AND JOSE A. ESPARZA, DEPUTY SECRETARY OF STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY, | § § § § § § § | Case No. 1:21-cv-00769-RP |
| *Defendants.* | § § § | |

## RESPONSE TO PLAINTIFFS' MOTION
## FOR PRELIMINARY INJUNCTION

T<small>ABLE OF</small> C<small>ONTENTS</small>

Table of Contents ............................................................................................................... ii

Table of Authorities ........................................................................................................... iii

Introduction ........................................................................................................................ 1

Background ......................................................................................................................... 2

Legal Standard ................................................................................................................... 4

Argument ............................................................................................................................ 5

    I.    Plaintiffs Are Not Likely to Succeed on the Merits ................................................ 5

        A.    Challenges to the Old Maps are Speculative and Premature. ........................ 6

            1.    Constitutional Standing and Ripeness ..................................................... 6

            2.    Prudential Ripeness ................................................................................. 8

        B.    Challenges to the New Maps are Premature and Barred. ............................ 10

        C.    The Court Should Abstain Under *Pullman*. ................................................ 11

        D.    Plaintiffs Lack Standing for Several Other Reasons .................................... 13

            1.    The Individual Plaintiffs Lack Standing. ............................................... 13

            2.    The Tejano Democrats Lack Standing ................................................... 14

                 a.    The Tejano Democrats Fail to Establish Associational Standing. ....... 15

                b.    The Tejano Democrats Fail to Establish Organizational Standing. ..... 17

                c.    Plaintiffs Cannot Rely on Third-Party Standing. ............................... 18

        E.    Regardless, the Texas Constitution Does Not Forbid Redistricting during the Special Session. ............................................................................................................... 19

    II.    Plaintiffs Fail to Demonstrate Irreparable Harm. ........................................... 22

    III.    The Balance of Equities and the Public Interest Strongly Weigh Against an Injunction. 24

Conclusion ....................................................................................................................... 25

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967)..................................................................................................9

*Arrington v. Elections Bd.,*
  173 F. Supp. 2d 856 (E.D. Wisc. 2001) ....................................................................8

*Ass'n for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Retardation Ctr. Bd. of Trustees,*
  19 F.3d 241 (5th Cir. 1994)......................................................................................15

*Barker v. Halliburton Co.,*
  645 F.3d 297 (5th Cir. 2011)....................................................................................19

*Benavidez v. Eu,*
  34 F.3d 825 (9th Cir. 1994)........................................................................................8

*Brown v. Thomson,*
  462 U.S. 835 (1983)..................................................................................................10

*Buckley v. Valeo,*
  424 U.S. 1 (1976)........................................................................................................9

*Canal Auth. of State of Fla. v. Callaway,*
  489 F.2d 567 (5th Cir. 1974)......................................................................................4

*Chacon v. Granata,*
  515 F.2d 922 (5th Cir. 1975)....................................................................................23

*Chapman v. Meier,*
  420 U.S. 1 (1975)...................................................................................................7,24

*City of Rockwall v. Hughes,*
  246 S.W.3d 621 (Tex. 2008)....................................................................................20

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013)..............................................................................................6,10

*Coon v. Ledbetter,*
  780 F.2d 1158 (5th Cir. 1986) ..................................................................................19

*Ctr. for Biological Diversity v. EPA,*
  937 F.3d 533 (5th Cir. 2019)....................................................................................15

iii

*Danos v. Jones,*
  652 F.3d 577 (5th Cir. 2011)................................................................................19

*Digital Generation, Inc. v. Boring,*
  869 F. Supp. 2d 761 (N.D. Tex. 2012)..................................................................14

*DiMaio v. Democratic Nat'l Comm.,*
  520 F.3d 1299 (11th Cir. 2008) (per curiam).........................................................13

*Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors,*
  522 F.3d 796 (7th Cir. 2008)................................................................................16

*DM Arbor Ct., Ltd. v. City of Houston,*
  988 F.3d 215 (5th Cir. 2021)..................................................................................8

*Draper v. Healey,*
  827 F.3d 1 (1st Cir. 2017) (Souter, J.)................................................................16

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.,*
  --- F.4th ---, 2021 WL 3744414 (2d Cir. 2021) ..................................................17

*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. Cir. 2015)..............................................................................18

*Gallagher v. N.Y. State Bd. of Elections,*
  496 F. Supp. 3d 842 (S.D.N.Y. 2020)...................................................................13

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) .........................................................................................14

*Golden v. Zwickler,*
  394 U.S. 103 (1969)...............................................................................................6

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002)..............................................................................................11

*Grove v. Emison,*
  507 U.S. 25 (1993)..........................................................................................7,8,24

*Hancock Cty. Bd. of Supervisors v. Ruhr,*
  487 F. App'x 189 (5th Cir. 2012) .........................................................................16

*Harris Cnty. Comm'rs Ct. v. Moore,*
  420 U.S. 77 (1975)................................................................................................11

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982).........................................................................................17,18

*Haw. Hous. Auth. v. Midkiff*,
  476 U.S. 229 (1984) ................................................................................................12

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................15,17

*Indem. Ins. Co. of N. Am. v. W&T Offshore, Inc.*,
  756 F.3d 347 (5th Cir. 2014) .................................................................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................................19

*Libertarian Party of Tex. v. Fainter*,
  741 F.2d 728 (5th Cir. 1984) ...................................................................................4

*Louisiana ACORN Fair Hous. v. LeBlanc*,
  211 F.3d 298 (5th Cir. 2000) .................................................................................18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..............................................................................................6,17

*Lytle v. Halff*,
  12 S.W. 610 (Tex. 1889) .........................................................................................22

*Marshall v. Edwards*,
  582 F.2d 927 (5th Cir. 1978) .................................................................................25

*Mauzy v. Legislative Redistricting Bd.*,
  471 S.W.2d 570 (Tex. 1971) ...............................................................................20,21

*Mayfield v. Texas*,
  206 F. Supp. 2d 820 (E.D. Tex. 2001) ....................................................................8

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) (per curiam) ...........................................................................4

*McInnis-Misenor v. Maine Med. Ctr.*,
  319 F.3d 63 (1st Cir. 2003) .....................................................................................8

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) .................................................................................................7

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
  760 F.2d 618 (5th Cir. 1985) ...................................................................................5

*Moore v. Hosemann*,
  591 F.3d 741 (5th Cir. 2009) .................................................................................11

*Moore v. Itawamba Cnty.*,
    431 F.3d 257 (5th Cir. 2005)..................................................................................10

*NAACP v. City of Kyle*,
    626 F.3d 233 (5th Cir. 2010)...........................................................................14,17,18

*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995).............................................................................18

*Nat'l Treasury Emps. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) (Sentelle, J.).......................................................9,18

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*,
    283 F.3d 650 (5th Cir. 2002)..................................................................................11

*Nichols v. Alcatel USA, Inc.*,
    532 F.3d 364 (5th Cir. 2008)..................................................................................23

*NLRB v. Noel Canning*,
    573 U.S. 513 (2014) (Scalia, J., concurring in the judgment) ..............................21

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998)..................................................................................................9

*Ohio v. Raimondo*,
    No. 3:21-cv-64, ECF 11-1, 11-2 (S.D. Ohio Mar. 12, 2021) ...............................3

*Opulent Life Church v. City of Holly Springs*,
    697 F.3d 279 (5th Cir. 2012)....................................................................................9

*Osterberg v. Peca*,
    12 S.W.3d 31 (Tex. 2000).......................................................................................20

*Palmer v. Jackson*,
    617 F.2d 424 (5th Cir. 1980)...............................................................................11,12

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..................................................................................................11

*Perry v. Del Rio*,
    66 S.W.3d 239 (Tex. 2001).....................................................................................21

*Perry v. Perez*,
    565 U.S. 3883 (2012)................................................................................................7

*Ragas v. Tenn. Gas Pipeline Co.*,
    136 F.3d 455 (5th Cir. 1998)..................................................................................16

*Railroad Commission of Texas v. Pullman Co.*,
    312 U.S. 496 (1941)................................................................................5,11,12,13

*Renne v. Geary*,
    501 U.S. 312 (1991)...........................................................................................6

*Reynolds v. Sims*,
    377 U.S. 533 (1964).........................................................................................25

*Rosedale Missionary Baptist Church v. New Orleans City*,
    641 F.3d 86 (5th Cir. 2011) (Smith, J.) ............................................................8

*Scott v. Germano*,
    381 U.S. 407 (1965)...........................................................................................8

*Session v. Perry*,
    298 F. Supp. 2d 451 (E.D. Tex. 2004) ............................................................19

*Shepherd v. San Jacinto Junior Coll. Dist.*,
    363 S.W.2d 742 (Tex. 1962)........................................................................19,22

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) ......................................................................23

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) (Jones, J.) ...........................................................6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .......................................................................................6

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998)..............................................................................................6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)...........................................................................................8

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019)...........................................................................14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)......................................................................................15,16

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)...........................................................................................7

*Tenth St. Residential Ass'n v. City of Dallas*,
    968 F.3d 492 (5th Cir. 2020)........................................................................17,18

*Terrazas v. Ramirez*,
    829 S.W.2d 712 (Tex. 1991)..........................................................................................20,21

*Terrazas v. Slagle*,
    821 F. Supp. 1154 (W.D. Tex. 1992).....................................................................................21

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*,
    952 S.W.2d 454 (Tex. 1997)...................................................................................................19

*Tex. Ent. Ass'n v. Hegar*,
    10 F.4th 495 (5th Cir. 2021) ..................................................................................................12

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
    667 F.3d 570 (5th Cir. 2013).....................................................................................................4

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) (Costa, J., concurring) ...................................................11,13

*Texas Indigenous Council v. Simpkins*,
    No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) ......................................16

*Texas v. United States*,
    523 U.S. 296 (1998).............................................................................................................6,10

*Thomas v. Reeves*,
    961 F.3d 800 (5th Cir. 2020) (en banc) (per curiam) ......................................................12

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985).....................................................................................................................7

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ...............................................................................................................6

*Upham v. Seamon*,
    456 U.S. 37 (1982).......................................................................................................................8

*Valley v. Rapides Par. Sch. Bd.*,
    145 F.3d 329, 333 n.8 (5th Cir. 1998) (Smith, J.), *vac'd*, 169 F.3d 216 (5th Cir.
    1999), *on reh'g*, 173 F.3d 944 (5th Cir. 1999) (en banc) ...............................................7,23

*Valley v. Rapides Par. Sch. Bd.*,
    145 F.3d 329 (5th Cir. 1998) (Smith, J.), *vac'd*, 169 F.3d 216 (5th Cir. 1999) .....................9

*Vieth v. Pennsylvania*,
    188 F. Supp. 2d 532 (M.D. Pa. 2002)....................................................................................19

*Voting for Am., Inc. v. Steen*,
    732 F.3d 382 (5th Cir. 2013).....................................................................................................4

*Walker v. Baker,*
   196 S.W.2d 324 (Tex. 1946)............................................................................22

*Westwego Citizens for Better Gov't v. City of Westwego,*
   946 F.2d 1109 (5th Cir. 1991) .........................................................................25

*White v. Weiser,*
   412 U.S. 7835 (1973)........................................................................................8

*Wise v. Lipscomb,*
   437 U.S. 535 (1978)........................................................................................25

*Women's Med. Ctr. of Nw. Houston v. Bell,*
   248 F.3d 411 (5th Cir. 2001)............................................................................5

*Yazzie v. Hobbs,*
   977 F.3d 964 (9th Cir. 2020) (per curiam) .....................................................13

**Statutes**

13 U.S.C. § 141(a), (c).........................................................................................3

42 U.S.C. § 1983.......................................................................................11,18,19

Tex. Gov't Code § 301.001...................................................................................3

Voting Rights Act................................................................................................17

**Other Authorities**

Tex. Const. art. III, § 1.........................................................................................2

Tex. Const. art. III, § 24(b)..................................................................................3

Tex. Const. art. III, § 28 (1876) ....................................................................*passim*

Tex. Const. art. III, §§ 29, 31 (1848) ..................................................................2

Texas Legislative Council, *Dates of Interest: 87th Legislature,*
   https://tlc.texas.gov/docs/legref/Dates-of-Interest.pdf ...................................3

Texas Legislature Online, *House Committee Meetings by Date* (accessed Sept. 23, 2021),
   available at
   https://capitol.texas.gov/Committees/MeetingsbyDate.aspx?Chamber=H..................................3

Texas Legislature Online, *Senate Committee Meetings by Date* (accessed Sept. 23, 2021),
   available at
   https://capitol.texas.gov/Committees/MeetingsbyDate.aspx?Chamber=S ..................................4

Texas Secretary of State, *Turnout and Voter Registration Figures (1970-current)*, available at https://www.sos.state.tx.us/elections/historical/70-92.shtml (last visited Sept. 27, 2021) .................................................................................................................................14

Texas Senate Journal, 87th Legislature, Second Called Session, at 268. Available at https://journals-senate.texas.gov/sjrnl/872/pdf/87S209-02-F.PDF#page=16 .............................3

U.S. Census Bureau, *Decennial Census P.L. 94-171 Redistricting Data* (Aug. 12, 2021), https://www. census.gov/programs-surveys/decennial-census/about/rdo/summary-files.htm ................................................................................3

U.S. Const. amend. X ..................................................................................................................7

U.S. Const. art. I, § 4 ..................................................................................................................7

U.S. Const. art. III, § 2 ...............................................................................................................6

<h3 align="center">INTRODUCTION</h3>

Plaintiffs jumped the gun by bringing this lawsuit. They seek to enjoin the operation of Texas' old State House and Senate maps under a malapportionment theory. But as Plaintiffs concede—and the public record confirms—reapportionment is already underway. Governor Greg Abbott convened the Texas Legislature for a special session, where the chief item on the agenda is redistricting. The first Senate map, in fact, has already been submitted for consideration, and the Senate held hearings to discuss that and other proposed maps over the last several days. There is no reason to suspect that the Legislature will not adopt new maps in time for the next election.

Instead of letting the legislative process play out, Plaintiffs ask this Court to step in and assume control of the State's redistricting process. Plaintiffs' request is not only premature but also based on an incorrect, atextual interpretation of the Texas Constitution that has never been adopted by Texas courts. Thus, in seeking injunctive relief, Plaintiffs would have this Court take the extraordinary step of prohibiting state lawmakers from fulfilling their constitutional duty to manage the composition of their own legislative districts. And they would deny the Texas Supreme Court the opportunity to interpret the State's own laws.

The situation is made worse because, by Plaintiffs' own telling, Texas bears no responsibility for reapportionment not yet being complete. It is undisputed that the COVID-19 pandemic disrupted the Census Bureau's efforts to finish the decennial census by its statutory deadline. The Census Bureau did not release the relevant redistricting data until August, months after it should have and months after the Legislature's regular session had ended. Even so, the Legislature got to work immediately. It has conducted hearings, spoken with constituents, drawn maps, and extended upcoming election deadlines—in short, everything within its power to ensure the timely production of new maps.

Federal courts have a role in redistricting only when necessary to avoid a proven violation of law. They are not meant to disrupt the Legislature's ongoing redistricting efforts that seek to comply

with the U.S. Constitution. Accordingly, this Court should deny Plaintiffs' motion for a preliminary injunction and instead stay the proceedings until Plaintiffs' claims are ripe and the state courts have had a chance to definitively rule on the Legislature's powers to redistrict during the ongoing special session.

<h1 style="text-align:center">BACKGROUND</h1>

The Texas Legislature has the power to apportion seats in the Texas House of Representatives and the Texas Senate. *See* Tex. Const. art. III, § 1 (vesting the legislative power of the State). That has been true as long as Texas has been a State. *See* Tex. Const. art. III, §§ 29, 31 (1848). For almost as long, the Texas Constitution has required the Legislature to reapportion legislative districts after each census. *See* Tex. Const. art. III, § 28 (1876). Today, that section provides: "The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts . . . ." Tex. Const. art. III, § 28.

Historically, however, the Legislature had not always redistricted on time. *See* Vernon's Ann. Tex. Const. art. III, § 28, interpretive commentary (2007). So, in 1948, Texas voters amended Article III, Section 28 in 1948 to add a backup plan: "In the event the Legislature shall at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas" (LRB). Tex. Const. art. III, § 28.[1] Under Texas law, then, the Legislature *may* redistrict at any time, but it *must* redistrict at its first regular session after the federal census is published. If the Legislature fails to do so during that first regular session, then the LRB is empowered to act.

In a normal census year, the Legislature would have redistricted during its regular session. *See*

---

[1] *Proposing an amendment to provide for a Board for apportioning the State into senatorial districts and representative districts in the event the Legislature fails to make such apportionment*, Acts 1947, 50th Reg. Sess., S.J.R. 2, https://lrl.texas.gov/legis/billsearch/text.cfm?legSession=50-0&billtypeDetail=SJR&billNumberDetail=2.

ECF 1 ¶ 24. By federal statute, the Census Bureau was supposed to release redistricting data no later than April 1, 2021. *See* 13 U.S.C. § 141(a), (c). If the federal government had met its legal obligations, the data would have arrived during the Eighty-Seventh Regular Session, which ran from January 12, 2021, to May 31, 2021. Tex. Const. art. III, § 24(b); Tex. Gov't Code § 301.001.[2]

The COVID-19 pandemic disrupted that schedule.[3] The Census Bureau did not release any redistricting data until mid-August, and it did not produce the remainder until the following month. According to the Census Bureau, it "provided redistricting data as legacy format summary files for all states on August 12, 2021, and committed "to providing the full redistricting data toolkit on Sept. 16, 2021."[4] *See* ECF 1 ¶ 25.

The federal government's delay has forced Texas to work on a modified schedule. The Governor has called a special session of the Legislature, beginning September 20, 2021, to address redistricting. *See* Exhibit B. In anticipation of that special session, legislators have been hard at work on redistricting issues. In that regard, the House Redistricting Committee held hearings on September 8, 9, 13, 15, and 18.[5] As an initial matter, the Legislature passed a bill extending election-related deadlines to accommodate the new redistricting schedule. *See* Exhibit C. Governor Abbott signed the bill on September 10.[6]

Since the filing of this lawsuit, the redistricting process has continued. Indeed, the first new

---

[2] Texas Legislative Council, *Dates of Interest: 87th Legislature*, https://tlc.texas.gov/docs/legref/Dates-of-Interest.pdf.
[3] For detailed explanations of the challenges the Census Bureau faced, see the declarations of federal officials Michael Thieme and James Whitehorne, *Ohio v. Raimondo*, No. 3:21-cv-64, ECF 11-1, 11-2 (S.D. Ohio Mar. 12, 2021).
[4] U.S. Census Bureau, *Decennial Census P.L. 94-171 Redistricting Data* (Aug. 12, 2021), https://www.census.gov/programs-surveys/decennial-census/about/rdo/summary-files.html.
[5] *See* Texas Legislature Online, *House Committee Meetings by Date* (accessed Sept. 23, 2021), available at https://capitol.texas.gov/Committees/MeetingsbyDate.aspx?Chamber=H.
[6] *See* Texas Senate Journal, 87th Legislature, Second Called Session, at 268. Available at https://journals-senate.texas.gov/sjrnl/872/pdf/87S209-02-F.PDF#page=16.

Senate map has already been proposed. It is currently being debated, but no one disputes that it contains properly apportioned districts. *See* Exhibits D (map) and E (introduced bill). The first new State Board of Education map has also been proposed. *See* Exhibits F (map) and G (introduced bill). The Senate Special Committee on Redistricting held redistricting hearings on September 24 and 25.[7] The Legislature is currently working diligently to adopt timely redistricting maps.

Plaintiffs filed a motion for preliminary injunction on September 13, 2021. ECF 10. The State filed a motion to dismiss or to abate the next day. ECF 11-1. The State now files its response to the preliminary-injunction motion.

## LEGAL STANDARD

Before the Court may issue a preliminary injunction, the plaintiff must establish four "prerequisites": "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Libertarian Party of Tex. v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984). "The burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). That burden is heavy and requires "*a clear showing*." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original).

The Fifth Circuit "has repeatedly cautioned that a preliminary injunction is an *extraordinary remedy* which should not be granted unless the party seeking it has *clearly carried the burden of persuasion on all four requirements*." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2013)) (internal quotation marks

---

[7] *See* Texas Legislature Online, *Senate Committee Meetings by Date* (accessed Sept. 23, 2021), available at https://capitol.texas.gov/Committees/MeetingsbyDate.aspx?Chamber=S.

omitted) (emphases added). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). Even when a movant satisfies each of the four factors, the decision whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The decision to grant a preliminary injunction is to be treated as an exception rather than the rule. *Id.*

ARGUMENT

**I.      Plaintiffs Are Not Likely to Succeed on the Merits.**

The Texas Legislature is in the midst of redistricting. All the evidence points to the Legislature adopting new maps in time for the next state election. It would therefore be premature and a violation of basic principles of federalism and judicial prudence for this Court to enjoin the old maps—which Defendants have no intention of enforcing for the 2022 state elections—and assume control of the reapportionment process at this time. In addition, because there is no imminent threat of injury, Plaintiffs lack standing to secure injunctive relief.

The only justification Plaintiffs give the court for hijacking the State's constitutional prerogative to redistrict its own legislative bodies is a baseless misreading of Article III, Section 28 of the Texas Constitution, but the state-law question is disputed and has never been addressed by Texas courts. It would be inappropriate for this Court to decide the question for itself without giving Texas courts the opportunity to comment first through a *Pullman* abstention—especially considering that the provision implicates the powers of Texas state government *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

A host of jurisdictional defects preclude injunctive relief and make Plaintiffs' unlikely to succeed on the merits. This court should deny Plaintiffs' Motion for Preliminary Injunction and either abstain or stay the case until the claims are ripe.

A.      Challenges to the Old Maps are Speculative and Premature.

1.      Constitutional Standing and Ripeness

This Court lacks jurisdiction over Plaintiffs' challenge to the old maps because there is no threat that Defendants will enforce those maps going forward beginning with the 2022 election cycle and throughout the current decade. Thus, the claims are unripe, and Plaintiffs lack standing to bring them. "A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020) (Jones, J.).

The federal Constitution "limits federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting U.S. Const. art. III, § 2). "The power of courts . . . to pass upon the constitutionality of" state laws "arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough." *Golden v. Zwickler*, 394 U.S. 103, 110 (1969). As "[t]he part[ies] invoking federal jurisdiction," Plaintiffs "bear[] the burden of establishing" both standing and ripeness. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (standing); *see Renne v. Geary*, 501 U.S. 312, 316 (1991) (ripeness).

"[T]he '[f]irst and foremost' of standing's three elements" is "injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To support federal jurisdiction, a plaintiff's alleged injury must be "actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2).

The ripeness doctrine is similar. A "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*,

6

523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). In many cases, "the Article III standing and ripeness issues . . . 'boil down to the same question.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)).

In this case, Plaintiffs lack standing—and their claims are not ripe—because they cannot show that the challenged maps will actually be used in the next election. Indeed, all evidence points to the contrary: the Legislature in currently in session, actively considering redistricting legislation. In light of these developments, the old maps are contained in a law that will never be enforced again. That is not enough to support federal jurisdiction, as "[t]he existence of a law is not, by itself, necessarily sufficient to establish imminent injury." *Valley v. Rapides Par. Sch. Bd.*, 145 F.3d 329, 333 n.8 (5th Cir. 1998) (Smith, J.), *vac'd*, 169 F.3d 216 (5th Cir. 1999), *on reh'g*, 173 F.3d 944 (5th Cir. 1999) (en banc) (instructing the district court to defer before proceeding).

Without a threat that Defendants will implement the old maps, Plaintiffs cannot plausibly allege an injury or ripeness. This analysis applies with particular force in a redistricting case. Plaintiffs erroneously assert that "this Court has the exclusive obligation to create interim maps," ECF 1 ¶ 1, but the Constitution charges *States* with central responsibility for the apportionment of electoral districts. *See* U.S. Const. art. I, § 4; *id.* amend. X. On "many occasions," the Supreme Court has emphasized that "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than a federal court." *Grove v. Emison*, 507 U.S. 25, 34 (1993) (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)); *see also Perry v. Perez*, 565 U.S. 388, 392–93 (2012).

For this reason, federal courts cannot interfere with state apportionment efforts unless the plaintiff proves that the State will be unable to implement a new map. As explained by the Supreme Court: "Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to

impede it." *Grove*, 507 U.S. at 34 (citing *Scott v. Germano*, 381 U.S. 407, 410 (1965)). And from that principle, in turn, it follows that a district court errs where it allows a redistricting claim to proceed before allowing the state legislature an "adequate opportunity" to address the old map. *Upham v. Seamon*, 456 U.S. 37, 41 (1982) (quoting *White v. Weiser*, 412 U.S. 783, 794–95 (1973)).

Where a plaintiff prematurely challenges old legislative maps, courts commonly stay consideration of those claims while the legislature considers new maps. *See Benavidez v. Eu*, 34 F.3d 825, 834 (9th Cir. 1994); *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 867 (E.D. Wisc. 2001). And in some circumstances, courts dismiss them entirely. *See Mayfield v. Texas*, 206 F. Supp. 2d 820 (E.D. Tex. 2001).

There is no valid legal basis to conclude that Plaintiffs' claims are justiciable at this time. As explained above, Plaintiffs do not even attempt to argue that the Legislature will fail to enact maps. Because Defendants have no intention to implement the old maps, there is no basis for Plaintiffs to seek prospective relief against their implementation. Thus, Plaintiffs are not likely to succeed on the merits. The Court should, at a minimum, stay consideration of this case until the Legislature has had an "adequate opportunity" to implement new maps, and then should dismiss these claims altogether.

## 2.    Prudential Ripeness

Plaintiffs are further unlikely to succeed on the merits because prudential ripeness bars their premature claims. The doctrine of prudential ripeness implements "the policy of judicial restraint from unnecessary decisions." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 n.10 (5th Cir. 2011) (Smith, J.) (quoting *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003)). It centers on "prudential reasons for refusing to exercise jurisdiction." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)). "Even when constitutional ripeness is satisfied . . . a court may decide not to hear a case for prudential reasons, such as '[p]roblems of prematurity and abstractness.'" *Id.* at 218 n.1

(quoting *Buckley v. Valeo*, 424 U.S. 1, 114 (1976)).

The Fifth Circuit recognizes two central considerations: (1) "the *fitness* of the issues for judicial decision" and (2) "the *hardship* to the parties of withholding court consideration." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)) (emphasis added). "These prudential concerns ensure that changing hypothetical circumstances or lack of party interest does not make resolution of the legal issues unnecessary." *Valley*, 145 F.3d at 332.

Here, both factors counsel against exercising jurisdiction. First, Plaintiffs' claims are not fit for judicial decision because Plaintiffs are not able to establish that Defendants are going to undertake any conduct warranting an injunction. Indeed, they provide no evidence for the proposition that the old maps will still be in place. Moreover, "judicial intervention would inappropriately interfere with further [legislative] action" by improperly suggesting that the Texas Legislature should not draw new maps itself. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Second, Plaintiffs cannot show hardship from a stay until such time, if any, as the Legislature fails to redistrict and Defendants have implemented unconstitutional maps. Again, Plaintiffs fail to offer any evidence to this effect, other than erroneous legal argument that the Legislature lacks authority to pass redistricting legislation during the current special session.

This conclusion finds further support in "the usually unspoken element of the rationale underlying the ripeness doctrine: If we do not decide [Plaintiffs' claims] now, we may never need to." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (Sentelle, J.). Especially in politically charged cases, "Article III courts should not make decisions unless they have to." *Id.* So too here. The Court should not consider claims as to the old maps until it has to. Plaintiffs are unlikely to succeed on the merits on this basis as well.

**B.      Challenges to the New Maps are Premature and Barred.**

Although Plaintiffs frame their claim as a federal constitutional challenge to the old maps, in substance they bring a state constitutional challenge to the new maps. *See. e.g.,* ECF 1 ¶¶ 1–2. They are unlikely to succeed on the merits in this regard as well. The first and most obvious reason for this is that they do not request any injunctive relief related to the new maps. That is, they do not request that the Legislature be enjoined from considering new maps or that any State officers be enjoined from enforcing them. *See* ECF 10 at 17–18. But to the extent Plaintiffs do seek such relief, they cannot do so. This Court cannot hear a state constitutional challenge to the new maps for four reasons.[8]

First, Plaintiffs cannot establish a "*certainly impending*" injury in fact. *Clapper*, 568 U.S. at 409. The redistricting process has just begun. There is no reason to believe that the new maps will contain malapportioned districts, much less that Plaintiffs will reside in such a district. To the contrary, the first proposed Senate map has already been filed, and it is properly apportioned. *See* Exhibits D & E. In fact, the proposed map is well-within the allowable ten percent population deviation established by the Supreme Court for state legislative districts. *See, e.g., Moore v. Itawamba Cnty.*, 431 F.3d 257, 259–260 (5th Cir. 2005) (citing *Brown v. Thomson*, 462 U.S. 835, 842–43 (1983)). Specifically, for the proposed Senate map, the deviation range is 5.50%, the smallest district deviates by -2.93%, the largest district deviates by 2.57%, and the mean deviation is 1.91%. *See* Exhibit D at 1.

Second, Plaintiffs' claim "is not ripe for adjudication" because "it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas*, 523 U.S. at 300. The Court cannot determine whether future maps will violate Plaintiffs' constitutional rights until those maps are drawn. Least of all should the Court consider claims on the new maps while the Legislature is literally drawing them.

---

[8] These arguments are made in greater detail in the State's motion to dismiss. *See* ECF 11-1 at 19–20. They are recounted briefly here to the extent the preliminary injunction motion seeks relief as to the new maps.

Third, sovereign immunity bars Plaintiffs' state-law theory. Plaintiffs' argument that the Texas Legislature cannot draw new maps in a special session is founded entirely on their erroneous interpretation of the Texas Constitution. *See* ECF 10 at 7–15. Sovereign immunity bars—and the *Ex parte Young* exception does not apply to—claims that *state* officials will violate *state* law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103–06 (1984).

Fourth, Plaintiffs' cause of action—42 U.S.C. § 1983—does not provide a vehicle for raising violations of state law. Section 1983 "provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' *of the United States*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis added).

C.    **The Court Should Abstain Under *Pullman*.**

Even if Plaintiffs' claims are ripe, Plaintiffs' claims present "a textbook case for *Pullman* abstention." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 417 (5th Cir. 2020) (Costa, J., concurring). For this reason, the Court should defer deciding the issues until the state courts have had an opportunity to address the important question of state constitutional law. *See, e.g., Moore v. Hosemann*, 591 F.3d 741, 742, 745–46 (5th Cir. 2009); *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 652–56 (5th Cir. 2002) ("Ordinarily, a district court ordering *Pullman* abstention should 'retain jurisdiction but . . . stay the federal suit pending determination of the state-law questions in state court.'") (quoting *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 88 n.14 (1975)). Though sometimes it is proper for a court to dismiss such claims without prejudice. *Moore*, 420 U.S. at 88 n.14.

"The *Pullman* case establishes two prerequisites for *Pullman* abstention: (1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional questions raised." *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980). Both are present here.

First, Plaintiffs' complaint and preliminary-injunction motion hinges on a disputed state-law

issue: namely, whether Article III, Section 28 of the Texas Constitution prohibits the Legislature from redistricting during the current special session. *See, e.g.*, ECF 10 at 7–15. Defendants believe the Texas Constitution clearly allows the Legislature to redistrict in these circumstances. *See infra* Part I.E. But at the very least, it is beyond question that this issue supports abstention because it is an "uncertain[]" question of state law" insofar as it is not certainly settled in Plaintiffs' favor. *Tex. Ent. Ass'n v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021) (quoting *Haw. Hous. Auth. v. Midkiff*, 476 U.S. 229, 236 (1984)).

Second, the resolution of Plaintiffs' state-law question could moot or alter Plaintiffs' federal claims. If state courts interpreting the Texas Constitution find that the Legislature can redistrict in the current special session, Plaintiffs' federal claims will be fatally undermined, or at least put "in a different posture." *Palmer*, 617 F.2d at 428. Plaintiffs would not be able to establish federal jurisdiction or prevail on the merits. As the *en banc* Fifth Circuit recently (and unanimously) held, challenges to the use of maps become moot when those maps will no longer be used for future elections. *See Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) (en banc) (per curiam).

Plaintiffs do not attempt to hide the fact that their federal claims rest on the resolution of the disputed state-law question. *See* ECF 10 at 15. The introductory paragraphs of their Complaint admit that their legal action focuses on "a matter of Texas constitutional law" and "[t]he plain text of the Texas Constitution." ECF 1 ¶¶ 1–2. Plaintiffs additionally argue that they "will likely succeed on the merits, because [of what] the Texas Constitution requires." *Id.* ¶ 41; ECF 10 at 13–14. By so pleading, Plaintiffs effectively concede that their federal-law claim depends on the disputed question of state law.

Deciding Plaintiffs' federal claims under these circumstances would violate established principles of federalism and comity and fail to show, in the Supreme Court's words, "scrupulous regard for the rightful independence of the state governments." *Pullman Co.*, 312 U.S. at 501. Indeed, only recently, the Fifth Circuit criticized a "district court's decision to forge ahead despite an intimately

intertwined—and, at that time, unresolved—state-law issue." *Texas Democratic Party*, 961 F.3d at 397 n.13 (Smith, J.). The need for "wise discretion" is at least as strong here as in *Texas Democratic Party* since a hasty decision by this Court could upend Texas' prerogative to structure its own elections based on a misreading of state law. *Pullman*, 312 U.S. at 501.

In short, Plaintiffs are unlikely to succeed on the merits for the additional reason that the Court should not even reach the merits before the state courts have had a chance to comment.

### D.   Plaintiffs Lack Standing for Several Other Reasons.

Furthermore, neither the Individual Plaintiffs nor Tejano Democrats have made a clear showing that they have the necessary standing to maintain a preliminary injunction.

#### 1.   The Individual Plaintiffs Lack Standing.

In appropriate cases, individual plaintiffs can have standing to challenge the districts in which they will vote—but only if they establish that they will vote. In this case, Texas State Senators Gutierrez and Eckhardt ("Individual Plaintiffs") conspicuously fail to allege in the Complaint or in their sworn declarations that they intend to vote in the 2022 election. *See* ECF 10-1 ¶¶ 2–3; 14-15. That failure, standing alone, deprives them of standing to complain about alleged vote dilution resulting from malapportionment. *See Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020) (per curiam) (dismissing for lack of standing because "any allegation or showing as to, at a bare minimum, whether any of the plaintiffs intend to vote in this general election" was "missing"); *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1302 (11th Cir. 2008) (per curiam) (holding a "complaint undeniably fails the test for constitutional standing" when the plaintiff "never alleged that he actually voted, nor even so much as suggested that he intended to vote in," the election at issue); *Gallagher v. N.Y. State Bd. of Elections*, 496 F. Supp. 3d 842, 850 (S.D.N.Y. 2020) (holding plaintiffs lacked standing to challenge a voting-by-mail deadline when "none of them has alleged that he or she intends to cast an absentee ballot *by mail*").

To be sure, both Individual Plaintiffs claim to have voted in past elections, *see* ECF 1 ¶¶ 3–4, but "evidence that a plaintiff has taken an action in the past does not, by itself, demonstrate a substantial risk that the plaintiff will take the action in the future; there must be some evidence that the plaintiff intends to take the action again." *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019). The two Individual Plaintiffs did not even testify in their declarations that they have an established pattern of voting. *See Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 777 (N.D. Tex. 2012) (noting that courts are "limited to the record before it and cannot grant a preliminary injunction based on assumptions not supported by the evidence"). They merely rely on the fact that they are registered to vote in their respective districts. Being registered to vote, however, is no guarantee that a person will exercise their franchise in any specific upcoming election. According to the Secretary of State, 66.73 percent of registered voters turned out to vote in the 2020 presidential election and 12.92 percent in the 2020 democratic primary.[9] In many elections, the participation rate is even less. At the preliminary injunction stage, Individual Plaintiffs need to make a clear showing that they intend to vote going forward. In light of the ease with which one can make such a showing, there is no reason for Individual Plaintiffs to omit such facts except that they do not actually plan to vote.[10]

## 2.    The Tejano Democrats Lack Standing

An organizational plaintiff has two avenues by which to allege standing: (1) associational or (2) organizational. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). Organizational standing requires that the plaintiff establish injury, causation, and redressability. *Id.* For associational

---

[9] A breakdown of turnout and voter registration numbers in Texas elections can be found at the Secretary of State's website. *See* Texas Secretary of State, *Turnout and Voter Registration Figures (1970-current)*, available at https://www.sos.state.tx.us/elections/historical/70-92.shtml (last visited Sept. 27, 2021).

[10] Even if Individual Plaintiffs had plausibly alleged an intent to vote, any injuries in fact would be "district specific." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018). They would still lack standing to seek relief beyond "the revision of the boundaries of [their] own district[s]," such as redrawing the entire maps. *Id.*

standing, the organization must show (1) that its members would independently have standing; (2) that the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019).

The Tejano Democrats cannot pursue their claims because they have not plausibly alleged associational standing, organizational standing, or an exception to Section 1983's bar on third-party standing.

### a.     The Tejano Democrats Fail to Establish Associational Standing.

A plaintiff cannot have associational standing unless one of its members independently satisfies the Article III standing requirements. *Ctr. for Biological Diversity*, 937 F.3d at 536. For this to occur, the plaintiff must establish two threshold facts. First, the plaintiff must establish that it has "members" within the meaning of the associational standing test from *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) (requiring "indicia of membership"). Second, the plaintiff must identify specific members who have "suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). The Tejano Democrats fail both tests.

First, the Tejano Democrats have failed to establish they have "members" within the meaning of the *Hunt* test. Although the Tejano Democrats broadly assert that they have "2,100 members," ECF 10 at 5, they fail to prove that each of those individuals "possess all of the indicia of membership": that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's leadership, and finance the organization's activities,

including the case's litigation costs." *Tex. Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014). The most the Tejano Democrats offer is a copy of the organization's by-laws, but "it is not the Court's "duty to sift through the record in search of evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Plaintiffs must "identify specific evidence in the record" for it count towards meeting their burden. *Id.*

Second, even assuming the Tejano Democrats have members, the organization has failed to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers*, 555 U.S. at 499. The Supreme Court has unequivocally held that the "requirement of naming the affected members has never been dispensed with" except "where *all* the members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 498–99 (emphasis in original). Here, Plaintiffs claim that the Tejano Democrats "ha[s] members in overpopulated State House and Senate districts," ECF 10 at 5, but they do not even assert—much less prove—that every member of the organization resides in one. The organization cannot evade its obligations to identify specific members if it seeks to invoke this Court's jurisdiction. *See Summers*, 555 U.S. at 499 (holding that courts do not "engage in an assessment of statistical probabilities" when evaluating standing).

This defect, on its own, is sufficient to warrant dismissal of the Tejano Democrats. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the disability policy).[11] But even if this court were to accept that the Tejano Democrats survive a motion to dismiss,

---

[11] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that. In any event, if the Tejano Democrats did not have to "name names," they would

the organization cannot avail itself of forgiving pleading standards at the preliminary injunction stage. "Each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof"—"with the manner and degree of evidence required at the successive stages of the litigation" *Lujan*, 504 U.S. at 561. For a preliminary injunction, that means a clear showing backed by evidence. The declaration submitted by the Tejano Democrats does not suffice.

Lastly, the Tejano Democrats fail to allege that "the interests it seeks to protect are germane to the organization's purpose." *Hunt*, 432 U.S. at 343. Indeed, Plaintiffs never allege in their Motion for Preliminary Injunction what the purpose of the Tejano Democrats is. Vaguely describing some of the organization's activities does not establish the organization's purpose under *Hunt*. *See* ECF 10 at 5. To the extent the Tejano Democrats' purpose is "seeking full representation of Hispanics at all levels and in all activities of the Democratic Party," ECF 10-1 at 26, Plaintiffs' malapportionment claim is not germane to that purpose. Unlike, for example, a racial gerrymandering claim or a Voting Rights Act claim, a malapportionment claim has no discernible connection with purported members' status as "Hispanic candidates" and "Hispanic voters." *Id.*

### b.   The Tejano Democrats Fail to Establish Organizational Standing.

To establish organizational standing, the Tejano Democrats organization must have *itself* suffered an injury-in-fact. *See Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020). An injury in this context can occur where the organization's mission is "perceptibly impaired" because it has "diverted significant resources to counteract the defendant's conduct." *City of Kyle*, 626 F.3d at 238 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Notably, "time spent

---

at least have to include allegations "identifying members who have suffered the requisite harm" by describing, at a minimum, the specific districts in which their supposed members live and whether those supposed members intend to vote in 2022. *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, --- F.4th ---, 2021 WL 3744414, at *5 (2d Cir. 2021).

attending meetings and one member's efforts intervening as an interested party do not constitute 'significant resources.'" *Tenth St. Residential Ass'n*, 968 F.3d at 500 (quoting *Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000)). The challenged conduct must make the entity's "activities more difficult" and constitute "a direct conflict" with its mission. *See Nat'l Treasury Emps. Union*, 101 F.3d at 1430.

The Tejano Democrats lack organizational standing for several reasons. First, the organization fails to specify its mission in its motion, making it impossible to tell whether that mission has been "perceptibly impaired." *Havens*, 455 U.S. at 379. To the extent their mission is tied to the interests of "Mexican American voters and candidates," ECF 10 at 5, or "the full representation of Hispanics," ECF 10-1 at 26, the Tejano Democrats never allege that any malapportionment will weaken the interests of that group relative to any other ethnic group. ECF 10 at 5. Assuming for the sake of argument that "educat[ing] voters" is a sufficiently specific organizational purpose, *id.*, Plaintiffs do not allege that malapportionment poses a "direct conflict" to voter education.[12] *Nat'l Treasury Emps. Union*, 101 F.3d at 1430. Nor do Plaintiffs allege that their education activities will change as a result of malapportionment. *See* ECF 10 at 5. Finally, Plaintiffs do not allege that the Tejano Democrats have "diverted significant resources" or explain how the redistricting maps have caused them to "differ from [their] routine [informational] activities." *City of Kyle*, 626 F.3d at 238.

### c.   Plaintiffs Cannot Rely on Third-Party Standing.

Finally, the Tejano Democrats lack standing for another reason: the bar on third-party standing. Section 1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any

---

[12] Spending resources to teach third parties about the law, on its own, is not an injury in-fact. *See Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). The expenditures to educate members and the organization's communities must cause the organization to incur "'operational costs beyond those normally expended' to carry out its advocacy mission." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 920 (D.C. Cir. 2015) (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1434). Plaintiffs present no such evidence.

rights" at issue. 42 U.S.C. § 1983. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014). Here, all of Plaintiffs' claims are based on the right to vote. *See* ECF 1 ¶¶ 37–46; ECF 10 at 16. But the Tejano Democrats is an artificial entity. "It goes without saying that political parties, although the principal players in the political process, do not have the right to vote." *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 546 (M.D. Pa. 2002). The inevitable consequence of those facts is that the Tejano Democrats are attempting to assert the rights of third parties and therefore cannot sue under § 1983. These claims should be dismissed.

### E.   Regardless, the Texas Constitution Does Not Forbid Redistricting during the Special Session.

In the event this Court reaches the merits of Plaintiffs' state-law theory, Plaintiffs' motion for preliminary injunction still fails because the Texas Constitution plainly permits the Legislature to redistrict during the current special session.

The Texas Constitution "vests legislative power in [the Texas] Legislature." *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465 (Tex. 1997). It is therefore "well-established under Texas law that the Texas Legislature may legislate in any area not *specifically* proscribed by the Texas Constitution." *Session v. Perry*, 298 F. Supp. 2d 451, 467 n.48 (E.D. Tex. 2004) (emphasis added); *see also Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 743 (Tex. 1962) ("[A]n act of a state legislature is legal when the Constitution contains no prohibition against it.").

No provision in the Texas Constitution prohibits the Legislature from reapportioning state legislative seats during a special session. Indeed, Plaintiffs do not contest that the Legislature generally has the power to redistrict, including during a special session. *See* ECF 10 at 11; ECF 1 ¶ 23. Instead,

Plaintiffs advance the implausible argument that Article III, Section 28 limits the Legislature to a "specific schedule for apportionment" that only permits the Legislature to act in a special session once the first regular session after the census data is published has ended. ECF 1 ¶ 23. But their interpretation finds no support in the constitutional text, purpose, history, or precedent.

The Texas Constitution provides that "[t]he Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts . . . ." Tex. Const. art. III, § 28. It then provides an alternative mechanism should the Legislature "fail to make such apportionment." *Id.* At no point does Article III, Section 28 prohibit the Legislature from redistricting at other times. *See Terrazas*, 829 S.W.2d at 726 (finding that Article III, Section 28 permits the Legislature to take up redistricting during a special session). Plaintiffs' interpretation would effectively add the word "only" to the constitutional text such that the Legislature could redistrict "[only] at its first regular session." But "changing the meaning of the statute by adding words to it . . . is a legislative function, not a judicial function." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008).

Moreover, Plaintiffs' interpretation would undermine the "object and purpose" of Article III, Section 28, which "obviously was to get on with the job of legislative redistricting which had been neglected or purposely avoided for more than twenty-five years." *Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971). Article III, Section 28 *mandates* legislative redistricting to *avoid* one-person-one-vote problems. But Plaintiffs invoke Article III, Section 28 to *prohibit* legislative redistricting and *create* one-person-one-vote problems. That would be an absurd result, especially because the canon of constitutional avoidance requires courts to interpret state law to avoid federal constitutional problems, not create them. *See Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000).

Thus, it is no surprise that the Legislature has frequently, and with judicial approval, redistricted more often than required by Article III, Section 28, including in the 1970s, 1980s, 1990s,

2000s, and 2010s. *See Terrazas v. Ramirez*, 829 S.W.2d 712, 726 (Tex. 1991) (endorsing special session reapportionments); *Perry v. Del Rio*, 66 S.W.3d 239, 246 (Tex. 2001) ("[C]ongressional redistricting plans had been enacted in special sessions in 1971, 1981, and 1991."); *Terrazas v. Slagle*, 821 F. Supp. 1154, 1155 (W.D. Tex. 1992) (describing the Legislature's attempts at reapportioning during a special session). On the other side of the scale, Plaintiffs have not cited a single case holding that a legislative attempt at redistricting violated Article III, Section 28.

Plaintiffs cite *Terrazas v. Ramirez, see* ECF 10 at 12–13; ECF 1 ¶ 22, but that case recognized that the Legislature was free to redistrict in special sessions because Article III, Section 28 sets a floor, not a ceiling:

> Although article III, section 28 of the Texas Constitution explicitly requires the Legislature to reapportion legislative districts in the first regular session after each United States decennial census is published, neither that section nor any other constitutional provision prohibits the Legislature from acting in later special or regular sessions after the constitutional authority of the Legislative Redistricting Board has expired.

*Terrazas*, 829 S.W.2d at 726. Emphasizing that the opinion specifically approved redistricting in "*later*" special sessions, Plaintiffs suggest that redistricting during *earlier* special sessions must be prohibited. ECF 10 at 13; ECF 1 ¶ 22. That is a logical fallacy known as "denying the antecedent" or "the fallacy of the inverse." *NLRB v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring in the judgment). Ruling that "if the Legislature is in a later special session, then it can redistrict" in no way suggests that "if the Legislature is not in a later special session, then it cannot redistrict." *See Indem. Ins. Co. of N. Am. v. W&T Offshore, Inc.*, 756 F.3d 347, 355 n.5 (5th Cir. 2014) (explaining that "A ➔ B" does not imply "Not A ➔ Not B").

Plaintiffs also cite *Mauzy* for the proposition that "the overriding intent" behind Article, III, Section 28 "was to permit apportionment of the state into legislative districts at the *regular* session of the Legislature." ECF 10 at 12; ECF 1 ¶ 21 (quoting *Mauzy*, 71 S.W.2d at 573). Plaintiffs emphasized "regular," but they should have emphasized "permit." That the Texas Constitution *permits* redistricting

during *regular* sessions does not imply that it *prohibits* redistricting during *special* sessions. Again, Plaintiffs commit the fallacy of denying the antecedent.

Plaintiffs also cite as authority a rule of constitutional interpretation that comes from a 1946 decision of the Texas Supreme Court, *Walker v. Baker*, 196 S.W.2d 324 (Tex. 1946). *See* ECF 10 at 13–14. In essence, Plaintiffs contend the principle provides that where the means of exercising a power is prescribed by a constitution, alternative means of exercising that power are implicitly prohibited. That argument fails because *Walker* doesn't apply here. *Walker* involved a structural separation-of-powers question: "whether the Senate of Texas can lawfully convene, of its own motion, to consider recess appointments made by the Governor." *Walker*, 196 S.W.2d at 326. This case, by contrast, involves a pure question of legislative authority: whether the Legislature has the power to pass redistricting legislation during a special session that is called before the first regulation session after the publication of the decennial census.

The distinction is crucial because, according to the very authority Plaintiffs rely upon, different principles of constitutional interpretation apply in each circumstance. With respect to separation-of-powers questions, the Legislature's authority is narrowly construed, and limited only to express authorizations. *Id.* at 328–29 (quoting *Lytle v. Halff*, 12 S.W. 610, 611 (Tex. 1889)). But with respect to legislative-power questions, the Legislature's authority is broadly construed, and limited only by express prohibitions. *Id.* at 328 (collecting cases); *see also Shepherd*, 363 S.W.2d at 743.

In the end, Plaintiffs' position finds no support in the constitutional text, the purpose of the amendment, Texas history, or judicial precedent, and it is undercut by the very case Plaintiffs cite. The Texas Legislature has the authority to redistrict during the current and any other special session convened by the Governor. Plaintiffs are unlikely to succeed on the merits in this regard.

## II.      Plaintiffs Fail to Demonstrate Irreparable Harm.

Even assuming Plaintiffs could overcome these flaws, Plaintiffs' request for a preliminary

injunction still should be denied because Plaintiffs cannot show a "substantial threat of irreparable injury if the injunction is not granted." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "An injunction is appropriate only if the anticipated injury is imminent and irreparable." *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). Thus, "the asserted irreparable injury must be neither remote nor speculative." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). Yet such unsubstantiated speculation is all Plaintiffs offer in their motion.

Plaintiffs rest their entire bid for a preliminary injunction on a single assumption: that the old legislative maps will still be in place during the next election cycle. *See* ECF 10 at 16–17. Yet Plaintiffs admit in both their Complaint and their Motion for Preliminary Injunction that the Legislature is currently working to adopt new maps during the ongoing special session. ECF 1 ¶¶ 26–28; ECF 10 at 16. To offset this fact, Plaintiffs erroneously warn that the Governor has not yet signed a bill that extends certain election deadline—Senate Bill 13—insinuating that the Legislature will not have enough time to reapportion state districts. Governor Abbott, however, signed that bill three days before Plaintiffs filed their motion. *See supra* note 6.

In addition, Plaintiffs argue that Article III, Section 28 precludes the Legislature from conducting reapportionment in a special session until the first regular session after the census data is published has ended. *See* ECF 10 at 16. But Plaintiffs cannot show that Defendants are not going to disregard the new maps in favor of the old maps because (1) Defendants disagree with Plaintiffs' state-law theory, *supra* Part I.E, and (2) there is no immediate risk that a court will order Defendants to do so. Sovereign immunity bars this Court from enjoining the operation of new legislative maps pursuant to a state claim. And Plaintiffs have identified no other legal action seeking to stymie the State's reapportionment plan. It is entirely speculative at this point to conclude that the State's redistricting efforts will be stalled due to Article III, Section 28. *See Valley*, 145 F.3d at 333 n.8 (noting "[t]he existence of a law" does not "by itself . . . establish imminent injury").

There is every reason to believe that the Legislature will pass new maps during the ongoing session, and that those maps will be implemented for the 2022 midterms. The House and the Senate have already held numerous hearings, with more on the way. The first Senate map, in fact, has already been proposed, and (unsurprisingly) it conforms to the constitutional one-person one-vote requirement. *See* Exhibits D & E. And the Legislature is diligently working on multiple other statewide districting maps. *See* Exhibits F & G.

Plaintiffs are not at risk of an imminent, irreparable injury. Their motion fails on that basis alone.

## III.   The Balance of Equities and the Public Interest Strongly Weigh Against an Injunction.

The equitable factors tilt heavily against the issuance of an injunction. As explained above, Plaintiffs cannot establish an irreparable injury. All the evidence points to the Texas Legislature adopting new maps during the ongoing legislative session, resolving Plaintiffs' alleged malapportionment claim. The only counterpoint offered by Plaintiffs—that the Texas Constitutions bars the Legislature's action—is based off a misguided interpretation of Article III, Section 28 that finds no support in the Constitution's text, purpose, history, or precedent.

The State, in contrast, will suffer severe and adverse consequences should this Court grant an injunction, as will the public. First and foremost, an injunction would deny the State its constitutional right and duty to apportion its legislative districts, turning the bedrock principle of federalism on its head. According to the text of the Constitution and its interpretation by the Supreme Court, the *States* are entitled to the first opportunity to reapportion their electoral districts, not federal courts. *Growe*, 507 U.S. at 34 (quoting *Chapman*, 420 U.S. at 27). Plaintiffs would reverse the established order, asking the Court to redraw the redistricting maps before the Legislature even considers the subject.

In doing so, Plaintiffs would deny Texans their right to govern their own affairs. As both the Supreme Court and the Fifth Circuit have reaffirmed time and time again, "legislative reapportionment

is primarily a matter for legislative consideration and determination"; federal courts are ill-suited "to compromise sometimes conflicting state apportionment policies in the people's name." *Marshall v. Edwards*, 582 F.2d 927, 934 (5th Cir. 1978) (quoting *Reynolds v. Sims*, 377 U.S. 533, 586 (1964)).

That is why the Fifth Circuit has admonished that "judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1123 (5th Cir. 1991) (quoting *Sims*, 377 U.S. at 586). Federal courts are strictly instructed to "*make every effort* not to preempt" legislative reapportionment. *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) (emphasis added). Thus, Plaintiffs' request that the Court impose interim legislative maps at this time directly violates to the allocation of power within the American federal system.

## CONCLUSION

Governor Abbott and Deputy Secretary of State Esparza respectfully request that the Court deny Plaintiffs' motion for preliminary injunction. Defendants further request that these claims be stayed until the Texas Legislature has had an adequate opportunity to enact redistricting legislation, and that the Court then dismiss these claims altogether.

Date: September 27, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

BRENT WEBSTER
First Assistant Attorney General

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415
* Application for Admission Forthcoming

JACK B. DISORBO
Law Fellow
Tex. State Bar No. 24120804
* Application for Admission Pending

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 27, 2021, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN