UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ROLAND GUTIERREZ; SARAH ECKHARDT; and the TEJANO DEMOCRATS,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, Governor of the State of Texas sued in his official capacity; and, JOSE A. ESPARZA, Deputy Secretary of State of Texas and acting Secretary of State of Texas sued in his official capacity.<br><br>*Defendants*. | CIVIL ACTION NO.<br>__1:21-CV- 00769- RP-JES-JVB<br>Complaint for Declaratory Judgment and Injunctive Relief |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

A delayed census has left Texas with overpopulated and malapportioned state legislative districts, in violation of the Fourteenth Amendment, even as election filing deadlines loom. But the Legislature cannot act before its next regular session in 2023, because Article III, section 28 of the Texas Constitution forbids it. Plaintiffs, therefore, invoke this Court's power to remedy the constitutional defects because the Texas Legislature cannot.

The State virtually concedes that the current state legislative districts violate the Fourteenth Amendment, Dkt.#11-1 at p. 11, but argues, confusingly, that because the Texas Legislature might enact new maps in the future, Plaintiffs' claims regarding this current injury are not ripe. Dkt.#11-1 at pp. 4-9. The undisputed, present violation of the Constitution is a live and urgent controversy.

1

And the Legislature is prohibited from remedying this violation until 2023 by Article III, section 28 of the Texas Constitution.

The State's standing and abstention arguments similarly fail. The Plaintiffs have standing under clear Fifth Circuit precedent, and abstention is inappropriate because the Texas Supreme Court has already construed Article III, section 28. This Court cannot overstep its bounds by applying governing precedent from the Texas Supreme Court—something it does routinely. The State, by submitting briefing on the Texas constitutional question, effectively concedes that the Court must apply these legal principles.

But the State avoids three key considerations that undermine its reading of Article III, section 28. First, the State's reading ignores the plain text of the constitutional provision. Second, its reading ignores a prime rule of constitutional construction, faithfully applied by Texas courts, that if the constitution establishes a duty and a manner of performing that duty, any other manner is prohibited. And third, the State's reading would give the Legislature a power it has never before sought to exercise: no Texas Legislature has *ever* first apportioned state legislative districts in a special session since the people ratified Article III, section 28.

The State's motion to dismiss should be denied.

## I.     This matter is ripe for this Court's review.

The State labors under a misapprehension about Plaintiffs' claims. Plaintiffs have not challenged and will not challenge —without amending their pleadings— the illegal legislative redistricting plans that the Legislature is crafting in the current special session. Plaintiffs seek an injunction only against the *current* maps, which the State acknowledges are unconstitutional but

which the Legislature cannot correct before the next regular session in 2023. Ripeness is thus not an issue, as all agree that the current maps are unconstitutional.

Indeed, what the State calls a ripeness argument is, in fact, a spurious mootness argument: the State argues that *if* the Legislature enacts new maps, then Plaintiffs' challenge to the current maps will be moot. But the Legislature has not acted and may not act—and, if it purported to do so, its maps would be void as violative of the Texas Constitution. Plaintiffs' challenge to the current, unconstitutional maps is therefore unquestionably ripe.

The State asserts that pursuant to *Manley* and *Mayfield*, there is no likelihood that the Legislature will not act to resolve the constitutional injuries inherent in the current map. Both cases are distinguishable, however, because they did not arise under circumstances in which the state legislature was *prohibited* from acting to correct the constitutional injuries for two years, as here.

Importantly, the State's "ripeness" argument is dependent on its flawed reading of the Texas Constitution. Under the State's argument, if Plaintiffs are correct that Texas may not first apportion its legislative districts in a special session, then Plaintiffs' claims are ripe and their injuries must be remedied by this Court. It is only if the State is correct that Article III, section 28 does not mean what it plainly says that prudential ripeness considerations could suggest awaiting legislative action. The State invites this court to resolve that question, and Plaintiffs agree that resolving the issues presented by their injunction application and the State's motion to dismiss requires resolving this embedded state-law issue. As a matter of law, the Legislature may not act until 2023. Plaintiffs' claims are thus ripe, and the State's motion should be denied.

**II.     Plaintiffs have standing.**

Because this action is in an early pleading stage, the Court must look to the allegations in Plaintiffs' complaint in deciding whether they have standing. Dismissal is appropriate ***only if*** it appears certain that Plaintiffs cannot prove any set of facts that would entitle them to relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam); *see also Veasey v. Perry*, No. 13-CV-00193, ECF No. 385 at 6 (order on motion to dismiss).  To satisfy the Article III standing requirement, a plaintiff must prove that (1) there has been injury in fact to that plaintiff, (2) the injury is fairly traceable to the defendants' conduct, and (3) a favorable ruling would sufficiently redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs have met that light burden.

"A person's right to vote is 'individual and personal in nature.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue" to remedy that disadvantage. *Baker v. Carr*, 369 U.S. 186, 204 (1962). The individual plaintiffs here are registered voters who live in malapportioned and overpopulated districts. They allege that their injury is traceable to the challenged current maps, and they ask this Court to grant a remedy that will redress their injury.  Plaintiffs need to plead nothing else to demonstrate standing. *Baker*, 369 U.S. at 206-20; *Stringfellow v. City of Lexington*, No. 3:05-CV-348BN,  2005 WL 8171853, at *3 (S.D. Miss. Oct. 12, 2005) (finding standing on similar allegations).

The State asserts implausibly that the State Senators will not vote in future elections. The averment in the complaint is clear: the individual Plaintiffs "consistently voted" in Texas elections. Dkt.#1 at ¶¶ 3, 4. Further, the individual Plaintiffs "reside[] in and vote[]" in their malapportioned State House and State Senate districts. *Id.* at ¶ 32, 33. This is sufficient to meet even the most picayune pleading standard. The true pleading standard is that a plaintiff must state a claim that

4

"has facial plausibility …that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The averments in Plaintiff's original complaint easily satisfy this standard. But in the unlikely event that the Court finds that an allegation that the individuals "vote consistently" is an insufficient basis on which to infer that they will vote in future elections, the correct remedy is amended pleadings, not dismissal. *See Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (quotation omitted).

Next, the State asserts that, even if the individual Plaintiffs met the standing requirement, they do so only with respect to their individual districts. This argument, likewise, is meritless. A single plaintiff in a malapportioned district may seek a statewide remedy because the districts are contiguous, and a remedy for one likely affects all other districts. In malapportionment cases, the only way to vindicate an individual plaintiff's right to an equally weighted vote is through a wholesale "restructuring of the geographical distribution of seats in a state legislature." *Reynolds*, 377 U.S. at 561; *Moss v. Burkhart*, 220 F. Supp. 149, 156-60 (W.D. Okla. 1963) (per curiam) (directing the county-by-county reapportionment of the Oklahoma Legislature), *aff'd sub nom.*, *Williams v. Moss*, 378 U.S. 558 (1964). The same is true here. If Plaintiffs prove their claims, wholesale changes in any interim map for state legislative districts must follow.

Finally, Tejano Democrats have associational standing to challenge the actions or omissions of the State. An organizational defendant has associational standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Perez v. Abbott*, 253 F. Supp.3d 864, 930 (W.D. Tex. 2017).

The original complaint meets this minimal pleading standard. Tejano Democrats is a statewide political organization with 2,100 members who are registered voters. Dkt. #1 at ¶ 5. Many of these voters vote in malapportioned legislative districts. *Id.* at ¶ 34. Consequently, there is no question that these members would have standing to sue. Tejano Democrats' interest in this case is germane to its purpose, which is to educate voters on matters that are important to the Mexican American community in Texas, including apportionment and redistricting. Participation of individual members is not necessary because liability does not depend on the characteristics of individual plaintiffs, but on the statistics regarding the districts; moreover, the organization seeks a statewide remedy that would vindicate each member's right to vote in a properly apportioned district.

The State's more stringent view of associational standing has been rejected by the Fifth Circuit. "[V]oters ha[ve] standing, a sufficient interest both to intervene and carry the appeal when the state agency declined to do so. In its view, if the court were to deny standing to these voters, it 'would be forced to conclude that most of the plaintiffs also lack standing, a conclusion foreclosed by the many cases in which individual voters have been permitted to challenge election practices.'" *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993) (finding standing in a section 2 challenge). Tejano Democrats far exceed the minimal requirements for standing in a malapportionment challenge.

### III.     Texas Law requires that the first legislative apportionment occurs during a Regular Session.

**A.  The Texas Constitution prohibits apportionment at this time.**

The Texas Constitution commands the Legislature to apportion "at its first regular session after the publication of each United States decennial census." TEX. CONST. art. III, § 28. The State admits as much in their motion to dismiss. *See* Dkt. # 11-1 at p. 12. But the State proposes an alternate reading that upends Texas's constitutional precepts. The State suggests that the

Legislature may apportion *at any time*. The State's argument depends on a fundamental misunderstanding of *Mauzy* and *Terrazas* and mischaracterizes Plaintiffs' position. Most dramatically, the State proclaims that the Legislature has absolute power to legislate even when the Texas Constitution stands in the way.

Since section 28's ratification, Texas has **never** first apportioned state legislative districts in a special session. Rather, consistent with Plaintiffs' reading, the only occasions on which the Legislature has considered legislative redistricting during a special session followed either the Legislature acting during the first regular session after the Census or the Legislative Redistricting Board's prior action. The only time the Legislature convened in a special session after it failed to apportion in the first regular session, but before the LRB had met, it passed no substantive redistricting laws. *See* Dkt.#10 at p. 10.

The history of Texas constitutional provisions regarding apportionment confirms that this limitation was added intentionally. The Texas Constitutions of 1845 and 1861 provided for reapportionment every eight years following a required enumeration of all free inhabitants. The 1866 Constitution called for an enumeration of all inhabitants every ten years followed by reapportionment. The Constitution of 1869 provided for reapportionment of representatives and senators "by the first Legislature in session after the official publication of the United States census, every 10 years." TEX. CONST. of 1869, art III, § 11.

A similar provision was included in Texas's current, 1876 Constitution:

> The Legislature shall, at its first session after the publication of each United States decennial census, apportion the State into Senatorial and Representative districts, agreeably to the provisions of Sections 25 and 26 of this Article; and until the next decennial census, when the first apportionment shall be made by the Legislature, the State shall be, and it is hereby divided into Senatorial and Representative districts as provided by an ordinance of the Convention on that subject.

TEX. CONST. art. III, § 28 (amended 1948). Art. III, § 28 for the first time restricted apportionment to the Legislature's "first *regular* session" after apportionment, rather than its "first session." TEX. CONST. art. III, § 28. Importantly, this change followed numerous occasions on which the Legislature considered legislative apportionment in special sessions—during the 27th, 32nd, 33rd, 37th, and 42nd Legislatures. When the 50th Legislature moved to limit redistricting, in the first instance, to *regular* sessions, it thus reflected a policy choice rejecting the prior practice of attempting to apportion during special sessions.

The apportionment actions taken by 87th Legislature in the currently active special session are wholly unauthorized by the Texas Constitution, and this Court must therefore act to protect Plaintiffs from current, unconstitutional maps.

**B.   "Shall Only" offers no refuge for the State.**

The State asserts that for Plaintiffs' interpretation to be true, the word "only" would have to be inserted into Section 28. Dkt. #11-1 at p. 13. The State ignores Texas's longstanding rule of construction that when the Constitution mandates that a duty be performed in one manner or time, performance of that function by different means or at a different time is prohibited. *Walker v. Baker*, 196 S.W.2d 324, 126-27 (Tex. 1946) (orig. proceeding) (citing *Parks v. West*, 111 S.W.726, 727 (Tex. 1908)).

Article III of the Texas Constitution outlines the "Legislative Department" of the Texas government. In total, the word "shall" is used 369 times. The phrase "shall only" appears exactly zero times. Nevertheless, Article III's numerous duties, limitations, and requirements, enacted using only the word "shall," have long been understood to describe the *exclusive* means by which the State may act. When the Constitution's drafters used mandatory language to describe what

must be done—and when, and how—they did not need to add a superfluous "only" to express their intention that the Constitution's mandates be exclusive.

For instance, section 5 requires that "[t]he Legislature shall meet every two years at such time as may be provided by law and at other times when convened by the Governor." The drafters did not specify that the Legislature "shall *only*" meet at such times, yet the Supreme Court of Texas easily understood their intent to prohibit the Legislature from meeting at other times or convening by other means. *See Walker*, 196 S.W.2d at 327 (declaring the actions of Texas Senate void in an illegally initiated legislative session).

Similarly, section 10 requires that "[t]wo-thirds of each House shall constitute a quorum to do business." The phrase "shall only" does not appear in this section. Yet the Legislature may not alter the quorum requirement—for example, by lessening it to 50% plus one—because to do so would frustrate the drafters' intent. *See* S.J.R. 1, 87th Leg., C.S. 2 (proposed constitutional amendment to alter quorum requirement to 50% plus one); *cf. In Re Chris Turner*, No. 21-0538, 2021 WL 3486611, * 1 (Tex. Aug. 9, 2021) (orig. proceeding) (per curiam) ("The House has 150 members, and two-thirds, or 100, constitute a quorum. TEX. CONST. art. III, § 10. House members included 83 Republicans and 67 Democrats, so the departure of most Democratic members would have the effect of breaking quorum.") (internal footnote omitted).

The phrase "shall only" is not required to create an exclusive legislative duty under the Texas Constitution or any constitution. "When the Constitution defines the circumstances under which a right may be exercised ***, the specification is an implied prohibition against legislative interference to add to the condition." *Walker*, 196 S.W.2d at 327. The plain meaning of the words of the Constitution are paramount and, as often as not, a Texas Constitutional provision means what it says. *See Turner*, 2021 WL 3486611, at *1.

Article III, § 28 requires that the first apportionment after publication of the U.S. Census must be held during the next regular legislative session. The Texas Constitution does not require the phrase "shall only" to confer a constraint on legislative power. "Shall" is all that is required.

**C. The State's interpretation of Art. III, § 28 undermines the Texas Constitution.**

Hidden within the State's motion to dismiss is an important concession: it *agrees* that the Legislature must redistrict at its first regular session after the federal census is published," *i.e.*, during the 2023 regular session. Dkt. #11-1 at p. 12.  But the State insists that the Legislature can *also* "redistrict[] at other times." *Id.* The structure of the Texas constitution rejects this reading, which would allow the Legislature to flout the Constitution's precise provisions regarding the terms of office for State Senators.

Texas State Senators serve "the term of four years." TEX. CONST. art. III, § 3. Texas's Constitution provides a complicated procedure for determining when those four-year terms begin. "[A] new Senate shall be chosen after every apportionment"—in other words, each of Texas's 31 Senate seats must be elected anew after any apportionment. *Id.* After that first post-apportionment election, the Senators draw lots and are divided into two classes:

> The seats of the Senators of the first class shall be vacated at the expiration of the first two years, and those of the second class at the expiration of four years, so that one half of the Senators shall be chosen biennially thereafter.

*Id.* Thus, each seat eventually settles into four-year terms—though for one half of the Senate, there is an intervening two-year term. This process—including new elections for all 31 Senators—follows every apportionment. Even if the change is only to one precinct in the State, all 31 members of the Texas Senate are up for election. *See, e.g.,* OP. TEX. ATT'Y GEN. Nos. DM-351 (1995), M-349 (1969), O-1659 (1939).

10

If Section 28 is interpreted to require the Legislature to apportion in the first regular session following the Census, and only at such time, this complicated procedure works. Two years after apportionment, every Senator is either beginning or in the midst of the constitutionally mandated four-year term, and most of the time each seat will be occupied for two four-year terms before the next apportionment—consistent with the Constitution's requirement that Senators serve four-year terms.

Under the State's reading, by contrast, the Legislature can frustrate the constitutional drafters' intent regarding senatorial terms by minimally altering legislative districts each session. Indeed, if the Legislature apportions during the current special session, every Senate seat will be up for election in 2022. Then—the State concedes—the Legislature must apportion again, after which every Senate seat will again be up for election in 2024. *See* Dkt. #11-1 at p. 12. Then, and only then, will the Senators of the 89th Legislature draw lots to determine which portion of that senatorial class will stand for election in the next election cycle. TEX. CONST. art. III, § 3.

In other words, the entire Senate will be elected in two consecutive election cycles—2022, following the special session apportionment; and 2024, following the constitutionally required 2023 apportionment. And several unlucky Senators will likely have to run for election in *four* sequential election cycles:

- In 2020, at the expiration of their regular terms.
- In 2022, with the entire Senate following the 2021 special-session redistricting.
- In 2024, with the entire Senate following the constitutionally required 2023 apportionment.
- In 2026, if a member of the class of Senators elected in 2024 drew a two-year term.

11

This Constitution's design cannot be so easily frustrated as to convert senatorial terms into the terms of House members.

All Texas Supreme Court precedents concerning section 28 acknowledges the simple fact that apportionment begins in the next regular session after publication of the U.S. Census. *Mauzy* makes clear "that the overriding intent of the people in adopting Sec. 28 was to permit apportionment of the state into legislative districts at the *regular* session of the Legislature which is convened in January following the taking of the census, if publication is either before convening or during the session." *Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971) (orig. proceeding) (emphasis added). *Terrazas* confirms that holding and articulates the circumstances under which the Legislature may apportion during a special or later regular session: it may do so "after the constitutional authority of the Legislative Redistricting Board has expired." *Terrazas v. Ramirez*, 829 S.W.2d 712, 726 (Tex. 1991) (orig. proceeding).

The State suggests that this Court must emphasize only certain words in these opinions or avoid their obvious holdings in their entirety. *See* Dkt. #11-1 at p.14. While it is true that the overriding intent in adopting Article III, § 28 was to "get on with the job of legislative redistricting," *Mauzy* 471 S.W.2d at 573, the Texas Supreme Court chose its words carefully, stating that the intent of the people was to "*permit* apportionment of the state into legislative districts at the regular session" after publication. *Id*. (emphasis added). The use of the word "permit" is critical, because the power to govern flows from the people to the government, and in Section 28, the people granted the Legislature permission to apportion only in the first regular session following the Census, unless and until the LRB's jurisdiction expires.

"Compared to its federal counterpart, the Texas Constitution is long, specific, and confining." Harold H. Bruff, *Separation of Powers Under the Texas Constitution,* 68 TEX. L. REV. 1337, 1339

12

(1990). "Section 28 by its terms limits the legislature's reapportionment activities to regular sessions." 1 Braden et al., *The Constitution of the State of Texas: an Annotative and Comparative Analysis*, p. 158 (1977). "In enacting this provision, the people specifically provided for the procedure to be followed to achieve equal apportionment and did not see fit to leave it within the discretion of the Governor to call a special session for such a purpose." OP. TEX. ATT'Y GEN. No. M-881 (1971) (commenting on the timing and meaning of Art. III, § 28 in relation to the Legislature's failure to apportion).

The deliberate choice of a regular session makes sense. In a regular session, members are free to make trades and seek legislative compromise on their districts as part of *all* legislative matters in consideration during a regular session, opportunities that can be absent in a special session devoted to few, or even one, topic. And, when Article III, section 28 was amended, the publication of the census had been sporadic. At times, publication was delayed for years. At other times, it was published shortly before, or during, a regular session. Creating a time for apportionment in a regular session prevented the problems created by an early or late census and ensured a deliberate, orderly process for apportionment.

The State also misreads *Terrazas* and implies that its holding is opposite its text. *Terrazas* was clear: the Legislature *must* apportion "**in the first regular session** after each United States decennial census is published," but it is not prohibited from "from acting in ***later**** special or regular sessions ****after**** the constitutional authority of the Legislative Redistricting Board has expired." *Terrazas*, 829 S.W.2d at 726 (emphasis added). Yet the State reads "after" and "later" to mean "before" or "whenever the Legislature wants." The Texas Attorney General has explicitly rejected this position. OP. TEX. ATT'Y GEN. No. M-881 (1971). It also conflicts with the well-settled principle that "where a power is expressly given by the Constitution, and the means by which, or

13

the manner in which it is to be exercised, is prescribed, such means or manner is exclusive of all others." *Houchins v. Plainos*, 110 S.W.2d 549, 553 (Tex. 1937); *see also Parks,* 111 S.W. at 727. The Texas Constitution prescribes a time for apportionment and the "means or manner" in which apportionment should be accomplished. The Texas Legislature is barred from considering apportionment outside of the schedule prescribed by Art. III, § 28.

If the State's view is correct and the Legislature may apportion at will, absurdity will follow. If Texas received redistricting data from the U.S. Census bureau in December of 2030 just before the start of the 91st Legislature, could the Legislature apportion, then, in a special session before the 2031 regular session if called to do so by a Governor? Could the Legislature nullify a map created by the LRB in special session if it preferred different plans? Imagine a disastrous primary that ousted a majority incumbents of both parties, could those incumbents pass a map in the middle of the election cycle and seek new elections?

Clearly, these are absurd abstractions, but all would be possible under the State's permissive view of Article III, section 28. Through that provision, the people placed important limitations on the power to apportion. These limitations are written plainly in the Texas Constitution and reasserted in every Texas Supreme Court precedent interpreting the meaning, timing, and import of Art. III, § 28. And, since Article III, section 28 was amended in 1948, ***no Legislature*** has ever done what the Legislature attempts now—to first apportion in a special session. This "established practical construction" strongly indicates that the Legislature lacks the power it attempts to assert. *See* Walker, 196 S.W.2d at 126 (holding that the Senate lacks the power to convene on its own motion in part because "had it not been at least doubtful as to the power of the Senate to convene itself to pass on the Governor's recess appointments, it is reasonable to

assume that some earlier Senate would have attempted to exercise it."). Texas may not apportion now.

In summary, Article III, section 28 prevents the Legislature from reapportioning state legislative districts until the 2023 regular session.

### IV.   *Pullman* does not require abstention

Finally, the State relies on *Pullman* abstention, which requires abstention in narrow circumstances when state law is uncertain and a state court's clarification of the law would render unnecessary a federal court's ruling regarding the United States Constitution. *Zwickler v. Koota*, 389 U.S. 241, 248-49 (1967); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 501 (1941); Erwin Chemerinsky, FEDERAL JURISDICTION § 12.2.1, at 763 (4th ed. 2003). *Pullman* abstention is appropriate only if (1) the plaintiff raises a federal constitutional challenge to state action, and (2) there exists an uncertain question of state law that, if resolved, would make it unnecessary to rule on the federal constitutional question. *Baran v. Port of Beaumont Navigation Dist. of Jefferson Cnty. Tex.*, 57 F.3d 436, 442 (5th Cir. 1995).

*Pullman* abstention must be applied with exceeding caution because it is an exception to the federal courts otherwise "virtually unflagging" duty to decide cases within their jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). Thus, "*Pullman* does not command district courts to abstain simply to permit state review of an unambiguous statute that has previously never been interpreted by a state court." *Mississippi Surplus Lines Ass'n v. State*, 384 F. Supp.2d 982, 988 (S.D. Miss. 2005) (mem. op.) (quoting *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998). Even in that circumstance, "if a state statute is not fairly subject to an interpretation which will avoid or modify

15

the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it. Any other course would impose expense and long delay upon the litigants without hope of its bearing fruit." *Zwickler*, 389 U.S. at 251. Finally, *Pullman* abstention is not justified when dealing with unconstitutionally unequal treatment under the law and other violations of a civil right. *See id.* at 248. This makes sense, considering that for most American history, it was "[j]udicial abstention [that] left pervasive malapportionment unchecked." *Evenwel v. Abbott*, 136 S. Ct. 1120, 1123 (2016).

*Pullman* abstention is unwarranted in this case for numerous reasons: (1) the state law at issue here is clear and unambiguous; (2) deference to a state court will not render the constitutional questions here moot; and (3) abstention to a state court will likely destroy Plaintiffs' legal rights.

This is not a case in which Plaintiffs seek both a state-law and a federal-law remedy, either of which would grant them relief. Rather, Plaintiffs assert only a federal constitutional claim. The mere fact that this Court must address an embedded state-law question in resolving Plaintiffs' federal claim is not grounds for abstention. *See, e.g.*, *Reetz v. Bozanich*, 397 U.S. 82, 86 (1970); *Zwickler*, 389 U.S. at 248; *Harman v. Forssenius*, 380 U.S. 528, 534-35 (1965); *Propper v. Clark*, 337 U.S. 472, 492 (1949). Rather, abstention is appropriate only "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). In *Moore v. Hosemann*, for example, the Fifth Circuit remanded a case to the district court to consider abstention only because resolution of the state law question could resolve the dispute and obviate resolution of the federal claim. *See* 591 F.3d 741, 745-46 (5th Cir. 2009) ("[T]he existence of a federal constitutional question is entirely contingent on an unresolved interpretation of Mississippi law.")

Neither side of that equation is satisfied here. The federal and state questions are independent; the federal question will remain to be decided no matter the resolution of the state law question. Therefore, the state law question is not "fairly subject to an interpretation by a state court which will render unnecessary" Plaintiffs' claim. *Baran*, 57 F.3d at 442 (brackets omitted). And, unlike in *Pullman*, where the Court considered the federal constitutional question "sensitive," 312 U.S. at 498, the question here is straightforward: the parties *agree* that the current maps are unconstitutional.

The Texas Constitution's structure, and the history of Article III, section 28, support Plaintiffs' plain language reading, as does the relevant Texas Supreme Court precedent regarding Section 28 and constitutional construction more generally. A Texas Attorney General ruling says the same thing. OP. TEX. ATT'Y GEN. No. M-881 (1971). And in favor of the State's argument: nothing, apart from a strained reading that renders absurd other portions of the Constitution. *Pullman* does not favor abstention under such circumstances. *See Zwickler*, 389 U.S. at 251 n.14 (holding that "abstention is not to be ordered unless the state statute is of an uncertain nature, and is *obviously* susceptible of a limiting construction." (emphasis added)).

Should the Court abstain, it would only delay the inevitable conclusion that apportionment of state legislative districts at this time by the 87th Legislature is illegal. Given the rapidly advancing legislative session, only this Court can take steps to ensure that maps that violate the Fourteenth Amendment are not utilized for the 2022 election cycle. The enactment of illegal maps by the Legislature cannot cure this constitutional defect. Every moment this Court delays in applying the Texas Constitution and its "clear and unambiguous" precedents it becomes more likely that the current, malapportioned maps will be used for the 2022 election calendar. If no legislative enactment is legal, then this Court must act. Abstention will not cure this constitutional defect. The

likely forfeiture, by delay, of the very constitutional right the Plaintiff is attempting to vindicate counsels against abstention. *See Zwickler*, 389 U.S. at 252 (holding that district court improperly abstained from deciding First Amendment question).

By contrast, should this Court abstain, there is a substantial likelihood that Plaintiffs' legal rights will be destroyed, at least, for the 2022 election calendar. Should Plaintiffs seek relief in state court, there will be substantial delay and uncertainty. Texas is entitled to supersede any injunction on appeal as judgment debtor and can delay the resolution of these questions until the beginning of the election calendar. Even if Plaintiffs are successful in expediting a state-law case, Texas courts may not have the power or authority to move election deadlines, craft interim maps, and certainly do not have the benefits of expedited appeal to the U.S. Supreme Court, as in this case. In short, if this Court abstains, it only ensures lengthy deliberation by state courts that will with absolute certainty lead to one of two outcomes. Either the malapportioned maps will be used because state law is clear and there is no time to craft a remedy in advance of the 2022 election calendar, or illegal maps that violate the Texas constitution will be used and there will not be timely relief because of the inherent delays related to the Texas state courts' appellate process. Either outcome destroys Plaintiffs' rights. *Pullman* abstention is inadvisable here.[1]

### V. Conclusion

---

[1] The State argues in passing that Plaintiffs' claims are barred by *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984). *Pennhurst* is inapplicable because Plaintiffs are not asking this Court to order state officials to "conform their conduct to state law." *Id.* at 106. Rather, Plaintiffs seek only federal constitutional relief, and it is well-established that *Pennhurst* does not preclude a federal court from construing a state law in the course of granting such a remedy. *See Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir. 1993) (Smith, J.) (holding that "nothing in *Pennhurst* supports the proposition that" a court violates it "merely by construing [state] law"); *see also Covington v. North Carolina*, 283 F. Supp.3d 410, 428 (M.D.N.C. 2018) (mem. op.) (per curiam) (addressing state constitutional argument, over *Pennhurst* objection, in a federal constitutional redistricting case), *aff'd*, 138 S. Ct. 2548 (2018) (per curiam).

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to dismiss be denied.

DATED: September 29, 2021                                   Respectfully,

By: *Martin Golando*

THE LAW OFFICE OF MARTIN GOLANDO, PLLC
Martin Golando
Texas Bar No. 24059153
martin.golando@gmail.com
2326 West Magnolia
San Antonio, Texas 78201
Telephone: (210) 471-1185
Martin.Golando@gmail.com

Wallace B. Jefferson
Texas Bar No. 00000019
wjefferson@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Telephone: (512) 482-9300
Facsimile:  (512) 482-9303

## CERTIFICATE OF SERVICE

I certify that, on September 29, 2021, I filed the foregoing Plaintiffs' Response to the Defendants' Motion to Dismiss with the Court's ECF/CM system, which will serve a copy on all counsel of record.

*/s/ Martin Golando*
Martin Golando