UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROLAND GUTIERREZ; SARAH ECKHARDT; and the TEJANO DEMOCRATS,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, Governor of the State of Texas sued in his official capacity; and JOSE A. ESPARZA, Deputy Secretary of State of Texas and acting Secretary of State of Texas sued in his official capacity.<br><br>*Defendants.* | § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>__1:21-CV- 00769- RP-JES-JVB__<br>Complaint for Declaratory Judgment and Injunctive Relief |

PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE

TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The State proclaims that it has the primary responsibility to redistrict its own legislative bodies; that it is not at fault for the tardiness of the Census data, published after the 2021 regular legislative session had concluded; and that the Texas Legislature is working diligently to draw new maps in a special session. *See* Dkt. 14 at 3, 7. Although there is no reason to doubt any of these assertions, none are relevant. They are not a valid excuse for the Legislature to re-write an explicit provision of the Texas Constitution, no matter how inconvenient the State might regard its commands. And because the Legislature may not reapportion Texas House and Senate Districts until the 2023 regular session, this Court must impose temporary maps for the 2022 election cycle to remedy the constitutional violation that all agree currently exists.

The State's position that Plaintiffs cannot challenge the proposed new maps is similarly beside the point. *See* Dkt. 14 at 8-11. Plaintiffs challenge only the current maps. The Texas

Legislature is, if anything, unpredictable. It may or may not pass new maps in this special session, or in a subsequent one. Any speculation about whether new maps will pass, when they will pass, and how districts will potentially be drawn is premature. What is certain is that the Texas Constitution prevents the Legislature from reapportioning state legislative districts before 2023.

### I. Plaintiffs' claims are justiciable.

The State regurgitates arguments about standing, ripeness, immunity, and abstention that it has already laid out in its motion to dismiss. Plaintiffs have responded to those objections and incorporate those responses by reference here. *See* Dkt. 15 at 2-6, 15-18.

Additionally, the State argues that Plaintiffs cannot complain about the existing unconstitutional maps because the State "ha[s] no intention of enforcing [them] for the 2022 state elections." Dkt. 13-1 at 5. But the State's "intent" is irrelevant because: (1) the current maps are the law, and (2) the elections cannot be delayed until after the 2023 regular session, the first point at which the Legislature will have authority to draw new ones. Only this Court can fill the gap for the 2022 election cycle.

The State has emphasized, in support of its objections to ripeness and standing, *Valley v. Rapides Par. Sch. Bd.*, 145 F.3d 329, 333 n.8 (5th Cir. 1998) (Smith, J.), *vac'd*, 169 F.3d 216 (5th Cir. 1999), *on reh'g*, 173 F.3d 944 (5th Cir. 1999) (*en banc*)). *See* Dkt. 14 at 7. In *Valley*, the Fifth Circuit held that a plaintiff could not challenge a law's constitutionality until it had been implemented, if the law's implementation could cure the constitutional defect. *Id.* at 333. The panel dismissed the case as unripe. *Id.* On *en banc* review, the Fifth Circuit remanded to the district court to reconsider the laws' constitutionality once it had been implemented. *See* 173 F.3d at 945.

*Valley* is inapposite. All agree that the current maps are unconstitutional, but no one argues that the unconstitutional maps can be implemented in a constitutional manner. *Valley* does not help the State, and its ripeness and standing objections fail.

**II.     Legislative reapportionment at this time is illegal.**

The Texas Constitution states that "[t]he Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts." TEX. CONST. art. III, § 28. The State concedes that the Legislature "*must* redistrict at its first regular session after the federal census is published." Dkt. 13-1 at 2.

The only real question is whether the Legislature has discretion to *also* apportion state legislative districts in a special session before the "first regular session after the publication" of the United States decennial census. It may not for three reasons. First, the Texas Constitution's prescribed process concerning a right or duty implicitly forbids anything other than strict procedural compliance. Second, section 28's history establishes that the Legislature and the people of Texas intended that apportionment of State House and Senate districts occur during a regular session. Last, every Texas Supreme Court opinion supports that constitutional order of apportionment. The State cites no law, case, or constitutional provision that would allow a discretionary divergence from a strict constitutional mandate.

**A.  The Legislature has never deviated from Article III, section 28.**

The State criticizes Plaintiffs for "not cit[ing] a single case holding that a legislative attempt at redistricting violated Article III, Section 28." Dkt. 13-1 at 21. But the absence of such a case proves the point. Since Article III, section 28 was amended in 1948, the Legislature has *never* first reapportioned state legislative districts in a special session. *See* Dkt. 10 at 11. Reapportionment

plans have been adopted in special sessions only after the Legislature acted, or had an opportunity to act, in the first regular session after publication of the Census, and after the LRB's authority expired. *See id.* The examples of special session reapportionments the State cites either fall into those categories or involved congressional, rather than state legislative, districts. *See* Dkt. 14 at 21. The simple reason why no case law holds unconstitutional an apportionment circumventing section 28 is that the Legislature has never carried out such a gambit. This "established practical construction" is a powerful indicator of the limits on the Legislature's power. Dkt. 15 at 14-15 (citing *Walker v. Baker*, 196 S.W.2d 324, 327 (Tex. 1946) (orig. proceeding)); *see also Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 506 (Tex. 1992) ("We are supported in this construction by the additional fact that in the eight decades since ratification of the 1909 amendment, the Legislature has never acted as if this amendment authorized local ad valorem taxes without voter approval.").

It is the State, therefore, that invokes a power that the Legislature has never before utilized.

**B. Scholars agree that reapportionment must occur in a regular session.**

In 1972, Texas voters approved a revision of the State's constitution. As part of that process, a collection of scholars and experts, including members of the Texas Legislative Council and R. Stephen Bickerstaff,[1] one of the most distinguished lawyers in Texas redistricting history, annotated the Texas Constitution to assist delegates to the Constitutional Convention. This seminal

---

[1] Bickerstaff attended the University of Texas at Austin (BA, 1968) and the University of Texas School of Law (JD1971). He served as Parliamentarian of the Senate of Texas (1975-1976) after serving as a counsel for the Texas Constitutional Convention (1974) and the Texas Constitutional Revision Commission (1973). In 1980, he formed the private law firm of Bickerstaff, Heath and Smiley, now Bickerstaff, Heath, Delgado, Acosta LLP. Bickerstaff was an adjunct professor of law at the University of Texas Law School in Austin, Texas, beginning in 1992. In 2007, the University of Texas Press published his book "Lines in the Sand: Congressional Redistricting in Texas and the Downfall of Tom DeLay." He was also the author or co-author of two books of legal analysis published by the Texas Legislative Council, and author of "Election Systems and Gerrymandering Worldwide" (Springer, 2020).

publication described the origins, history, and contemporary meaning of each section of the Texas constitution, as well as interpretive commentary. The Supreme Court of Texas has relied on this work at least forty times and has characterized it as the Constitution's "prevailing understanding". *In re Abbott*, No. 21-0667, 2021 WL 3641471, at *4 (Tex. Aug. 17, 2021) (orig. proceeding).

The authors confirmed section 28's prohibition on apportioning legislative districts for the first time during a special session—and recommended that the Legislature remove that limitation:

> To begin, the legislature ought to be allowed to reapportion itself in special session. A revision of Section 28 ought not specify any session, of course, but simply direct the legislature to reapportion when necessary and at least every ten years.

1 George D. Braden, *et al.*, The Constitution of the State of Texas: An Annotated and Comparative Analysis 159 (1977). The delegates declined this invitation, intentionally retaining the Constitution's strict procedure for apportionment.

### C. Article III, § 28 intentionally limits legislative power.

The State observes that the Texas Constitution "vests legislative power in [the Texas] Legislature." Plaintiffs agree. But the Legislature may not exercise a power the Constitution withholds. Article III places dozens of requirements on legislative power by using—as in section 28—the word "shall." Each places an implicit constraint on the Legislature. *See* Dkt. 15 at 8-10. Section 28 is no different. As the Attorney General recognized before this litigation commenced, "[i]n enacting [Art. III, § 28], the people specifically provided for the procedure to be followed to achieve equal apportionment and did not see fit to leave it within the discretion of the Governor to call a special session for such a purpose." TEX. ATT'Y GEN. OP. No. M-881 (1971).

The Legislature may not apportion until 2023. When the Texas Constitution has "define[d] the circumstances under which a right may be exercised***, the specification is an implied prohibition

against legislative interference to add to the condition." *Walker*, 196 S.W.2d at 327. *Walker*, which was decided the year before the Legislature amended section 28, provides an important backdrop to that section's formulation and enactment.

The State attempts to constrain *Walker* to issues of separation of powers, rather than legislative authority. Dkt. 13-1 at 22. *Walker* is much broader than the State will admit. It rests independently on separation-of-powers concerns *and* constitutional limits on legislative authority. In 1946, the Texas Senate, without a call by the Governor, tried to invoke a special session on its own initiative. The Supreme Court held "that the power [to convene on its own motion] here asserted d[id] not exist." *Walker*, 196 S.W.2d at 329. Elaborating on its reasoning, the Supreme Court first invokes the principle on which Plaintiffs rely—the rule of implied exclusion:

> It is *a rule for the construction of Constitutions, constantly applied*, that where a power is expressly given and the means by which, or the manner in which, it is to be exercised is prescribed, such means or manner is exclusive of all others. When the Constitution defines the circumstances under which a right may be exercised * * *, the specification is an implied prohibition against legislative interference to add to the condition.

*Id*. at 327 (emphasis added). The Court then "appli[ed]" that rule of construction "to this case":

> Since a meeting of the Legislature is a meeting of the Senate, these provisions furnish a regular session of the Senate every two years and a special session at such other times as the Legislature may be convened by the Governor. The means being thus expressly provided for the Senate to be in session and thereby to have an opportunity to consider the Governor's appointments, it follows that any authority in the Senate to convene itself at other times for that purpose is excluded.

*Id*. at 328.

The Court addressed separation of powers only to augment its constitutional-construction holding, explaining that the Legislature's exclusive power to make law was not infringed because the power to call a special session was an executive, not legislative, power. *Id*. at 328 (citing cases).

6

The Court then returned to its primary rationale, invoking the rule of implied exclusion to show that Article III, § 1 would not even control under its own terms: "In other words, since the Constitution specifies the circumstances under which the Senate may defeat the Governor's appointments, there is an *implied* prohibition against its power to add to those circumstances." *Id*. (emphasis added).

The cases *Walker* cites confirm that the rule of implied exclusion does not hinge on separation-of-powers concerns. *Parks v. West* invoked the rule to invalidate a statute creating a school district that included parts of several counties, based upon the Texas Constitution's authorization of single-county districts. 111 S.W. 726, 727-28 (Tex. 1908). *Parks* did not involve separation of powers. Neither did *Houchins v. Plainos*, 110 S.W.2d 549, 553 (Tex. 1937), which used the rule of implied exclusion to invalidate a local-option law that did not comply with the Constitution's manner of voting on such laws. Nor did *Arnold v. Leonard*, 273 S.W. 799 (Tex. 1925). That case invoked the rule of implied exclusion to invalidate a statute adding to the classes of property constituting a wife's separate estate because the Constitution *defined the process* – there, the manner in which a wife's separate estate would be determined. *Id.* at 802.

The State's argument—that the rule of implied exclusion, as applied in *Walker*, pertains only to separation of powers—is thus anchored in sand. It also proves too much. Article III contains dozens of restrictions on legislative power, including the correct way to entitle a bill, that bills must be passed on "three several days," and that bills shall not be changed from their original purpose. TEX. CONST. art. III, §§ 29, 30, 32. Under the State's view, these restrictions are meaningless because they do not involve separation of powers. This is plainly not the case. *Walker* applies to Article III, § 28, and the Legislature is bound by the provision's procedural limitations.

**D. The text and history of Article III, § 28 is determinative.**

7

Section 28's history confirms its meaning. As introduced, Senate Joint Resolution (SJR) 2 contained no reference to a "regular session," but only "session." The Legislature intentionally added "regular." With this limitation, the Legislature enacted section 28, and the people ratified it. This amendment followed several failed attempts at redistricting during previous sessions.

The State offers no rationale for the Legislature's addition of the word "regular." But it must be understood as a deliberate policy choice to limit the circumstances under which the Legislature may redistrict. This is how it has been applied: contrary to the pre-amendment history, the Legislature has never—until today—first apportioned legislative districts in a special session.

### E.  *Mauzy* and *Terrazas* support the Plaintiffs' position.

All Texas Supreme Court precedents concerning Article III, section 28 acknowledge that apportionment begins in the next regular session after publication of the U.S. Census. *Mauzy* makes clear "that the overriding intent of the people in adopting Sec. 28 was to permit apportionment of the state into legislative districts at the *regular* session of the Legislature which is convened in January following the taking of the census, if publication is either before convening or during the session." *Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971) (orig. proceeding) (emphasis added). *Terrazas* confirms that holding and articulates the circumstances under which the Legislature may apportion during a special or later regular session: it may do so "after the constitutional authority of the Legislative Redistricting Board has expired." *Terrazas v. Ramirez*, 829 S.W.2d 712, 726 (Tex. 1991) (orig. proceeding).

The State repeats the same mischaracterization of this precedent that it advanced in its motion to dismiss. Dkt. 11-1 at 14. Plaintiffs incorporate their responses to these arguments by reference here.  *See* Dkt. 15 at 12-14. When the Constitution demands a specific process by which a duty is

8

to be accomplished, the Legislature is powerless to do otherwise. The Legislature can no more apportion now than they can enact laws that have passed only one chamber of the Legislature or conduct legislative business without a quorum.

### III.      Plaintiffs meet all requirements for a preliminary injunction.

#### A. Plaintiffs are threatened with irreparable harm.

All agree that the current maps violate the Fourteenth Amendment. The Texas Legislature is powerless to solve this constitutional problem because it is barred from apportioning state legislative districts at this time. There is no adequate remedy at law, as a vote cast in an election in an unconstitutional district cannot be remedied. Harm is, therefore, irreparable. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

The State asserts that a legislative enactment, SB 13, which moves certain election-related deadlines, has alleviated the pressure for any Court to act. But SB 13 cannot be implemented until December 1, because it failed to get the requisite vote in the Legislature for immediate effect, unless the State contends that this law, too, can be ignored.[2] By December 1, the election calendar will have already begun. In any event, SB 13 cannot cure the current plan's illegality, and Plaintiffs are harmed by any election under the current maps.

The State asserts that "[s]overeign immunity bars enjoining the operation of new legislative maps pursuant to a state claim." Dkt. #13-1 at 23. But Plaintiffs seek only federal constitutional relief, and federal courts are not precluded from construing unassailable state law in the course of granting such a remedy. *See* Dkt. #15 at 18 n.1 (citing cases).

---

[2] Texas Legislature Online: https://capitol.texas.gov/BillLookup/History.aspx?LegSess=872&Bill=SB13

**B. The balance of the equities favors an injunction.**

There is no harm to anyone, including the defendants, in adhering strictly to the Texas Constitution; indeed, these defendants have sworn an oath to uphold it. While a federal court should generally defer to a state legislature, it must not shy away from its responsibilities when, as here, the Legislature is barred from acting. No public interest could plausibly compel voters to face election in illegally overpopulated districts. In fact, federal courts are compelled to act to remedy federal constitutional injuries in districting plans.

The public interest is served by enacting temporary maps to ensure that the 2022 elections are conducted in compliance with "one person, one vote." "[J]udicial relief [is] appropriate . . . when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Reynolds* v. *Sims*, 377 U.S. 533, 586 (1964). The 87th Legislature may not apportion state legislative districts before 2023. This Court must, therefore, draw temporary maps for use in the 2022 election cycle.

**IV.   Conclusion**

Plaintiffs respectfully request that Defendants be cited to appear and answer and that the Court:

A)   grant appropriate preliminary injunctive relief enjoining the current plans for the State House and State Senate; and,

B)   adopt an interim map for use during the 2022 election cycle that cures all ripe constitutional injuries.

<table>
<tr><td>DATED: October 5, 2021</td><td>Respectfully,</td></tr>
</table>

By: *Martin Golando*

THE LAW OFFICE OF MARTIN GOLANDO, PLLC
Martin Golando
Texas Bar No. 24059153
martin.golando@gmail.com
2326 West Magnolia
San Antonio, Texas 78201
Telephone: (210) 471-1185
Martin.Golando@gmail.com

Wallace B. Jefferson
Texas Bar No. 00000019
wjefferson@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

## CERTIFICATE OF SERVICE

I certify that, on October 5, 2021, I filed the foregoing Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction with the Court's ECF/CM system, which will serve a copy on all counsel of record.

*/s/ Martin Golando*
Martin Golando