# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ROLAND GUTIERREZ; SARAH ECKHARDT; and the TEJANO DEMOCRATS, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY; AND JOSE A. ESPARZA, DEPUTY SECRETARY OF STATE OF TEXAS AND ACTING SECRETARY OF STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY, | § § § § § § § § | Case No. 1:21-cv-00769-RP |
| Defendants. | § § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS OR ABATE PROCEEDINGS**

TABLE OF CONTENTS

Table of Contents .................................................................................................................. ii
Index of Authorities ............................................................................ **Error! Bookmark not defined.**
Introduction ........................................................................................................................... 1
Legal Standard ...................................................................................................................... 1
Argument ............................................................................................................................... 2
    I.    Plaintiffs Cannot Challenge the Old Maps ................................................................ 2
        A.    Defendants Will Not Implement the Old Maps Plaintiffs Challenge ............................ 2
        B.    Plaintiffs Misinterpret the Texas Constitution ................................................................ 3
    II.    The Court Should Abstain under *Pullman* ..................................................................... 7
    III.    Even If Other Potential Plaintiffs Had Standing, These Plaintiffs Would Not ............. 9
        A.    The Individual Plaintiffs Lack Standing ........................................................................... 9
        B.    The Tejano Democrats Lack Standing ........................................................................ 11
Conclusion .......................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arizonans for Official English v. Arizona*,
 520 U.S. 43 (1997)............................................................................................................3

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)......................................................................................................1, 2

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)......................................................................................................1, 2

*California v. Texas*,
 141 S. Ct. 2104 (2021)......................................................................................................3

*City of Chicago v. Fieldcrest Dairies*,
 316 U.S. 168 (1942)..........................................................................................................7

*City of Humble v. Met. Transit Auth.*,
 636 S.W.2d 484 (Tex. App.—Austin 1982) (writ ref'd n.r.e.) ........................................5

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398, 409 (2013) (quotations omitted) ...............................................................9

*Commonwealth of Massachusetts v. Mellon*,
 262 U.S. 447 (1923)..........................................................................................................2

*Conley v. Gibson*,
 355 U.S. 41 (1957)............................................................................................................1

*Ctr. for Biological Diversity v. EPA*,
 937 F.3d 533 (5th Cir. 2019) .........................................................................................10

*Fornaris v. Ridge Tool Co.*,
 400 U.S. 41 (1970)............................................................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envt'l Services (TOC), Inc.*,
 528 U.S. 167 (2000)..........................................................................................................3

*Gill v. Whitford*,
 138 S. Ct. 1916 (2018)....................................................................................................10

*Growe v. Emison*,
 507 U.S. 25 (1993)............................................................................................................8

*Henry v. Cox*,
    520 S.W.3d 28 (Tex. 2017) ................................................................................................. 5

*Law v. Ocwen Loan Servicing, L.L.C.*,
    587 F. App'x 790 (5th Cir. 2014) (per curiam) ................................................................ 11

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................................................................... 10

*Lohr v. Gilman*,
    248 F. Supp. 3d 796 (N.D. Tex. 2017) ............................................................................. 11

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555, 564 (1992) .................................................................................................... 9

*Mauzy v. Legislative Redistricting Bd.*,
    471 S.W.2d 570 (Tex. 1971) ............................................................................................... 1

*Moore v. Tangipahoa Par. Sch. Bd.*,
    507 F. App'x 389 (5th Cir. 2013) (per curiam) .................................................................. 7

*Perry v. Del Rio*,
    67 S.W.3d 85 (Tex. 2001) ................................................................................................... 5

*Powell v. Dallas Morning News LP*,
    610 F. Supp. 2d 569 (N.D. Tex. 2009) ............................................................................ 11

*Railroad Commission of Texas v. Pullman Co.*,
    312 U.S. 496 (1941) ............................................................................................................. 6

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) (per curiam) ........................................................................ 1

*Reetz v. Bozanich*,
    397 U.S. 82 (1970) ............................................................................................................... 7

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................................................................. 3

*Satterfield v. Crown Cork & Seal Co.*,
    268 S.W.3d 190 (Tex. App.—Austin 2008) ..................................................................... 5

*Shepherd v. San Jacinto Junior Coll. Dist.*,
    363 S.W.2d 742 (Tex. 1962) ............................................................................................... 5

*In re State*,
    602 S.W.3d 549 (Tex. 2020) ............................................................................................... 8

*Stephens by Stephens v. Bowie County*,
    724 F.2d 434 (5th Cir. 1984) (per curiam)..................................................................7

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) .....................................................................................10

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009)....................................................................................................11

*Terrazas v. Ramirez*,
    829 S.W.2d 712 (Tex. 1991) (orig. proceeding)..............................................4, 6, 8

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) (Smith, J.).....................................................................8

*Walker v. Baker*,
    196 S.W.2d 324 (Tex. 1946) (orig. proceeding)....................................................4, 5

*Winborne v. Comm'rs Ct.*,
    757 S.W.2d 876 (Tex. App.—Waco 1988), *aff'd*, *Vinson v. Burgess*, 773
    S.W.2d 263 (Tex. 1989)................................................................................................5

**OTHER AUTHORITIES**

Op. Tex. Att'y Gen. No. M-881 (1971)................................................................................6

*Regular Session: Overview*, https://lrl.texas.gov/sessions/session
    Snapshot.cfm?legSession=87- .....................................................................................8

Tex. Const. art. III, § 28................................................................................................3, 4, 5, 6

1 George D. Braden et al., *The Constitution of the State of Texas: An Annotated and
    Comparative Analysis* 158 (1977) ............................................................................... 6

13A Wright & Miller, *Federal Practice and Procedure* § 3531.9.5 (3d ed.)...............................12

**INTRODUCTION**

Seeking to exploit delays in the federal census caused by the pandemic, Plaintiffs ask this Court to disrupt the State's redistricting process. They argue that a state constitutional amendment prevents the Legislature from redistricting in the current special session—even though the amendment's text does not prohibit anything and its "object and purpose obviously was to get on with the job of legislative redistricting." *Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971). Plaintiffs suggest that vindicating the right to vote in a democracy requires transferring authority from elected Texas legislators to unelected federal judges. Plaintiffs' claims cannot succeed on the merits.

But the Court need not reach those issues because Plaintiffs have not presented a case fit for federal adjudication. This Court lacks jurisdiction because Plaintiffs have not plausibly alleged that Defendants will implement the allegedly unconstitutional old maps during the 2022 election, much less that any such implementation would injure Plaintiffs. And even if this case required interpreting the Texas Constitution, this Court would need to abstain in favor of Texas courts.

**LEGAL STANDARD**

Plaintiffs errantly rely on the permissive pleading standard from *Conley v. Gibson*, 355 U.S. 41 (1957), a standard the Supreme Court expressly rejected in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Arguing that "[d]ismissal is appropriate ***only if*** it appears certain that Plaintiffs cannot prove any set of facts that would entitle them to relief," ECF 15 at 3, Plaintiffs cite a pre-*Twombly* case that rested on *Conley*. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *Conley*, 355 U.S. at 45–46). But that is not the law. "*Twombly* retired the *Conley* no-set-of-facts test," *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009), so Plaintiffs' proposed "no set of facts" standard "is best forgotten." *Twombly*, 550 U.S. at 562–63. Under current precedent, Plaintiffs must plead sufficient factual allegations "to raise a right to relief above

1

the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (requiring "a claim of relief that is plausible on its face").

## ARGUMENT

### I. Plaintiffs Cannot Challenge the Old Maps

This Court lacks subject-matter jurisdiction over Plaintiffs' challenge to the old maps because Plaintiffs have not plausibly alleged that Defendants will implement the old maps during the 2022 elections. That prevents Plaintiffs from having standing and their claims from being ripe. *See* ECF 12 at 4–9. It also supports a finding that Plaintiffs' claims are not prudentially ripe. *See id.* at 9–10. Plaintiffs' only response is to dispute Defendants' understanding of state law, *see* ECF 15 at 2–3, but their argument is both irrelevant and wrong. First, the problems with Plaintiffs' claims rest on Defendants' intent regarding the 2022 elections, not state law in the abstract. Second, state law empowers the Legislature's decision to redistrict during the special session.

#### A. Defendants Will Not Implement the Old Maps Plaintiffs Challenge

This Court lacks jurisdiction over Plaintiffs' challenge to the old maps because Plaintiffs have not plausibly alleged that Defendants will implement the old maps for the 2022 election. *See* ECF 12 at 4–9. In response, Plaintiffs do *not* argue that Defendants will in fact implement the old maps. Instead, Plaintiffs simply fail to raise an argument about what Defendants will do.

It appears Plaintiffs believe that they can challenge the old maps regardless of whether Defendants will implement those maps, but there is no support for that view. A plaintiff "who invokes the power [of judicial review] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury *as the result of its enforcement*." *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (emphasis added). When a court grants relief, it "enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding." *Id.* Indeed, Plaintiffs themselves

2

acknowledge elsewhere that federal jurisdiction depends on "the defendants' conduct." ECF 15 at 4 (describing the traceability element of standing). Here, Plaintiffs cannot point to any "acts of the official" defendants that they want to enjoin. *See California v. Texas*, 141 S. Ct. 2104, 2114 (2021).

According to Plaintiffs, ripeness follows as a matter of law because state law prohibits redistricting during the special session, *see* ECF 15 at 3, but that is a non sequitur. Plaintiffs conflate abstract interpretations of state law with the real-world actions Defendants will take in 2022. As discussed, Defendants believe the Legislature has the power to redistrict during the special session. Thus, "Defendants have no intention to implement the old maps." ECF 12 at 9.[1]

In theory, a court could enjoin Defendants from implementing the new maps, perhaps affecting this Court's jurisdiction, but that is not an option here. Plaintiffs have disclaimed any challenge to the new maps, *see* ECF 15 at 2, and they effectively concede that this Court could not enjoin implementation of the new maps based on their state-law theory. *See id.* at 18 n.1. Plaintiffs also seem to disclaim any state-court litigation. *See* ECF 15 at 17–18. Thus, there is no reason to think any court will order Defendants not to implement the new maps. So regardless of what one thinks about the merits of Plaintiffs' state-law theory, Plaintiffs cannot challenge the old maps because Defendants will not implement them during the 2022 elections.

### B. Plaintiffs Misinterpret the Texas Constitution

Even if Plaintiffs were right that jurisdiction over their challenge to the old maps depended on Article III, Section 28, Plaintiffs are wrong about the meaning of that provision. *See* ECF 12 at

---

[1] Plaintiffs also confuse ripeness and standing with mootness. *See* ECF 15 at 3. Ripeness and standing depend on the facts "at the commencement of the litigation." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997); *see Renne v. Geary*, 501 U.S. 312, 320–21 (1991). Plaintiffs have not plausibly alleged that, at the commencement of this litigation, Defendants intended to implement the old maps during the 2022 election. Mootness, by contrast, depends on "postcommencement" facts. *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 174 (2000). Mootness would be at issue only if the Court thought it initially had jurisdiction but lost that jurisdiction due to post-commencement factual developments affecting Defendants' intent regarding the old maps.

11–15; ECF 14 at 19–22.

First, Plaintiffs emphasize that the Legislature "has **never** first apportioned state legislative districts in a special session," ECF 15 at 7, but that is because it has never needed to—until now. As Plaintiffs conceded at the outset, this is the first time that the federal government delayed census data until after the end of the regular session. *See* ECF 1 ¶¶ 24–25. That the State finds itself in an unprecedented situation, through no fault of its own, underscores that a federal court should not hamstring the Legislature's ability to redistrict.

Second, Plaintiffs insist that the Legislature cannot redistrict during the special session because Article III, Section 28 authorizes redistricting only during the "first regular session after the publication of each United States decennial census." Tex. Const. art. III, § 28. Relying on *Walker v. Baker*, 196 S.W.2d 324 (Tex. 1946) (orig. proceeding), Plaintiffs argue that redistricting "at a different time is prohibited." ECF 15 at 8. Plaintiffs are wrong for multiple reasons.

As a preliminary matter, the Texas Supreme Court has expressly approved redistricting at times other than the "first regular session" mentioned in Article III, Section 28. *See Terrazas v. Ramirez*, 829 S.W.2d 712, 726 (Tex. 1991) (orig. proceeding). Plaintiffs concede that the Legislature is authorized to pass redistricting legislation in a special session that occurs *after* the first regular session after census data is released. *See* ECF 10 at 11–13; ECF 15 at 13–14. Indeed, the Legislature has done so many times, notwithstanding the fact that the Constitution does not expressly authorize the Legislature to do so. If Article III, Section 28 were really "exclusive," as Plaintiffs repeatedly maintain, *see* ECF 15 at 8–9, 14, then the Legislature would be allowed to redistrict only once per decade in the first regular session, never in a special session or a subsequent regular session, contrary to long-established Texas practice. *See* ECF 12 at 13–14.

Moreover, Plaintiffs misread *Walker*. That case rests on the proposition that "where a

4

power is expressly given and the means by which, or the manner in which, it is to be exercised is prescribed, such means or manner is exclusive of all others." *Walker*, 196 S.W.2d at 327. It held that the Texas Senate could not convene itself because the Texas Constitution expressly provided that the Legislature would be convened every two years at a regular session and at such special sessions as the *Governor* decided to call "in his judgment and discretion." *Id.* at 327–28. That ruling does not apply here because Article III, Section 28 does not "give[]" the Legislature power to redistrict. Instead, it mandates that the Legislature exercise its pre-existing authority to redistrict at least at the first regular session after a federal census. *See* ECF 12 at 2–3.

> Moreover, *Walker* expressly distinguished cases like this one:

> [W]e are not overlooking the fact that the Constitution provides in Art. III, Sec. 1, that "the Legislative power of this State shall be vested in . . . The Legislature of the State of Texas," which means all legislative power—the power to make, alter and repeal laws—not expressly or impliedly forbidden by other provisions of the State and Federal Constitutions. But that rule applies to legislative power to be exercised by the Legislature, not to a non-legislative power to be exercised by the Senate.

*Id.* at 328 (citations omitted). Subsequent cases have adhered to this distinction. *Compare Winborne v. Comm'rs Ct.*, 757 S.W.2d 876, 878–79 (Tex. App.—Waco 1988) (on legislative power, construed broadly), *aff'd*, *Vinson v. Burgess*, 773 S.W.2d 263 (Tex. 1989); *City of Humble v. Met. Transit Auth.*, 636 S.W.2d 484, 493–94 (Tex. App.—Austin 1982) (writ ref'd n.r.e.) (same), *with Henry v. Cox*, 520 S.W.3d 28, 39 (Tex. 2017) (on separation of powers, construed narrowly); *Perry v. Del Rio*, 67 S.W.3d 85, 91–92 (Tex. 2001) (same).

The power to draw legislative districts is part of the general legislative power. That means that the Legislature can exercise that power except as expressly prohibited by the Texas Constitution. *Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 743 (Tex. 1962); *see also Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 202 (Tex. App.—Austin 2008) (no pet.) ("All power which is not limited by the constitution inheres in the people, and a legislative

act is valid only when the constitution contains no prohibition against it."").

Third, Plaintiffs speculate that "absurdity will follow" from Defendants' interpretation of Article III, Section 28. ECF 15 at 10–12, 14. But the alleged absurdities are possible under any interpretation that allows the Legislature to redistrict more than once per decade, which Plaintiffs' interpretation would also allow. Plaintiffs concede that the Legislature "is not prohibited from" redistricting "in ***later*** special or regular sessions." ECF 15 at 13 (quoting *Terrazas*, 829 S.W.2d at 726). Because Plaintiffs' parade of horribles applies equally to their own constitutional interpretation, it cannot help them here.

Fourth, Plaintiffs cite outdated and inapplicable sources in support of its argument that the Legislature may only redistrict during a regular session. *See* ECF 15 at 13. Plaintiffs cite a fifty-year-old Texas Attorney General Opinion, which asserts that the Legislature is not authorized to consider redistricting legislation in a special session after having failed to pass such legislation in a regular session. *See* Op. Tex. Att'y Gen. No. M-881, at 4298 (1971). That advisory opinion has nothing to do with whether the Legislature can redistrict in a special session *generally*, let alone in a special session called before the first regular session after census data is published. Rather, it involved the circumstances in which Article III Section 28 shifts redistricting responsibility to the Legislative Redistricting Board. That is an entirely different subject, related to the express operation of Section 28, not the scope of the Legislature's redistricting power. Regardless, the opinion was issued prior to the Texas Supreme Court's pronouncement in *Terrazas*, which expressly held that the Legislature is authorized to redistrict during a special session. *See* 829 S.W.2d at 726. Plaintiffs also cite a legal treatise, 1 George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 158 (1977), but it relies on the same outdated Attorney General opinion mentioned above.

## II.     The Court Should Abstain under *Pullman*

This Court should abstain under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), because state-court resolution of the state-law issue would likely moot Plaintiffs' federal constitutional claims. *See* ECF 12 at 15–17. If the Texas Constitution does not prohibit the Legislature from redistricting during the special session—as Defendants argue—there is no need for this Court to confront Plaintiffs' federal constitutional claims. Plaintiffs raise three counter-arguments, but each fails.

First, Plaintiffs argue this Court should not abstain because "the state law at issue here is clear," ECF 15 at 16, but they previously acknowledged that this situation has "**never**" arisen before, *id.* at 7. And they admit the federal census has never been so delayed that the Legislature received the numbers necessary for redistricting only after the end of its regular session. *See* ECF 1 ¶¶ 24–25. State law cannot clearly favor Plaintiffs when "there is no authoritative statement from the state courts or legislature." *Stephens ex rel. Stephens v. Bowie County*, 724 F.2d 434, 436 (5th Cir. 1984) (per curiam). "[I]n absence of an authoritative and controlling determination by the state tribunals," abstention "is a wise and permissible policy." *City of Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 172 (1942). That is especially true here in light of the textual and other reasons state law should not be interpreted to create a one-person-one-vote problem. *See* ECF 12 at 11–15; *supra* Part I.B.

Plaintiffs cannot credibly dispute that a state court "could *conceivably*" interpret state law to allow redistricting during the special session. *Reetz v. Bozanich*, 397 U.S. 82, 87 (1970) (emphasis added); *accord Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 44 (1970) (abstaining because a state-court ruling was "conceivable"). So long as such a ruling is "certainly possible," state law is sufficiently ambiguous to support *Pullman* abstention. *Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 396 (5th Cir. 2013) (per curiam).

Second, Plaintiffs assert that "the federal question will remain to be decided no matter the resolution of the state law question," ECF 15 at 17, but that contradicts their ripeness argument. Regarding ripeness, Plaintiffs insist that "the Legislature may not act until 2023" as a matter of state law. *Id.* at 3. As Plaintiffs concede, they are attempting to rebut an argument against ripeness that "is dependent on" a "reading of the Texas Constitution." *Id.* Thus, the disputed question of state law could deprive this Court of jurisdiction, "mak[ing] it unnecessary for [the Court] to rule on the federal constitutional question." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 n.13 (5th Cir. 2020) (Smith, J.) (quoting *Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009)).

Plaintiffs are the ones who have put state law at issue by structuring their federal claims to depend on an antecedent question of state law. Plaintiffs' complaint asserts that "this Court has the exclusive obligation to create interim maps" because, "[a]s a matter of Texas constitutional law, the Legislature cannot reapportion until the first regular session after the census." ECF 1 ¶ 1. Plaintiffs cannot now characterize their claims as "independent" of state law. ECF 15 at 17.

Third, Plaintiffs argue that litigation in state court is not good enough because of supposed "delays," ECF 15 at 17–18, but it is Plaintiffs who have delayed this litigation. On Plaintiffs' erroneous theory, they could have filed suit as soon as it became clear that the Legislature would not redistrict during its regular session—no later than May 31, 2021, when the regular session ended.[2] Plaintiffs delayed filing suit until September 1. *See* ECF 1. They did not seek a preliminary injunction until almost two weeks later. *See* ECF 10. If time is short, that is Plaintiffs' own fault.

In any event, Plaintiffs' fears are overblown. State courts handle emergency matters on an expedited timeframe when necessary. *See, e.g.*, *In re State*, 602 S.W.3d 549, 553 (Tex. 2020)

---

[2] Legislative Reference Library, *87th Regular Session: Overview*, https://lrl.texas.gov/sessions/sessionSnapshot.cfm?legSession=87-0.

8

(resolving a mandamus petition in fourteen days in an election case). Plaintiffs contend that state courts "may" have less authority than federal courts, *see* ECF 15 at 17, but the Texas Supreme Court "do[es] not doubt the power of [state] courts to" "impose[] a substitute plan upon the State." *Terrazas*, 829 S.W.2d at 717–18. And federal courts must defer to redistricting done by state courts. *See Growe v. Emison*, 507 U.S. 25, 34 (1993).

Plaintiffs cite only one case for this argument, but its unremarkable holding does not apply. In *Zwickler v. Koota*, state law was "both clear and precise," so the parties agreed "that state court construction cannot . . . render unnecessary a decision of [the plaintiff's] constitutional challenge." 389 U.S. 241, 250 (1967). Because there were no "special circumstances" justifying abstention, the case turned on the familiar proposition "that abstention cannot be ordered simply to give state courts the first opportunity to vindicate [a] federal claim." *Id.* at 248, 251–52. In those circumstances, abstention would have led to unnecessary "delay." *Id.* at 251–52.

In this case, however, abstention is warranted—despite the speculative risk of delay present in every case—because there is "hope of its bearing fruit." *Id.* at 251 (quotation omitted). The fruit is the avoidance of federal constitutional claims that will disappear as soon as Texas courts reject Plaintiffs' atextual interpretation of the Texas Constitution.

### III. Even If Other Potential Plaintiffs Had Standing, These Plaintiffs Would Not

Nothing in Plaintiffs' response establishes that they have Article III standing.

#### A. The Individual Plaintiffs Lack Standing

Senators Gutierrez and Eckhardt ("Individual Plaintiffs") have not established a cognizable injury in-fact. Because Plaintiffs seek prospective relief, Plaintiffs must establish an "imminent" future injury. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 564 (1992). The Supreme Court has repeatedly interpreted this to mean that a "threatened injury must be *certainly impending* to constitute injury in fact"— "[a]llegations of possible future injury are not sufficient." *Clapper v.*

9

*Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotations omitted).

Individual Plaintiffs do not deny that they cannot have standing unless they will vote in the next election. They do not attempt to distinguish the cases Defendants cited. *See* ECF 12 at 18.

Nor do Individual Plaintiffs argue that they expressly alleged that they will vote in 2022. Instead, they try to shift their burden to Defendants by claiming that "[t]he State [sic] asserts implausibly that the State Senators will not vote in future elections." ECF 15 at 4. Defendants do not have the burden of proving a negative. The burden is on Individual Plaintiffs to plausibly allege that they will vote. Plaintiffs have failed to do so.

Individual Plaintiffs also suggest the Court can "infer that they will vote in future elections" because they have "consistently voted" in previous elections, ECF 15 at 4–5, but that is wrong for two reasons. First, "evidence that a plaintiff has taken an action in the past does not, by itself, demonstrate a substantial risk that the plaintiff will take the action in the future; there must be some evidence that the plaintiff intends to take the action again." *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019). Second, even if the Court could infer that Individual Plaintiffs will vote in *some* future election, the question here is whether they will vote in the 2022 election. Individual Plaintiffs do not even claim to have voted in every election.

Individual Plaintiffs' failure to allege that they intend to vote may seem trivial, but the very ease with which they could fix the problem makes their refusal to do so all the more perplexing. If they truly will vote, they should have no trouble so alleging consistent with Rule 8 and Rule 11. *Cf.* ECF 15 at 5 (noting the possibility of "amended pleadings").[3]

---

[3] Plaintiffs maintain that "[a] single plaintiff in a malapportioned district may seek a statewide remedy," ECF 15 at 5, but that contradicts *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018), *see* ECF 12 at 18 n.9, and the general principle that any "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Plaintiffs rely on *Reynolds v. Sims*, but the plaintiffs there had sued "on behalf of all similarly situated Alabama voters." 377

### B. The Tejano Democrats Lack Standing

Plaintiffs do not respond to Defendants' arguments challenging the Tejano Democrats' standing. The Tejano Democrats have forfeited any relevant arguments in favor of standing. *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019).

*Associational Standing*: Defendants' motion argued that the Tejano Democrats lacked associational standing for three independent reasons. First, the complaint "never alleges *facts* establishing that [supposed members] 'possess all of the indicia of membership' required by *Hunt* [*v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)]." ECF 12 at 19. Instead of responding to this argument, Plaintiffs continue to rely on the same conclusory assertion that Defendants' motion addressed. *Compare* ECF 12 at 19 (citing ECF 1 ¶ 5), *with* ECF 15 at 6 (same).

Second, the complaint "fail[s] to 'identify members'" under *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). ECF 12 at 19–20. Plaintiffs do not claim to have identified any members or argue that identification is not required. They do not even cite *Earth Island Institute*. The closest Plaintiffs come to a response is citing the complaint's conclusory assertion that "Tejano Democrats has members in overpopulated . . . districts," ECF 1 ¶ 34, but this Court cannot "accept[] the [Tejano Democrats'] self-descriptions of their membership." *Earth Island Institute*, 555 U.S. at 499. It cannot ask whether "there is a statistical probability that some of those members are threatened with concrete injury." *Id.* at 497. Federal jurisdiction "require[s] plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Id.* at 498.

Third, the complaint "never allege[s] what the purpose of the Tejano Democrats is," much

---

U.S. 533, 537 (1964). The other case Plaintiffs cite, *Moss v. Burkhart*, was also brought on behalf of a "class." 220 F. Supp. 149, 152 (W.D. Okla. 1963), *aff'd sub nom. Williams v. Moss*, 378 U.S. 558 (1964).

less establishes that this lawsuit is "germane" to the Tejano Democrats' purpose under *Hunt*. ECF 12 at 20. Plaintiffs do not dispute that they did not allege the Tejano Democrats' purpose. Instead, they try to establish that fact in a legal brief—without citation to the complaint or anything else. *See* ECF 15 at 6. That is insufficient. "[A] court is limited to consideration of the pleadings, and matters or theories raised in a response are not part of the pleadings." *Lohr v. Gilman*, 248 F. Supp. 3d 796, 810 (N.D. Tex. 2017); *see also Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 793 (5th Cir. 2014) (per curiam); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 577 (N.D. Tex. 2009).

Germaneness cannot be inferred here. Without specific allegations, it would not "be reasonable to assume that" purported members "are willing to be represented" by the Tejano Democrats in cases unrelated to being a Tejano Democrat. 13A Wright & Miller, *Federal Practice and Procedure* § 3531.9.5 (3d ed.) (noting that it "may be reasonable to assume that members are willing to be represented within the scope of organizational concerns"). Moreover, there is "a potential conflict between the interests of an organization's leadership and members' interests" given that some purported members are likely to be over-represented rather than under-represented under allegedly malapportioned maps. *Id.*

Plaintiffs generally argue that the Fifth Circuit rejected a "stringent view of associational standing" in *LULAC v. Clements*. ECF 15 at 6 (citing 999 F.2d 831, 845 (5th Cir. 1993) (en banc)) but that case did not address associational standing. It simply acknowledged "the standing of voters in a voting rights case," which cannot help Plaintiffs here. *LULAC*, 999 F.2d at 845.

*Organizational Standing*: Defendants' motion also argued that the Tejano Democrats lacked organizational standing. *See* ECF 12 at 20–21. Offering no response, Plaintiffs have forfeited any argument to the contrary.

*Third-Party Standing*: Finally, Defendants argue that Section 1983's bar on third-party standing was an independent barrier to the Tejano Democrats' suit. *See* ECF 12 at 21–22. Plaintiffs' response does not contest that point.

## Conclusion

Defendants respectfully request that the Court dismiss Plaintiffs' claims or, in the alternative, abate these proceedings until after the Legislature has had the opportunity to fully address House and Senate redistricting in special session.

| | |
|---|---|
| Date: October 6, 2021 | Respectfully submitted. |
| | |
| KEN PAXTON<br>Attorney General of Texas | /s/ Patrick K. Sweeten<br>PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | |
| | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov |
| | **COUNSEL FOR DEFENDANTS** |

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 6, 2021, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN