# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ROLAND GUTIERREZ; SARAH ECKHARDT; and the TEJANO DEMOCRATS, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | Case No. 1:21-cv-00769-RP-JES-JVB |
| GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY; AND JOHN SCOTT, SECRETARY OF STATE OF TEXAS OF TEXAS SUED IN HIS OFFICIAL CAPACITY, | § § § § § § | |
| *Defendants*. | § | |

**DEFENDANTS' PARTIALLY OPPOSED SECOND MOTION TO CONSOLIDATE**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................................................ ii
Table of Authorities ....................................................................................................................................... iii
Introduction ..................................................................................................................................................... 1
Background ...................................................................................................................................................... 1
Argument .......................................................................................................................................................... 4
    I.   The First-to-File-Rule Supports Consolidation in This Court ..................................................... 4
    II.  Rule 42 Supports Consolidation in This Court ............................................................................. 6
        A.  The Actions Were Filed in the Same Court .......................................................................... 6
        B.  The Actions Involve Substantially Similar Parties ................................................................ 7
        C.  The Actions Involve Similar Issues ........................................................................................ 7
        D.  There is Little Risk of Confusion is the Cases are Consolidated, But Great Risk of Prejudice from Inconsistent Adjudications if They are Not .................................................. 8
        E.  Consolidation Will Conserve Judicial Resources .................................................................. 9
        F.  The Actions are at an Early Stage of Development ........................................................... 10
Conclusion ...................................................................................................................................................... 10

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armour v. Ohio*,
  925 F.2d 987, 988 (6th Cir. 1991) (en banc)............................................................................8

*Brooks v. Abbott*,
  No. 1:21-cv-991-LY (W.D. Tex. Nov. 3, 2021).......................................................................3

*Brown v. Fort Hood Fam. Hous. LP*,
  No. 5:20-cv-704-OLG, 2020 WL 10758046, at *2 (W.D. Tex. Sept. 25, 2020)................................7

*Bryson v. Plaza Oaks BPRE Invs., Inc.*,
  No. 7:16-cv-029-DAE, 2016 WL 8856641, at *2 (W.D. Tex. Sept. 8, 2016)...................................6

*Dryshod Int'l, LLC v. Haas Outdoors, Inc.*,
  No. 1:18-cv-596-RP, 2019 WL 5149860, at *2 (W.D. Tex. Jan. 18, 2019) (Pitman, J.)...................7

*Dupont v. S. Pac. Co.*,
  366 F.2d 193, 196 (5th Cir. 1966) ............................................................................................9

*Frazier v. Garrison Indep. Sch. Dist.*,
  980 F.2d 1514, 1531–32 (5th Cir. 1993) ............................................................................. 6, 9

*Gentry v. Smith*,
  487 F.2d 571, 581 (5th Cir. 1973) ............................................................................................6

*Hart v. Donostia LLC*,
  290 F. Supp. 3d 627, 632 (W.D. Tex. 2018).............................................................................5

*Holmes v. City of San Antonio Airport*,
  No. 5:21-cv-00267, 2021 WL 2878548, at *1 (W.D. Tex. Apr. 26, 2021) .................................6

*Holmes v. City of San Antonio*,
  No. 5:21-cv-00274, 2021 WL 2878551, at *2 (W.D. Tex. Mar. 30, 2021) .............................10

*Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*,
  No. 2:19-cv-00266-JRG, 2020 WL 6479562, at *7 (E.D. Tex. Sept. 30, 2020) .......................6

*Jine v. OTA Corp.*,
  No. 8:20-cv-1152, 2020 WL 7129374, at *13–14 (C.D. Cal. Sept. 11, 2020).........................9

*John T. Morris v. Texas*,
  No. 4:21-cv-3456 (S.D. Tex. Oct. 20, 2021) ............................................................................1

*Lay v. Spectrum Clubs, Inc.*,
  No. 5:12-cv-754-DAE, 2013 WL 788080, at *2–3 (W.D. Tex. Mar. 1, 2013) ............................ 8, 10

*LeGrand v. N.Y. Transit Auth.*,
  No. 1:95-cv-333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999) ......................................... 9

*LULAC v. Abbott*,
  No. 3:21-cv-259 (W.D. Tex. Oct. 18, 2021) ............................................................................. 1

*MALC v. Texas*,
  No. 1:21-cv-988-RP (W.D. Tex. Nov. 3, 2021) ....................................................................... 2

*Mann Mfg. Inc. v. Hortex, Inc.*,
  429 F.2d 403, 408 n.6 (5th Cir. 1971) ................................................................................. 4, 5

*Netlist, Inc. v. SK Hynix Inc.*,
  No. 6:20-cv-194-ADA, 2021 WL 2954095, at *2 (W.D. Tex. Feb. 2, 2021) ........................... 5

*Page v. Bartels*,
  248 F.3d 175, 190 (4th Cir. 2001) ....................................................................................... 5, 8

*Perez v. Texas*,
  No. 5:11-cv-360-OLG-JES-XR (W.D. Tex. July 6, 2011) .................................................... 10

*RTIC Drinkware LLC v. YETI Coolers, LLC*,
  No. 1:16-cv-907-RP, 2017 WL 5244173, at *3 (W.D. Tex. Jan. 18, 2017) (Pitman, J.) ......... 9, 10

*Samarto v. Keller Williams Realty, Inc.*,
  No. 1:21-cv-76-RP, 2021 WL 3596303, at *2–3 (W.D. Tex. Apr. 27, 2021) .......................... 7

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947, 948 (5th Cir. 1997) ....................................................................................... 4, 5

*Sutter Corp. v. P&P Indus., Inc.*,
  125 F.3d 914, 917 (5th Cir. 1997) ....................................................................................... 4, 5

*Texas v. United States*,
  No. 6:21-cv-16, 2021 WL 3171958, at *2 (S.D. Tex. July 26, 2021) ....................................... 7

*Voto Latino v. Scott*,
  No. 1:21-cv-965-RP (W.D. Tex. Oct. 25, 2021) ...................................................................... 2

*Wilson v. Texas*,
  No. 1:21-cv-943-RP (W.D. Tex. Oct. 18, 2021) ...................................................................... 2

*Wion v. Dretke*,
  No. 7:05-cv-146-RAJ, 2006 WL 8441507, at *2 (W.D. Tex. July 14, 2006) ........................... 7

*Yeti-Coolers, LLC v. Beavertail Prods., LLC*,
    No. 1:15-cv-415-RP, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015) ........................... 4, 8, 9

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2382 (5th ed. 2019) ................. 7

**INTRODUCTION**

Two weeks ago, Defendants Greg Abbott and John Scott[1] filed a motion to consolidate this redistricting lawsuit with the redistricting lawsuit filed in *LULAC v. Abbott*. Since then, four more redistricting lawsuits have been filed, each in the Austin Division of the Western District of Texas.[2] Pursuant to the first-to-file rule and Federal Rule of Civil Procedure 42, Defendants respectfully request that those four actions be consolidated into this action.

**BACKGROUND**

As explained in Defendants' First Motion to Consolidate, this action substantially overlaps with the *LULAC* action. ECF 20. Those two cases also substantially overlap with the four most recent redistricting lawsuits. A brief summary of the six federal redistricting actions illustrates their similarity.

*Gutierrez v. Abbott.* Senator Gutierrez, Senator Eckhardt and the Tejano Democrats sue Governor Abbott and Secretary Scott, challenging Texas's House of Representatives and Senate maps. They allege that those maps are malapportioned in violation of the Fourteenth Amendment, denying them and other Texans (especially Mexican Americans) equal representation. They ask the Court to declare those maps unlawful and implement court-drawn interim ones. *See* ECF 1 ¶¶ 5, 38–46. This case is assigned to Judges Pitman, Smith, and Brown.

*LULAC v. Abbott*, No. 3:21-cv-259, ECF 1 (W.D. Tex. Oct. 18, 2021) (Ex. A). LULAC and other organizations and individuals (the "LULAC Plaintiffs") sue Governor Abbott and Secretary Scott, challenging Texas's House, Senate, congressional, and State Board of Education ("SBOE") maps. They allege that those maps discriminate against Latinos and are malapportioned in violation of the Fourteenth Amendment and that they dilute Latino voting strength in violation of Section 2 of

---

[1] The Secretary of State is automatically substituted for the Deputy Secretary of State pursuant to Rule 25(d).

[2] Defendants recently learned of, but have not been served with, a seventh federal redistricting lawsuit filed in the Southern District, *John T. Morris v. Texas*, No. 4:21-cv-3456, ECF 1 (S.D. Tex. Oct. 20, 2021) (Ex. F). Defendants intend to seek consolidation of that case, but do not include it in this motion because they must first seek transfer from the Southern District.

the Voting Rights Act ("VRA"). They ask the court to strike down those four maps, "set a reasonable deadline" for the Legislature to pass new maps, and, if it does not, implement court-drawn maps. *See* Ex. A ¶¶ 105–12, 115. This case is assigned to Judges Guaderrama, Smith, and Brown.

*Wilson v. Texas*, No. 1:21-cv-943-RP, ECF 1 (W.D. Tex. Oct. 18, 2021) (Ex. B). Damon Wilson sues the State of Texas, Governor Abbott, Secretary Scott, Speaker Phelan, and Lieutenant Governor Patrick, challenging Texas's congressional map. He alleges that the map designates state prisoners, like himself, as residents of the district where they are incarcerated. He contends that state prisoners are entitled to be designated as residents of the district they lived in prior to incarceration, and that Texas's policy denies him and others like him equal representation in violation of the Fourteenth Amendment, and that the congressional districts and malapportioned. Wilson seeks class certification and requests that the congressional map be declared unconstitutional. Presumably he also asks the court to draw and implement an interim map. *See* Ex. B at 5–12, 18–19. This case is assigned to Judge Pitman.

*Voto Latino v. Scott*, No. 1:21-cv-965-RP, ECF 1 (W.D. Tex. Oct. 25, 2021) (Ex. C). Voto Latino and several individuals (the "Voto Latino Plaintiffs") sue Secretary Scott and Governor Abbott, challenging Texas's congressional map. Specifying several congressional districts, they allege that those districts dilute the voting strength of Blacks and Latinos in violation of Section 2 of the Voting Rights Act. They likewise request that the congressional map be struck down and replaced with a court-drawn map. *See* Ex. C at ¶¶ 127–36, pp. 32–33. This case is assigned to Judge Pitman.

*MALC v. Texas*, No. 1:21-cv-988-RP, ECF 1 (W.D. Tex. Nov. 3, 2021) (Ex. D). MALC sues the State of Texas, Governor Abbott, and Secretary Scott, challenging Texas's House, congressional, and SBOE maps. Specifying various districts in those maps, the MALC Plaintiffs allege that those districts discriminate against Latinos, and they bring claims for racial gerrymandering, intentional racial discrimination, and malapportionment in violation of the Fourteenth and Fifteenth Amendments, and vote dilution under Section 2 of the VRA. They ask the court to strike down those three maps, "set a

reasonable deadline" for the Legislature to pass new maps, and, if it does not, implement court-drawn maps. *See* Ex. D at ¶¶ 231–241, pp. 52–54. This case is assigned to Judge Pitman.

*Brooks v. Abbott*, No. 1:21-cv-991-LY, ECF 1 (W.D. Tex. Nov. 3, 2021) (Ex. E). Roy Brooks and several individuals sue Governor Abbott and Secretary Scott, challenging the Texas Senate map. They allege that Senate District 10 discriminates against Black and Latinos and bring claims for intentional race discrimination in violation of the Fourteenth and Fifteenth Amendments, and Section 2 of the VRA, as for vote dilution claim under Section 2. They ask the court to strike down that map, "set a reasonable deadline" for the Legislature to pass new maps, and, if it does not, implement court-drawn maps. *See* Ex. E at ¶¶ 94–109, pp. 27–29. This case is assigned to Judge Yeakel.

**Table 1. Summary of Current Federal Redistricting Lawsuits.**

| Case | Number | Date Field | District | Division |
|---|---|---|---|---|
| *Gutierrez v. Abbott* | No. 1:21-cv-769 | 09/01/21 | Western | Austin |
| *LULAC v. Abbott* | No. 3:21-cv-259 | 10/18/21 | Western | El Paso |
| *Wilson v. Texas* | No. 1:21-cv-943 | 10/18/21 | Western | Austin |
| *Voto Latino v. Scott* | No. 1:21-cv-965 | 10/25/21 | Western | Austin |
| *MALC v. Texas* | No. 1:21-cv-988 | 11/03/21 | Western | Austin |
| *Brooks v. Abbott* | No. 1:21-cv-991 | 11/03/21 | Western | Austin |
| *Morris v. Texas* | No. 4:21-cv-3456 | 10/20/21 | Southern | Houston |

\* \* \*

Litigation of the reapportionment of Texas's electoral districts in response to the 2020 Census is just beginning but accelerating rapidly. As stressed in the First Motion to Consolidate, this litigation requires uniformity. Otherwise, the State Defendants could be forced to defend the same redistricting maps, involving similar challenges in multiple Courts with different panels in each. Further, based on the remedies sought by the various plaintiffs, the State Defendants could face the possibility of

3

inconsistent injunctions implementing inconsistent court-drawn maps. And these six lawsuits are not likely to be the last ones filed in federal court. To avoid this dilemma, the Court should grant Defendants' Second Motion to Consolidate, and allow these six redistricting cases to proceed together.

## ARGUMENT

### I. The First-to-File-Rule Supports Consolidation in This Court

The Fifth Circuit's first-to-file rule applies when parties file substantially similar lawsuits. *See Yeti-Coolers, LLC v. Beavertail Prods., LLC*, No. 1:15-cv-415-RP, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015). The rule is designed "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (quotation omitted).

For the rule to apply, the cases need only "overlap on the substantive issues," and do not need to be identical. *See Mann Mfg. Inc. v. Hortex, Inc.*, 429 F.2d 403, 408 n.6 (5th Cir. 1971). If "the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap," the "likelihood of conflict," and the "comparative advantage . . . of each forum." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 948 (5th Cir. 1997) (quotation omitted).

The first-to-file rule "not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter*, 125 F.3d at 917. Thus, the consolidation issue is properly before this Court, not the courts presiding over the other actions.

These six cases overlap on many issues. Perhaps most importantly, they all ask for the same equitable and declaratory relief: for the court to strike down the current electoral maps and implement court-drawn ones. *See* ECF 1 at 8–9; Ex. A at 24–25; Ex. B at 18–19; Ex. C at 32–33; Ex. D at 52–53; Ex. E at 27–28. For this reason, allowing these cases to proceed separately could result in (at least) four federal courts drawing three different congressional, House, and Senate maps, and two different

4

SBOE maps. That would impermissibly subject Defendants to inconsistent obligations. Consolidation is particularly appropriate where "a conflicting ruling could arise." *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 632 (W.D. Tex. 2018). Only in that way can the first-to-file rule serve its purpose: to "avoid piecemeal resolution of issues that call for a uniform result." *Sutter*, 125 F.3d at 917.

Moreover, the substantive legal challenges in each case are closely related because they are all redistricting claims. *See* ECF 1 ¶ 39; Ex. A ¶¶ 105–12; Ex. B at 10–14; Ex. C ¶¶ 127–36; Ex. D ¶¶ 231–41; Ex. E ¶¶ 94–109. Regardless of whether a redistricting claim is based on vote dilution, intentional discrimination, or malapportionment, the essence is the same: that a State drew its electoral maps such they violate an individual's voting rights. As explained by the Fourth Circuit, "it is clear that questions regarding the legitimacy of an apportionment scheme, whether under the Constitution or under the Voting Rights Act of 1965, are intimately related." *Page v. Bartels*, 248 F.3d 175, 190 (4th Cir. 2001).

These cases also involve similar parties. In each, the plaintiffs are individuals challenging the apportionment of their districts or organizations purporting to bring the same challenge on behalf of their constituents. And in all six cases, Governor Abbott and Secretary Scott are named as defendants. *See* ECF 1 ¶¶ 3–7; Ex. A ¶¶ 10–29; Ex. B at 2–5; Ex. C ¶¶ 14–30; Ex. D ¶¶ 1–5; Ex. E ¶¶ 8–17.

Because these six "cases are . . . very similar, efficiency concerns dictate that only one court decide both cases." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-cv-194-ADA, 2021 WL 2954095, at *2 (W.D. Tex. Feb. 2, 2021) (quotation omitted). True, they are not literally identical, but consolidation under the first-to-file rule "does not . . . require that cases be identical." *Save Power Ltd.,* 121 F.3d at 950. "The crucial inquiry is one of substantial overlap." *Id.* Defendants have met that standard here.

In short, the first-to-file rule provides that where two cases "overlap on the substantive issues," they should "typically" be "consolidated in . . . the jurisdiction first seized of the issues." *Sutter*, 125 F.3d at 917 (quoting *Mann*, 439 F.2d at 408 n.6). In that circumstance, consolidation in "the first-filed action is preferred." *Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 2:19-cv-00266-JRG, 2020 WL

5

6479562, at *7 (E.D. Tex. Sept. 30, 2020) (quotation omitted). These cases overlap on the substantive issues, and should therefore be consolidated in this Court under the first-to-file rule.

## II.     Rule 42 Supports Consolidation in This Court

Rule 42(a) of the Federal Rules of Civil Procedure gives an additional basis for consolidation. It provides that a court may consolidate two or more related actions if they involve "a common question of law or fact." These cases satisfy that threshold requirement. Most notably, they involve the exact same remedial question: If, in fact, a court *should* draw an interim remedial map, *how* should it do so? There are numerous other overlapping issues, including the effect of the population growth from 2010 to 2020 on Texas demographics and redistricting and whether the four new maps are valid.

Once that threshold condition is satisfied, consolidation is discretionary, but "[i]n this Circuit, district judges have been urged to make good use of Rule 42(a) . . . to expedite the trial and eliminate unnecessary repetition." *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973) (quotation omitted).

Whether to consolidate is guided by five factors: (i) whether the actions were filed in the same court, (ii) whether the actions involve the same parties, (iii) the extent to which the actions involve common questions of law or fact, (iv) the risk of confusion if the actions are consolidated as compared to the risk of inconsistent adjudications if they are not, and (v) the extent to which consolidation will conserve judicial resources. *See Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1531–32 (5th Cir. 1993); *see also Holmes v. City of San Antonio Airport*, No. 5:21-cv-00267, 2021 WL 2878548, at *1 (W.D. Tex. Apr. 26, 2021). Courts also consider "whether the cases are at different stages of preparation." *Bryson v. Plaza Oaks BPRE Invs., Inc.*, No. 7:16-cv-029-DAE, 2016 WL 8856641, at *2 (W.D. Tex. Sept. 8, 2016). Each of the factors favors consolidation.

### A.     The Actions Were Filed in the Same Court

The first factor asks whether the actions were filed before the same court. It is derived from the rule that cases from different districts may not be consolidated. *See* Charles Alan Wright & Arthur

6

R. Miller, *Federal Practice and Procedure* § 2382 (5th ed. 2019); *Wion v. Dretke*, No. 7:05-cv-146-RAJ, 2006 WL 8441507, at *2 (W.D. Tex. July 14, 2006). If parties wish to consolidate a case from another district, it must first be *transferred* to the home district. *See Mann*, 429 F.2d at 408.

This factor weighs in favor of consolidation because all six cases were filed in the Western District of Texas. That one case was filed in a different division makes no difference because the rule requires only that the cases be before the same *district*, not the same *division*. *See Wion*, 2006 WL 8441507, at *2; *Texas v. United States*, No. 6:21-cv-16, 2021 WL 3171958, at *2 (S.D. Tex. July 26, 2021).

### B.     The Actions Involve Substantially Similar Parties

The second factor asks whether and to what extent the actions involve similar parties. As party overlap increases, so too does the efficiency gained by consolidation. *Compare Samarto v. Keller Williams Realty, Inc.*, No. 1:21-cv-76-RP, 2021 WL 3596303, at *2–3 (W.D. Tex. Apr. 27, 2021) (common parties, ordering consolidation), *with Brown v. Fort Hood Fam. Hous. LP*, No. 5:20-cv-704-OLG, 2020 WL 10758046, at *2 (W.D. Tex. Sept. 25, 2020) (no common parties, denying consolidation).

This factor favors consolidation because the actions involve substantially similar parties. Each case includes Governor Abbott and Secretary Scott as defendants. True, there are different plaintiffs, but, as explained above, they are similar insofar as they are concerned with the same interest. *See* ECF 1 ¶¶ 3–7; Ex. A ¶¶ 10–29; Ex. B at 2–5; Ex. C ¶¶ 14–30; Ex. D ¶¶ 1–5; Ex. E ¶¶ 8–17.

### C.     The Actions Involve Similar Issues

The third factor asks whether and to what extent the actions involve similar questions of fact or law. Similar to the second factor, as the overlap of factual and legal issues increases, so too does the efficiency gained by consolidation. This is so because where substantially similar cases are not consolidated, discovery and motion practice are "likely to be highly duplicative, which risks unnecessary costs and delay." *Dryshod Int'l, LLC v. Haas Outdoors, Inc.*, No. 1:18-cv-596-RP, 2019 WL 5149860, at *2 (W.D. Tex. Jan. 18, 2019) (Pitman, J.); *see also Samataro*, 2021 WL 3596303, at *3.

This factor weighs heavily in favor of consolidation because the six actions present numerous common issues. Fundamentally, each case challenges the apportionment of Texas's electoral districts. *See* ECF 1 ¶ 39; Ex. A ¶¶ 105–12; Ex. B at 10–14; Ex. C ¶¶ 127–36; Ex. D ¶¶ 231–41; Ex. E ¶¶ 94–109. While an apportionment claim may be based on the Fourteenth Amendment, Section 2 of the VRA, or some other provision, at their core, all such claims are "closely similar, albeit not perfectly identical, challenges to the same state government action." *Page*, 248 F.3d at 191. This fundamental similarity is illustrated by the fact that all six cases will involve the same type of evidence, including demographic data related to the maps. *See Armour v. Ohio*, 925 F.2d 987, 988 (6th Cir. 1991) (en banc) ("The theories of liability and the proof underlying both the constitutional and statutory [redistricting] claims are intimately related.") And each case presents questions about whether the Court can and should order Governor Abbott and Secretary Scott to use court-drawn maps.

### D. There is Little Risk of Confusion is the Cases are Consolidated, But Great Risk of Prejudice from Inconsistent Adjudications if They are Not

The fourth factor asks the Court to weigh the risk of confusion if the cases are consolidated against the risk and prejudice of inconsistent adjudications if they are not. On the one hand, a jury may improperly blend the issues in a consolidated case. And on the other, the same issue may be inconsistently decided in unconsolidated cases. *See, e.g.*, *Yeti Coolers*, 2015 WL 4759297, at *2; *Lay v. Spectrum Clubs, Inc.*, No. 5:12-cv-754-DAE, 2013 WL 788080, at *2–3 (W.D. Tex. Mar. 1, 2013).

This factor weighs heavily in favor of consolidation. Inconsistent adjudications would be especially prejudicial in these circumstances. Each set of plaintiffs asks for court-drawn maps. *See* ECF 1 at 8–9; Ex. A at 24–25; Ex. B at 18–19; Ex. C at 32–33; Ex. D at 52–53; Ex. E at 27–28. Needless to say, having at least three separate sets of congressional, House, and Senate maps and two separate sets of SBOE maps would place Defendants in an untenable position. Courts impose court-drawn maps through injunctive relief, so Defendants would face inconsistent obligations on pain of contempt. This reason alone suffices to justify consolidation. *See Dupont v. S. Pac. Co.*, 366 F.2d 193,

8

196 (5th Cir. 1966) (court commits reversible error "[w]here prejudice to rights of the parties obviously results from the order of consolidation); *compare Jine v. OTA Corp.*, No. 8:20-cv-1152, 2020 WL 7129374, at *13–14 (C.D. Cal. Sept. 11, 2020) (contrasting requests for injunctive relief), *with LeGrand v. N.Y. Transit Auth.*, No. 1:95-cv-333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999) (opposite).

Similarly, both cases are likely to include similar discovery. Inconsistent resolution of privilege issues, for example, would be especially harmful. If the first court sustained a privilege objection while the second court overruled the same objection, the disclosure required by the second court's ruling would effectively undermine the first court's ruling. The increasing number of redistricting cases only compounds these issues. Perhaps as much as any other type of case, statewide redistricting cases "call for a uniform result." *Yeti Coolers*, 2015 WL 4759297, at *1 (quotation omitted).

On the other side of the scale, consolidation poses no risk of confusion or prejudice. These cases raise only equitable claims, so there will be no jury to confuse the issues. And if consolidation would pose any procedural confusion, it would be far outweighed by the parties' uniformity interests.

### E.  Consolidation Will Conserve Judicial Resources

The fifth factor asks whether consolidation will conserve resources and promote judicial economy. Judicial economy is promoted where the related actions will draw from the same witnesses or sources of discovery, involve similar legal briefing, turn on similar issues of fact or law, or are otherwise able to efficiently proceed together. *Frazier*, 980 F.2d at 1532; *RTIC Drinkware LLC v. YETI Coolers, LLC*, No. 1:16-cv-907-RP, 2017 WL 5244173, at *3 (W.D. Tex. Jan. 18, 2017) (Pitman, J.).

This factor weighs in favor of consolidation because it will prevent unnecessary litigation. There is no need for six different courts to decide the same redistricting issues, and there is no need or the parties to go through six separate rounds of discovery. Consolidation would also *greatly* conserve judicial resources. In fact, Judge Pitman is assigned to four of these cases, and Judges Smith and Brown are assigned to two. But those three judges overlap in only one case: this one. Having the same judges

9

decide the same issues on the same relief in a piecemeal fashion would be a waste of judicial resources.

### F.     The Actions are at an Early Stage of Development

Some courts also consider whether the actions are at similar stages of development. In this regard, it is efficient to consolidate cases that are both newly filed, or both ready for trial. Likewise, it is inefficient to consolidate cases that are at starkly different stages in the litigation process. *See, e.g.*, *RTIC Drinkware*, 2017 WL 5244173, at *3; *Lay*, 2013 WL 788080, at *3.

This factor weighs in favor of consolidation because all six actions are at very early stages of development and were filed only eight weeks apart. Further, no court has held an initial conference. Nor have any of the parties started discovery. Consolidation at this early stage does not delay any action or impose any additional logistical concerns.

\*     \*     \*

The cases should be consolidated here, rather than in one of the other cases. The "common practice" in the Western District of Texas is "for cases to be consolidated into the first-filed case." *Holmes v. City of San Antonio*, No. 5:21-cv-00274, 2021 WL 2878551, at *2 (W.D. Tex. Mar. 30, 2021). Moreover, Austin is the most convenient forum for the parties, witnesses, and counsel.

Consolidation is the norm for redistricting litigation. Indeed, many different parties and claims were consolidated before the same three-judge panel during the 2010 litigation. *See Perez v. Texas*, No. 5:11-cv-360-OLG-JES-XR, ECF 23 (W.D. Tex. July 6, 2011); *see also id.* ECF 63, 72, 76 (adding further parties and claims). It is simply impractical to have each redistricting case proceed separately, especially when so many sets of plaintiffs want each court to impose a unique map. There must be one forum that ensures consistency. Under the first-to-file rule and Rule 42, this Court should be that forum.

## CONCLUSION

Defendants respectfully request that the Court grant their Second Motion to Consolidate and consolidate the *Wilson*, *Voto Latino*, *MALC*, and *Brooks* matters into this matter.

| | |
|---|---|
| Date: November 4, 2021 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ Patrick K. Sweeten<br>PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | JACK B. DISORBO<br>Assistant Attorney General<br>Tex. State Bar No. 24120804 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov<br>jack.disorbo@oag.texas.gov |
| | **COUNSEL FOR DEFENDANTS** |

**CERTIFICATE OF CONFERENCE**

I certify that on the afternoon of November 4, 2021, counsel for the Defendants attempted to confer with counsel for Plaintiffs about the foregoing motion. At the time of this filing, Plaintiffs did not respond to the request to confer. Defendants also conferred with counsel for *Wilson*, *Voto Latino*, *MALC*, and *Brooks*. *Wilson* and *MALC* are unopposed. *Voto Latino* is opposed. *Brooks* requested that Defendants include the following statement: "The Brooks Plaintiffs believe the case should be consolidated with or transferred to whichever case challenging Texas's redistricting plans is deemed the Lead case. The Brooks Plaintiffs take no position on which case should be deemed the Lead Case."

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 4, 2021, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN